UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 07-109 - RMC |
| E-GOLD LIMITED, : | |
| GOLD & SILVER RESERVE, INC., : | |
| DOUGLAS L. JACKSON, : | |
| BARRY K. DOWNEY and : | |
| REID A. JACKSON : | |
| _____/ | |
| related case: : | |
| : | |
| In the Matter of the Seizure of : | |
| Any and all property in/underlying E-GOLD : | |
| Account **544179** and in/underlying E-GOLD : | CASE NUMBER: |
| account **109243**, held by E-GOLD, Ltd. or : | 07-167-M-01 |
| Gold & Silver Reserve, Inc. on behalf : | |
| of **E-GOLD, Ltd.** : | |
| _____/ | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF A STAY OF THIS CASE PENDING DEFENDANTS' INTERLOCUTORY APPEAL**

Defendants e-gold Limited, Gold & Silver Reserve, Inc., Douglas L. Jackson, Barry K. Downey and Reid A Jackson, by and through undersigned counsel, hereby file their Memorandum of Points and Authorities Regarding a Stay of This Criminal Case Pending an Appeal By Defendants. As outlined below, applicable D.C. Circuit jurisprudence supports the entry of a stay. Accordingly, the defendants respectfully request that the Court enter an order staying this case pending the resolution of the defendants' appeal of this Court's June 22, 2007 order denying the defendants' request for an evidentiary hearing.

I.  **THE ABSENCE OF A STAY MAY CAUSE STRUCTURAL ERROR BY UNDERMINING DEFENDANTS' SIXTH AMENDMENT RIGHT TO COUNSEL OF CHOICE**

The Court's decision on whether or not to enter a stay of this case pending the resolution of the defendants' interlocutory appeal will have a profound effect upon the defendants' rights to the counsel of their choice.

In *United States v. Gonzalez-Lopez,* 126 S.Ct. 2557, 2562 (2006), the United States Supreme Court considered the ramifications raised by a trial court's erroneous denial of a criminal defendant's right to the counsel of his choice. In reversing the defendant/petitioner's conviction, the Court held as follows:

> Where the right to be assisted by counsel of one's choice is wrongly denied, …it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.

*Id.* Furthermore, the Court held that when an appellate court determines that a defendant was erroneously denied the counsel of the defendant's choice at the trial level, such error is deemed "structural," and is not subject to review for harmlessness.1 According to the Court, "[h]armless error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." *Id.,* at 2565.

In this case, the denial of the defendants' motion to vacate the seizure warrant and modify the post indictment restraining order will be tantamount to the denial of the defendants' counsel of their choice. Should this Court deny the defendants request for a stay – and only thereafter the

---

1 Structural errors "defy analysis by 'harmless-error' standards" because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." Gonzalez-Lopez, 126 S.Ct. at 2564; *quoting, Arizona v. Fulminante,* 499 U.S. 279, 309-310 (1991).

D.C. Circuit reverses the denial of the defendants' request for an evidentiary hearing – any adverse verdict would be regarded as the result of a structural error and reversed without a prejudice inquiry. The issuance of a stay of this case pending a resolution of defendants' expedited interlocutory appeal will preserve the defendants' constitutional rights and serve as a safeguard from the very real, yet avoidable, difficulties discussed in *Gonzalez-Lopez.*

## II.    LEGAL STANDARD

Courts must consider four factors when deciding whether to stay a case pending appeal:

> (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. (2) Has the petitioner shown that without such relief, it will be irreparably injured? . . . (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? . . . (4) Where lies the public interest?

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers Ass'n*, *v. Federal Power Commission*, 259 F.2d 921, 925 (1958)); *see also,* D.C. Cir. R. 8. Although the government correctly identified those four factors in its Memorandum, the government failed to accurately describe for the Court how those four factors must be weighed.

The D.C. Circuit has made it clear that a court in this Circuit analyzing these four factors may apply a "balance of equities" in deciding whether to impose a stay. *Holiday Tours,* 559 F.2d at 843-44; s*ee also, e.g., Bender v. Parks*, 2004 U.S. Dist. LEXIS 17090, 3; 2004 WL 3737124, 3 (D.D.C. 2004) (Collyer, J.) ("A court balances the four factors and a particularly strong showing on one or more can outbalance a weaker showing on another").

