## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **E-GOLD LIMITED,** | ) | |
| **GOLD & SILVER RESERVE, INC.,** | ) | **Criminal Action No. 07-109 (RMC)** |
| **DOUGLAS L. JACKSON,** | ) | |
| **BARRY K. DOWNEY and** | ) | |
| **REID A. JACKSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

The criminal Defendants in this case – two corporations and three individuals – have sought a stay of the prosecution while they appeal this Court's denial of their motion to release funds seized by the Government. *See* June 22, 2007, Minute Entry Order. The Court admittedly was so inclined at the end of the motions hearing on Defendants' Motion to Vacate Seizure Warrant and to Modify Restraining Order and Request for an Evidentiary Hearing, but after careful review of the parties' briefs, it concludes that there is no basis to grant a stay pending appeal.

Any stay pending appeal must be evaluated in terms of four factors identified by the D.C. Circuit:

> (1) Ha[ve Defendants] made a strong showing that [they are] likely to prevail on the merits of [their] appeal? Without such a substantial indication of the probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. (2) Ha[ve the Defendants] shown that without such relief, [they] will be irreparably injured? The key word in this consideration is irreparable. . . . The possibility that adequate compensatory or other

corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. . . . (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? . . . Relief saving one claimant from irreparable injury, at the expense of similar harm caused another, might not qualify as the equitable judgment that a stay represents.  (4) Where lies the public interest?

*Virginia Petroleum Jobbers Assn v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (reaffirming *Virginia Petroleum Jobbers*); *see also* D.C. Cir. Rule 8(a)(1).[1] These factors preclude granting a stay of the criminal prosecution.

## I.  BACKGROUND FACTS

Defendant corporations operate a system that allows the buying and selling of gold and other precious metals on the Internet under the rubric of "e-gold."  The Government contends that e-Gold Ltd. and its co-defendant Gold & Silver Reserve, Inc., d/b/a Omnipay, operate an unregistered and unlicensed money exchange business that also launders money.  Defendant corporations and the three individual Defendants – officers and directors of the two corporations – vehemently disagree.  A very short description of the e-Gold process may put light on the dispute.

E-Gold holds in trust gold bullion and other precious metals in foreign depositories.

---

[1]  District of Columbia Circuit Rule 8 states:
(a) Criteria; Service.
(1) A motion for stay of a judgment or of an order of the district court or any other motion seeking emergency relief must state whether such relief was previously requested from the district court and the ruling on that request. The motion must state the reasons for granting the stay or other emergency relief sought and discuss, with specificity, each of the following factors: (i) the likelihood that the moving party will prevail on the merits; (ii) the prospect of irreparable injury to the moving party if relief is withheld; (iii) the possibility of harm to other parties if relief is granted; and (iv) the public interest.

*See* Defs.' Status Report and Notice of Compliance ("Status Report") [Dkt. #28] at 6. A buyer on the Internet can use an exchange service to buy e-gold by submitting a deposit in the buyer's own currency to an exchange service, which then purchases the appropriate amount of gold, kept in an e-gold account. *See* Status Report at 9. The buyer then orders an appropriate amount of its e-gold to be transferred into the e-gold account of a seller for whatever purchase is being made. *See id.* at 7. The seller needs an exchange service to convert the e-gold from its account into the seller's currency. *See id* at 9. Gold & Silver Reserve ("G&SR") operates an exchange service, Omnipay, which provides one method to convert currency to e-gold and back again. *See id.* E-Gold insists that it cannot be an illegal money exchange business because its does not deal in cash. *See* Defs.' Reply Memo. in Supp. of Mot. to Vacate Seizure Warrant and to Modify Restraining Order and Request for an Evidentiary Hearing ("Defs.' Reply") [Dkt. #42] at 6 n. 3; *see also* Status Report at 9.

The e-Gold and G&SR operations have been under intense Government scrutiny and the parties have been steeped in litigation since December 2005. Immediately before the criminal indictment was unsealed, the Government obtained seizure warrants from this Court to seize certain specified accounts at e-Gold and G&SR, most importantly for present purposes the two operating accounts by which Omnipay conducted its exchange business. *See* Defs.' Mot. to Vacate Seizure Warrant and to Modify Restraining Order and Request for an Evidentiary Hearing ("Defs.' Mot.") [Dkt. #35] at 2-3.