In *Holiday Tours*, the D.C. Circuit found it "necessary to refine" its holding in *Virginia Petroleum Jobbers*; *Holiday Tours*, 559 F.2d at 842. The Court specifically rejected the suggestion that "a stay is never appropriate unless the movant can show that success on appeal is

3

'probable.'" *Id.*, at 843. Rather, "[a]n order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict injury on the movant." *Id.,* at 844.

In its Memorandum, the government failed to consider the jurisprudence of this District concerning the manner by which questions such as the one presently before the court should be resolved. Nevertheless, even under the government's overly mechanistic application of the law, a stay should be issued in this case because each of the four applicable factors weigh in favor of the issuance of a stay. In short, there is – at a minimum – a very serious question of law presently before the Court of Appeals and a very strong possibility that the defendants will prevail on that question. Furthermore, should this Court refuse to issue a stay and force the defendants to litigate on two fronts when they have already displayed the difficulties associated with litigating on one, there is a substantial likelihood that the defendants would face irreparable harm. On the other hand, the government would face no actual hardship if this Court were to enter a stay. Finally, despite the government's tortured understanding of the "public interest," the public interest actually supports a stay of this case so that the defendants can adequately defend themselves before both this Court and the Court of Appeals, while continuing to try to keep their businesses, their families and themselves alive.

### III.    THIS CASE INVOLVES A SERIOUS AND DIFFICULT LEGAL QUESTION

In *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977), the Court held that courts are "not required to find that ultimate success by the movant is a mathematical probability, and indeed, as in this case, may grant a stay even though its own approach may be contrary to movant's view of the merits." According to the Court, its holding was "in accord with the movement in other courts away from a standard

4

incorporating a wooden 'probability' requirement and toward an analysis under which the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors." *Id.,* at 844. Consequently, "when confronted with a case in which the other three factors strongly favor interim relief," *Holiday Tours* ruled that a court "may exercise its discretion to grant a stay if the movant has made a substantial case on the merits." *Id.*, at 843. In conclusion, the Court held as follows:

> What is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on **an admittedly difficult legal question** and when the equities of the case suggest that the status quo be maintained.

*Id.,* at 844; [Emphasis added].

In this case, at a minimum – given that this Court's order denying the Defendants' request for an evidentiary hearing was a finding of first impression for the District of Columbia Circuit – a difficult, serious question of law has unquestionably been raised. Furthermore, there exists a very strong probability that the Defendants will succeed on the merits of their appeal before the D.C. Circuit.

During the June 21, 2007 hearing, this Court ruled that "the purpose of this hearing was to determine whether the defendants could make a showing that the monies that were seized did not derive from the alleged illegal conduct." Transcript, at p.72; *see also,* Transcript, at pp. 63-65. In other words, the only evidentiary hearing that this Court would have held would have been based upon a) an assumption that everything stated in the Special Agent's affidavit was true, and that b) certain monies seized from the Defendants were untraceable to any alleged criminal conduct. However, because the government has alleged that the Defendants' sole business activity is the operation of a money transmitting business, this Court's ruling made it impossible

for the Defendants to challenge the seizure of their assets. Such a ruling raises serious Constitutional due process issues that the Circuit Court may very well wish to review with care.

It is also significant that this Court's ruling is inconsistent with a plurality of federal circuits which have previously ruled on this issue. In denying the defendants' request for an evidentiary hearing, the Court specifically rejected the *en banc* decision in *United States v. Monsanto,* 924 F.2d 1186, 1203 (2nd Cir. 1991), as well as decisions of the Fifth, Eighth and Ninth Circuit Courts of Appeal; *see,* Transcript, at p.66.