Defendants filed a motion for a *Monsanto*[2] hearing and argued to the Court that it

---

[2] Due process requires a pretrial adversarial hearing when a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statutes are untainted and that he has no other funds from which to secure the counsel of his choice. *Unites States v. Monsanto*, 924 F.2d 1186, 1191-98 (2d Cir. 1991) (on remand from 491 U.S. 600 (1989)); *United States v. Jones*, 160 F.3d 641, 645-49 (10th Cir. 1998). This is generally referred to as a *Monsanto* hearing

should hold a two-day hearing to determine if the Indictment was properly obtained. The Court held

that Defendants had to make a preliminary showing of: (1) a bona fide reason to believe that the

grand jury erred in determining that the restrained assets constitute or are derived, directly or

indirectly, from gross proceeds traceable to the commission of the alleged offenses and (2) that the

Defendants have no assets, other than those restrained, with which to retain private counsel and

provide for themselves and their families. *See United States v. Jones*, 160 F.3d 641, 647 (10th Cir.

1998) (noting that "[d]ue process does not automatically require a hearing and a defendant may not

simply ask for one."); *see also United States v. Farmer*, 274 F.3d 800, 803, 806 (4th Cir. 2001)

(granting a pretrial hearing where the trial court credited the defendant's initial representations that

the government had seized all his substantial assets and because the government's own agents

acknowledged that many seized assets were unrelated to the alleged criminal conduct); *see also*

*United States v. Jamieson*, 189 F. Supp. 2d 754, 757 (N.D. Ohio 2002) (noting that a defendant must

first make a showing, or at least a reasonable representation, that no other assets are available to

support himself and his family and to retain private counsel and that the grand jury erred in its

forfeiture provisions of the indictment because certain assets are exempt from the restraining order).[3]

Defendants were totally unable to make any showing of any kind that the Omnipay operating

accounts did not contain monies entirely resulting from the exchange business which the

---

based upon the Supreme Court's decision in *United States v. Monsanto*, 491 U.S. 600 (1989).

[3] The Court draws the parties' attention to the fact that the Fifth Circuit no longer looks to Federal Rule of Civil Procedure 65 to guarantee a hearing to satisfy due process. *See United States v. Holy Land Found. for Relief and Develop.*, – F. 3d – (5th Cir. 2007) (Fifth Circuit *en banc* overruling *United States v. Thier*, 801 F.2d 1463 (5th Cir. 1986), because it is out of step with the reasoning of other Circuit Courts).

Government asserts is an unregistered and unlicensed money exchange business.[4]   The Court

therefore refused to quash the warrants or order the release of any seized funds.  That decision is now

on appeal to the D.C. Circuit, where the Defendants have sought expedited consideration.[5]  They

now seek a stay of the criminal prosecution pending a decision on appeal.

## II.  ANALYSIS

Defendants argue that their Sixth Amendment right to counsel and their Fifth

Amendment right to due process of law are jeopardized by the Government's seizure of the Omnipay

operating accounts.  They assert that the individual Defendants are unable to retain counsel of their

choice because the e-Gold and GS&R/Omnipay operation is so hamstrung by the Government's

actions that their very incomes are substantially reduced below levels needed for living expenses.

In addition, e-Gold and GS&R, which, as corporations, are not entitled to appointed counsel, argue

---

[4]  The Court specifically addressed this point in open court at the June 21, 2007 hearing:

> My reading of the case law suggests to me that the purpose of this hearing was to
> determine whether the defendants could make a showing that the monies that were
> seized did not derive from illegal conduct.  There has been no showing to that
> regard and what the defendants really want to argue is that there was no alleged
> illegal conduct.  That argument is premature for today's hearing… I understand
> the defendants' concerns that they don't meet the statutory language and they
> shouldn't have been charged in the first place.  I cannot, however, intrude into the
> business of a jury.  Juries make fact findings in criminal prosecutions, not
> judges… I am sensitive to the individual needs of the individual defendants for
> access to some of the money that's in the e-Gold accounts.  The law is pretty
> clear, however, that if that money was derived from illegal activity, it is all of it
> subject to forfeiture.

See June 21, 2007 Hearing Transcript at 72:16-73:24.