To be sure, the Fifth and Ninth Circuits have consistently held that a defendant is entitled to a prompt pretrial hearing **whenever** the government obtains an *ex parte* order restraining his property on the assertion that the property may be subject to forfeiture; *see, e.g., United States v. Roth*, 912 F.2d 1131, 1133 (9th Cir. 1990) (holding that "in order for a restraining order…to be constitutional, the district court must hold a hearing under Rule 65 to determine whether probable cause exists to issue an injunction."); *United States v. Holy Land Foundation for Relief and Development*, 445 F.3d 771, 792 (5th Cir. 2006) ("in order for a restraining order under § 853 to be constitutional, the district court must hold a hearing under Rule 65 [of the Federal Rules of Civil Procedure] to determine whether probable cause exists to issue an injunction."); *United States v. Riley*, 78 F.3d 367, 379 (8th Cir. 1996) (holding that **before** a post-indictment restraining order may issue "the government must demonstrate at a hearing that the RICO defendant is likely guilty and that the property to be restrained will be subject to criminal forfeiture").

Additionally, the Court's June 22, 2007 Order denying the Defendants request for an evidentiary hearing was at odds the rule of this District as written by District Judge Gesell in *United States v. Perholtz*, 622 F.Supp. 1253, 1256 (D.D.C. 1985). In that case, Judge Gesell held

6

that "[t]he United States cannot obtain a permanent restraining order that prevents a defendant from disposing of his property by means of an *ex parte* proceeding. Due process requires that such an order be temporary and the United States must give affected defendants notice of a hearing within a brief amount of time or the *ex parte* order expires. A ten day limitation on the duration of such *ex parte* orders seems appropriate."

This Court's ruling is likewise inconsistent with the Second Circuit's landmark *en banc* decision in *Monsanto,* 924 F.2d at 1203 (*en banc*). In that case, the Court held as follows:

> [T]he fifth and sixth amendments, considered in combination, require an adversary, post-restraint, pretrial hearing as to probable cause that (a) the defendant committed crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the indictment are properly forfeitable, to continue a restraint of assets (i) needed to retain counsel of choice and (ii) ordered ex parte pursuant to 21 U.S.C. § 853(e)(1)(A)…

Furthermore, despite this Court's stated reliance on *Jones-Farmer* [Transcript, at p.66], the Court's ruling is actually inconsistent with *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001). In that case, the Fourth Circuit <u>reversed</u> a district court decision denying a defendant's request for an evidentiary hearing, and held that "[a]llowing Farmer to rebut the government's showing of probable cause 'would afford [him] an important opportunity to be heard before his assets to pay attorneys are, in effect, permanently seized.'" *Id., at* 805; *quoting, United States v. Michelle's Lounge*, 39 F.3d 684, 700 (7th Cir. 1994); *citing, United States v. Jones,* 160 F.3d 641, 646-647 (10th Cir. 1998); *Monsanto, supra, at* 1195.

Indeed, this Court's ruling in this case bears a far stronger resemblance to the position of the Eleventh Circuit. In court on June 21, 2007, this Court held that "[t]he way to defend yourself is to get this case to trial or to file a motion to dismiss." Transcript, at pp. 66-67. In *United States v. Register,* 182 F.3d 820, 835 (11th Cir. 1999), the Eleventh Circuit recognized that "[w]e appear

7

to be the only circuit holding that, although pre-trial restraint of assets needed to retain counsel implicates the Due Process Clause, the trial itself satisfies this requirement." *Citing, United States v. Bissell*, 866 F.2d 1343 (11th Cir. 1989).

All of the foregoing demonstrates that, at a minimum, this appeal presents very serious questions of law. In such circumstances, where an important legal question is raised, the relevant Circuit Court of Appeals has yet to address the question and "the circuits which have are split…the balancing of the equities favor granting a stay." *In Re Westwood Plaza Apartments, Ltd.,* 150 B.R. 163, 168 (Bankr. D. Tex. 1993). Moreover, due to the fact that this Court's ruling necessarily mirrors the minority view of a single foreign circuit, there exists a likelihood that the Defendants will succeed on the merits of their appeal.