[5]  A restraining order may be the basis for an interlocutory appeal under 28 U.S.C. §
1292.  See United States v. Floyd, 992 F.2d 498, 500 (5th Cir. 1993); In re Assets of Martin, 1
F.3d 1351, 1355 (3d Cir. 1993); United States v. Kirschenbaum, 156 F.3d 784, 788 (7th Cir.
1998) (collecting cases).

that they cannot defend themselves without access to these funds.[6]

The Government cites *United States v. Wittig*, No. 03-40142, 2005 WL 1385666 (D. Kan. June 7, 2005), as the only case on point to the instant facts.  In *Wittig*, criminal defendants filed a motion to stay the criminal case pending their appeal of the district court's reinstatement of a restraining order requested by the Government.  The court denied the stay, finding that the defendants had not demonstrated a likelihood of success on appeal because they had not challenged the evidence in the record that the property was forfeitable proceeds, but, rather, "continue[d] to refer back to their arguments that there is no legal basis for forfeiture of [the] asset."  *Id.* at *3.

In addition, the *Wittig* court found that there was no legally cognizable threat of irreparable harm.  The defendants argued that absent a stay, they would be denied the right to retain counsel of their choice, thereby compromising their Sixth Amendment rights.  *Id.* at *3-4.  The court concluded that *Monsanto* precluded this argument, since the Supreme Court held that a pretrial restraint of assets does not violate the Sixth Amendment, even when the defendant wants to use those assets to retain counsel, if the assets are fairly traceable to the alleged crminal conduct.  *Id.* at *4; *see Monsanto*, 491 U.S. at 615.

Looking to the harm caused to the Government by a stay, the *Wittig* court recognized the Government's interest in the availability of its witnesses and the expeditious use of resources to

---

[6] One result of all Defendants' alleged poverty is that, to date, they have all been represented by the same counsel.  The Court has warned that there may well be impenetrable conflicts among, at least, the real persons and the corporations and that continued shared counsel will not be tolerated.  The Defendants agree that a conflict would not permit the current arrangement but argue that they cannot now avoid it, if they are to be represented by counsel of their choice, because they are without the resources to retain other lawyers.  None of the individual Defendants has submitted a financial disclosure form to the Court for determination of whether he is entitled to appointed counsel, although incomplete affidavits have been submitted by each regarding their current financial situations.  *See* Defs.' Reply at Exh. 1-5.

conclude that the Government would be harmed by a stay. *Id*. at *5-6. The court also determined that the public's interest in a speedy trial weighed against a stay of the criminal case. *Id.* at *6.

### A.  Likelihood of Success on the Merits

These Defendants, as the *Wittig* defendants, argued only that there was no legal basis to seize their funds in the first place.  When pressed by the Court to say whether *any* of the monies in the two operating accounts were not fairly traceable to the alleged illegal scheme, Defendants first answered yes and said they would present testimony from Douglas Jackson, a Defendant and founder of e-Gold. *See* June 21, 2007 Hearing Transcript at 60:3-23. After a break, and perhaps for tactical reasons so that Dr. Jackson would not be subject to cross-examination, Defendants abandoned this plan and resumed the argument that e-Gold and GS&R could not be an illegal money transmitting business because they did not accept cash, a point on which the Government makes no concession. *See* 18 U.S.C. § 1960; *see also* June 21, 2007 Hearing Transcript at 61-65 . The Court having already found against them on this mode of attacking the Indictment, the Defendants stood literally mute about the source of the monies in the operating accounts.

The purpose of the motions hearing was to determine if the Defendants could meet the standard necessary to obtain an evidentiary hearing.  It was *not* to hear argument and rule on whether the crime is properly charged.  This is exactly the inquiry the legislative history would foreclose:

> [21 U.S.C. § 853, the criminal statute authorizing seizure of forfeitable property] does not exclude, however, the authority to hold a hearing subsequent to the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper (e.g., where information presented at the hearing shows that the property restrained was not among the property named in the indictment).  However, it is stressed that at such hearing the court is not to entertain challenges to the validity of

the indictment.  For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.

S. Rep. 98-225 at 203 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3386.  Most courts adhere to this admonition.  *See Jones*, 160 F.3d at 647-48; *United States v. Moya-Gomez*, 860 F.2d 706, 729 (7th Cir. 1988); *United States v. 250 Lindsay Lane*, No. Civ. A. 04-56, 2005 WL 1994762, at *6 (W.D. Ky. Aug. 16, 2005); *United States v. Jamieson*, 189 F. Supp. 2d 754, 757 (N.D. Ohio 2002). *But see United States v. Monsanto*, 924 F.2d 1186, 1200 (2nd Cir. 1991) (allowing district court to reconsider grand jury's finding of probable cause as to the offense).