### IV.  THE DEFENDANTS WILL SUFFER IRREPARABLE HARM IF A STAY IS NOT GRANTED

Should a stay of this case not be granted, there exists a very serious threat of irreparable harm to the Defendants. The Defendants simply cannot afford to fight a single war on two fronts and continue their efforts to keep their businesses alive if this case is not stayed.

 The government, on pages 5-6 of its Memorandum, strives to confuse the Court about the value of the defendants' assets. It does so by stacking figures descriptive of one period of time (June 12, 2007) on top of figures applicable to another period of time (May 2, 2007) and creating a "double counting" of the defendant corporations' assets. Similarly, at page 6 of its Memorandum, the government attempts to show the Court that the "defendants" earn "$239,000 a month in income from operations," simply because e-gold Ltd. earned approximately $118,000 in a 2 week period between May and June of 2007. This measurement is totally speculative and would not be considered accurate under any recognized accounting principle. Furthermore, at footnote 3 of its Memorandum, the government attempts to show that Gold & Silver Reserve,

8

Inc. still operates a profitable exchange service, when in fact the government has been on notice of OmniPay's demise for weeks.2 Finally, nowhere in its Memorandum does the government account for the considerable expenses that e-gold Ltd., G&SR and the individual defendants must incur to operate (including servicing their clients, paying their vendors and paying their employees), pay for reasonable living expenses and pay for attorneys fees. As a result, the "list" compiled by the government in this section of its Memorandum is not even tenuously descriptive of the Defendants' ability to pay for their lawyers or operate their businesses.

In actuality, should this Court deny the defendants' request for a stay, the defendants would be necessarily and irreparably injured by being forced into litigation on multiple fronts without the benefit of the vast majority of their assets. In that regard (as in many others), the sole case relied upon by the government – *United States v. Wittig*, 2005 WL 1384666 (D.Kan. 2005) – is completely distinguishable from this case and lends absolutely no support to the government's position.

In *Wittig*, the District Court held that "[i]n light of the fact that defense counsel have already been paid over eight million dollars, it is difficult to discern any irreparable harm from a

---

2 As a direct result of the government's actions, G&SR lost its banking relationships and presently has no bank account suitable for supporting exchange operations. G&SR's OmniPay business has therefore not been operational since May 25, 2007. Multiple prominent independent exchange services have also had their assets seized with no timely possibility of defending themselves in open court. Likewise, subsequent to May 25 there has been no functional Primary Dealer for e-gold, i.e., an entity credentialed to and capable of undertaking the steps required to effect an increase or decrease in the total quantity of e-gold in circulation. At the same time, government attacks against e-gold in the media have created a panic environment that could be characterized as a "run" on e-gold. In normal circumstances, a run on e-gold would constitute a somewhat salutary occurrence because e-gold is designed to operate without disruption even if/as circulation winds down to zero, thereby demonstrating to the public the existence and importance of a 100% reserve. Under the present circumstances, i.e. a crippled and essentially non-functioning exchange market combined with an overtly stated U.S. Secret Service intent to "shut down" e-gold, there is widespread public perception that e-gold has failed and is no longer able to meet its primary obligation of redeeming e-gold gram for gram.

small delay in the advancement of attorneys fees, should the Circuit rule that this Court erred." *Id.,* at 4. That is simply not the case here. The defendants are already substantially indebted to counsel for work performed to date, and are unable to pay undersigned counsel to enter a permanent appearance in this case to defend them at trial, where fees and costs are expected to exceed $3.5million. With such uncertainty about how they will defend themselves in this Court, the defendants cannot hope to move forward on an *additional* front while fees are still owed from the district court proceedings.

  The harm that the defendants will suffer is real, extreme and imminent. In support of their motion to vacate the seizure warrants and modify the restraining order and their subsequently filed reply, the defendants filed a total of ten affidavits which showed the prejudice that they face as a result of the seizure of the G&SR and e-gold Ltd. operating accounts. Although this Court never ruled on the issue of the prejudice faced by the defendants, those affidavits showed how and why the defendants have been rendered incapable of paying for attorneys fees in this case. There are simply insufficient assets with which to do so, much less to hire an outside vendor to assist the defendants in managing and reviewing the three terabytes of discovery recently provided to the defendants by the government. Now the defendants face the prospect of moving forward in two cases – one before this court and one before the D.C. Circuit – without the resources necessary to appropriately be heard in one. Accordingly, should this court refuse to stay this case for the pendency of the (expedited) appellate proceeding, there exists a strong likelihood that the defendants would receive insufficient representation in either case. Should that occur, the harm that would befall the defendants would be severe and irreparable, and the defendants therefore implore this Court to stay this case until their interlocutory appeal has been resolved.