Defendants argued that the Government's prosecution is just wrong as a matter of law and indicated an intention to file a motion to dismiss.  The Court is quite willing to receive and consider such a future motion and the schedule for it has been set.  *See*  June 21, 2007 Hearing Transcript at 72:21-73:13. That future argument, however, has no bearing on whether Defendants showed at the motions hearing that they were entitled to a pre-trial evidentiary hearing.  Inasmuch as the record indicates that all of the monies in the seized operating accounts are fairly traceable to the alleged illegal activity, Defendants' likelihood of success on appeal is very narrow.   This factor counsels against a stay.

## B.  Irreparable Harm

Defendants contend that, without the seized funds, they will all be irreparably harmed because they will not be able to pay for counsel of their choice.  Counsel of their choice is not a right of constitutional dimension.  They have a right to "adequate representation," but they "cannot insist on representation by an attorney [they] cannot afford."  *Caplin & Drysdale v. United States*, 491 U.S.

-8-

617, 624 (1989). "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Id.* at 625-26. This remains true even when a pretrial seizure is based upon a showing of probable cause. *Id.* at 632-33; *United States v. Monsanto*, 491 U.S. 600, 613 (1989).

Even more tellingly, Defendants have failed to demonstrate adequately that they are really without resources. The Government attributes significant assets available to Defendants, as described by Defendants themselves in their briefs and affidavits in support of the motion to vacate the seizure warrants:

> $941,672.02 in liquid assets held by e-gold Ltd (Defs.' Reply Mem. in Supp. of Mot. to Vacate Seizure Warrant, Exh. 1, ¶ 7).

> $895,939 in liquid assets held by G&SR (Defs.' Reply, Exh. 2, ¶ 10(d)).

> $1,775,089 worth of e-gold contained in e-gold accounts held by e-gold Ltd and G&SR (Defendant Douglas Jackson's May 3, 2007 Affidavit on behalf of e-Gold)

> $239,000 a month in income from operations (*see* Defs.' Reply, Exh. 1, ¶ 7; extrapolated from statement that Defendants earned $118,000 in fees/revenue over a 15-day period).[7]

*See* Government's Mem. of P. & A. Regarding a Stay of this Criminal Case Pending an Appeal by Defs. ("Gov't Mem.") at 5-6. These assets total $3,856,669, which is remarkably close to the remarkable forecast by Defendants' attorneys that the criminal defense in this matter will cost

---

[7] This listing of assets does not include $334,622 worth of e-gold contained in e-gold accounts apparently owned by Ancien, Ltd, which is owned by the Jackson and Downey Family Trusts. *See* Defs.' Reply, Exh. 3, ¶ 5, Exh. 5, ¶ 13. Without the terms of the trust documents before it, the Court cannot determine whether this value of e-gold can be accessed by Defendants.

$3,500,000.[8]

It appearing that Defendants' legal argument is weak and their financial situation stronger than they admit, the Court finds no irreparable harm to support a stay.

### C.  Harm to the Government

The Government asserts that it would be harmed if a stay were entered in the criminal case.  It identifies this harm as a delay in its ability to present its evidence as quickly as possible, possible reduction of witnesses' abilities to testify to the events in question, and greater expenditure of resources by the numerous Government offices involved in this prosecution.  While not insignificant, these harms would not outweigh a decent showing of likelihood of success or irreparable harm.  Since Defendants have failed on the two more important of the four factors to be considered, the Government's expression of harm to its interests counsels against a stay.

### D.  Harm to the Public Interest

The public has a strong interest in seeing justice rendered expeditiously.  If Defendants are not guilty, the sooner that verdict is obtained, the sooner they will be able to turn their attentions back to business.  If Defendants are guilty as charged, the sooner they cease operating, and profiting from, an admittedly unlicensed and unregistered business that allegedly launders money for criminals, the better off the public will be.  This factor counsels against a stay.

### III.  CONCLUSION

For the reasons stated, the motion for a stay pending appeal of the Court's denial of Defendants' motion to amend the seizure warrants will be denied and Defendants' Motion for Oral Hearing on the Matter of the Entry of a Stay [Dkt. #50] will be denied as moot.

---

[8]  The Court notes that the civil case has been stayed.

A separate Order accompanies this Memorandum Opinion.


Date: July 20, 2007                                    _____/s/_____
                                                       ROSEMARY M. COLLYER
                                                       United States District Judge