**V.    THERE WILL BE NO HARM TO THE GOVERNMENT IF A STAY IS GRANTED**

The government's entire argument concerning whether it will be injured if this Court stays this case during the pendency of an expedited, interlocutory appeal before the D.C. Circuit consists of the following:

> A stay of this case, which would likely last for months, would harm the Government by delaying its ability to present its evidence as quickly as possible, in a case that defendants have indicted should not go to trial until Spring 2008, at the earliest. Further delay, extending the distance between witnesses' (sic) experiences of events and their time of testimony, and causing further expenditures of resources by the numerous Government offices involved in this prosecution, is a significant burden to the Government.

Government's Memorandum, at 7. This argument is overly generalized, highly exaggerated and completely speculative, and sheds no light on whether the government will actually be prejudiced if this matter is stayed pending an interlocutory appeal. Given the government's failure to particularize or attest to its narrative, the government's argument could be easily fit into *any* argument that *any* prosecuting office *ever* drafts in response to a defendant's request for a stay. Such a rote analysis of the very delicate nature of this litigation should be given no credence by this Court.

The *Wittig* case similarly provides no support in this respect. *Wittig* is distinguishable from this case on a number of grounds, including the following:

- the defendants' repeated practice of moving for stays or continuances on the eve of trial, *id.*;

- the government had already expended "resources as it reaches the final stages of trial preparation" which it would "be forced to expend…again if the trial is continued." *Id.*

11

- "numerous witnesses" had already "arranged their schedules to be available for the June 14, 2005 trial date." *Id.*[3]

- the pending retirement of the second case agent to work the government's case. *Id.*

**None** of those factors is present in this case. Accordingly, neither *Wittig* nor any other case lends any support to the government's position. The government simply would not be prejudiced if this court were to stay this case pending the limited time necessary to resolve the serious legal questions posed by the Defendants' interlocutory appeal.

## VI.  THE PUBLIC INTEREST WILL BE BETTER SERVED BY THE ISSUANCE OF A STAY

The government's "public interest" argument hinges on two statements, neither of which should have any impact on this Court's perception of this case. First, the government argues that "[t]he public…has a strong interest in seeing justice rendered expeditiously." Government's Memorandum, at p.7. Second, the government argues "[p]erhaps most urgent, the Government believes and the Indictment and civil seizure warrants reflect, that the defendants are continuing to operate, and profit from, an unlicensed and illegal business that launders money for criminals."

Regarding the government's first point, i.e. that the public has a strong interest in seeing justice rendered expeditiously, justice dictates that the defendants receive the due process afforded them under the United States Constitution. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court made clear the following:

> Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the

---

[3] The *Wittig* opinion was written **one week** before the scheduled start of trial; in this case, no trial date has been set.

> walls of the Department of Justice states that the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts."

*Id., see also, Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 632 (1935) (The "United States Attorney is representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.") Were speed the only consideration, stays in all cases would be denied.

Furthermore, the government finds no support from *Wittig* – or any other case – to support its position. In *Wittig*, the defendants sought a stay just one week before trial and after having already sought and obtained several others. Under those circumstances, the court determined that the public interest would have been adversely affected had the court entered a stay. The court, in discussing the "public interest" factor, explained the burden that <u>the court itself</u> would have to carry if a stay were entered:

> The Court agrees that the public interest is likely to be harmed by a stay of the trial date. As the Court noted when defendants last attempted to stay the trial: There is no doubt that the public interest will be harmed if the Court issues a stay of the May 9, 2005 trial date. At considerable expense, 200 individuals have already been summoned to appear as potential jurors in this case. To ensure an adequately large venire, the Court recently authorized summons of 150 additional individuals. Thus, the Court has expended funds to mail 350 summons, and the jury coordinator has invested considerable time in managing the potential jury pool to date. If the trial is stayed for a long enough period that the scheduled May 9, 2005 trial date no longer holds, these funds will be wasted, and the Court will be forced to re-summons 350 different individuals.

*Id.,* at 5. Clearly, no such factors are present in this case. No trial date has been set, no jury summons have been issued, and no funds have been spent by the Court necessary for the orderly presentation of a trial. In contrast, the larger public interest will be served by allowing this

serious legal question, about which there is substantial support for the defendants among other circuits, to be addressed by the D.C. Circuit in what appears to be a case of first impression. Neither the court nor the public interest in general would be damaged at all if this Court chose to issue a stay in this case.

The government's second argument on this issue, i.e. that exigent circumstances exist in this case because e-gold Ltd. is still operational, is similarly unconvincing. For one, the government's beliefs – which are not part of the record and were never the subject of a hearing – should play no role in the Court's determination as to whether a stay is appropriate in this case. More important, however, is that the government's argument is plainly contradictory to the black letter of the Post Indictment Restraining Order, at ¶ 7: "…the order requested is ***narrowly tailored to allow orderly continuation of defendants' business activities*** as well as the ability of defendants' customers to access their funds."

Ultimately, both the government and the public interest will be *better* served if a stay is issued in this case. Pursuant to this Court's instructions, defendants are seeking an expedited briefing scheduled for this appeal. Thus, any delay of proceedings in this Court will be minimized. Furthermore, according to the government's prior statements, the government began investigating this matter more than three years ago. Thus, the additional period necessary for the Court of Appeals to consider this matter should have little (if any) practical effect in the larger context of this investigation and prosecution.

More importantly, the government's ultimate interest is (or at least should be) to bring a prosecution that is constitutionally firm, as opposed to one that is merely rapid; *see, e.g. Berger, supra,* 295 U.S. at 88. The government's interest would therefore be disserved by pursuing proceedings in this Court that the Court of Appeals might later deem constitutionally infirm. In

such a circumstance, not only would justice not have been served, but the government would be harmed by having to litigate these proceedings a second time, at additional expense.

The entry of a stay will avoid these harms.

WHEREFORE, for the foregoing reasons, the Defendants, e-gold Limited, Gold & Silver Reserve, Inc., Douglas L. Jackson, Barry K. Downey and Reid A. Jackson, respectfully request that this Court issue a stay of this case until while this matter is pending interlocutory appeal before the Court of Appeals for the D.C. Circuit.

>Respectfully submitted,
>
>/s/ *Andrew S. Ittleman*
>Mitchell S. Fuerst, Esq.
>Florida Bar No. 264598
>Andrew S. Ittleman, Esq.
>Florida Bar No. 802441
>Fuerst Humphrey Ittleman, PL
>1001 Brickell Bay Drive, Suite 2002
>Miami, FL 33131
>305-350-5690 (o)
>305-371-8989 (f)
>
>/s/ *Aron U. Raskas*
>Aron U. Raskas
>District of Columbia Bar No. 422939
>KRAMON & GRAHAM, P.A.
>One South Street, Suite 2600
>Baltimore, Maryland 21202-3201
>Telephone: 410-752-6030
>Fax: 410-539-1269
>araskas@kg-law.com
>
>*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES REGARDING A STAY OF THIS CRIMINAL CASE PENDING DEFENDANTS' APPEAL AND REQUEST FOR AN ORAL ARGUMENT ON THIS MATTER**

was served on July 9, 2007 on all counsel of record via the Court's Electronic Case Filing system.

>  /s/ Andrew S. Ittleman
> Andrew S. Ittleman, Esq.
> Fuerst Humphrey Ittleman, PL
> 1001 Brickell Bay Drive, Suite 2002
> Miami, FL  33131
> 305-350-5690 (o)
> 305-371-8989 (f)