UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Criminal No.  07-109-RMC |
| E-GOLD LIMITED, | : | |
| GOLD & SILVER RESERVE, INC., | : | |
| DOUGLAS L. JACKSON, | : | |
| BARRY K. DOWNEY and | : | |
| REID A. JACKSON | : | |
| _____/ | | |

**DEFENDANTS' MOTION TO DISMISS
COUNTS TWO, THREE AND FOUR OF THE INDICTMENT**

For the reasons set forth in the accompanying memorandum of law, the defendants, by and through undersigned counsel, respectfully move pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) to dismiss Count Two of the Indictment for failure to state an offense under 18 U.S.C. § 371, and to dismiss Count Three for failure to state an offense under 18 U.S.C. § 1960.  The defendants also move to dismiss Count Four, based on the Court's discretion not to exercise jurisdiction over an alleged state offense, Money Transmission without a License, in violation of D.C. Code § 26-1002.

Alternatively, the defendants move to dismiss Counts Three and Four for failure to comply with Federal Rule of Criminal Procedure 7(c)(1).

The defendants request an oral argument on this motion.

Dated: February 11, 2008                    Respectfully submitted,


By: _____/s/_____
     Barry J. Pollack (D.C. Bar No. 434513)
     Dawn E. Murphy-Johnson (D.C. Bar No. 490232)
     KELLEY DRYE COLLIER SHANNON
     3050 K Street, N.W., Suite 400
     Washington, D.C. 20007
     bpollack@kelleydrye.com
     202.342.8400
     202.342.8451 fax

     *Attorneys for Defendant Barry K. Downey*


     Mitchell S. Fuerst
     Andrew S. Ittleman
     Fuerst Humphrey Ittleman, PL
     1001 Brickell Bay Drive
     Suite 2002
     Miami, Florida 33131
     mfuerst@fuerstlaw.com
     305.350.5694
     305.371.8989 fax

     *Attorneys for Defendant e-gold, Ltd.*


     Aron U. Raskas
     Kramon & Graham, P.A.
     One South Street, Suite 2600
     Baltimore, MD 21202-3201
     aur@kg-law.com
     (410) 752-6030
     (410) 361-8211 fax

     *Attorneys for Defendant Gold & Silver Reserve, Inc.*

Joshua G. Berman
Machalagh Proffit-Higgins
Sonnenschein Nath & Rosenthal LLP
1301 K Street, N.W., Suite 600, East Tower
Washington, DC  20005-3364
jberman@sonnenschein.com
202/408-5208
202/408-6399 fax

*Attorneys for Defendant Douglas L. Jackson*


A.J. Kramer
Michelle Peterson
Office of the Federal Public Defender
625 Indiana Avenue  N.W.
Suite 550
Washington, D.C. 20004
Shelli_Peterson@fd.org
(202) 208-7528

*Attorneys for Reid A. Jackson*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| E-GOLD LIMITED, | : | Criminal No.  07-109-RMC |
| GOLD & SILVER RESERVE, INC., | : | |
| DOUGLAS L. JACKSON, | : | |
| BARRY K. DOWNEY and | : | |
| REID A. JACKSON | : | |

_____/

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
COUNTS TWO, THREE AND FOUR OF THE INDICTMENT**

The Indictment charges the defendants with conspiracy to operate an unlicensed money transmitting business in violation of 18 U.S.C. § 371 (Count Two); and the substantive offense of operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960 (Count Three).  The Indictment also alleges that the defendants committed a state offense, Money Transmission without a License, in violation of D.C. Code § 26-1002 (Count Four).

Because 18 U.S.C. § 1960 applies only to businesses that engage in cash transactions, and the Indictment fails to allege that any of the defendants engaged in cash transactions, Count Two must be dismissed for failure to state a cognizable conspiracy, and Count Three must be dismissed for failure to state an offense.  Alternatively, to the extent that the Court reads Section 1960 potentially to reach conduct that does not include engaging in cash transactions, Section 1960 is unconstitutionally vague as applied to non-cash transactions, and Counts Two and Three must therefore be dismissed.  If the Court dismisses Counts Two and Three, it should exercise its discretion to dismiss Count Four, as there is no reason to join a state money transmitting offense to a federal indictment that does not allege violations of the federal money transmitting statutes.

Moreover, Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment set forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Since Counts Three and Four of the Indictment fail to do so, they must be dismissed for this independent reason.

<u>**THE INDICTMENT**</u>

According to the Indictment, defendant e-gold, Ltd. ("e-Gold") is an issuer of digital currency known as "e-gold," "which function[s] as an alternative payment system." Indictment at ¶¶ 2, 14. In order for an individual to use e-gold as a currency, he must complete "four primary steps." <u>Id.</u> at ¶ 3. First, he must open an account with e-gold. <u>Id.</u> Second, to fund the account, the account-holder must "convert[]" national currency into e-gold. <u>Id.</u> Third, the account holder can then use the e-gold to buy a good or pay for a service, or to transfer funds to someone else. <u>Id.</u> Finally, the account-holder may "exchange" his e-gold back into national currency. <u>Id.</u> For every transfer of e-gold from one e-gold account to another, e-Gold collects a transaction fee. <u>Id.</u> at ¶ 27. It also collects a monthly storage fee. <u>Id.</u>

To convert national currency into e-gold, or vice versa, e-Gold requires the services of a "digital currency exchanger." Indictment at ¶¶ 3-5. The digital currency exchanger takes national currency from account holders, and exchanges it for e-gold. <u>Id.</u> at ¶ 4. It can also exchange e-gold back into national currency. <u>Id.</u> at ¶ 5. Defendant Gold & Silver Reserve, Inc. ("G & SR"), which operates e-Gold, offers such a digital currency exchange service, known as OmniPay. <u>Id.</u> at ¶ 15.

The individual defendants are alleged to have varying management roles in e-Gold and G & SR. They are also alleged to have an ownership interest in G & SR. Indictment at ¶¶ 16-18.

A.    **Count Two (Conspiracy to Operate an Unlicensed Money Transmitting Business)**

Count Two of the Indictment alleges a conspiracy to operate an unlicensed "money transmitting business." More specifically, the Indictment alleges that the defendants "knowingly and willfully combined, conspired, confederated and agreed with each other and with others known and unknown to the Grand Jury" to "knowingly conduct, control, manage, supervise, direct and own all or part of" an unlicensed "money transmitting business," based on the defendants' operation of e-Gold and G & SR (through OmniPay). Indictment at ¶¶ 49-76.[1]

As noted, *supra*, this alleged money transmitting business required a digital currency exchange service in order to operate. Thus, "[t]o obtain 'e-gold' through OmniPay [G & SR's digital currency exchange service], a customer was required *to wire* national currency, in an amount greater than $1,000, to a bank account specified by the E-GOLD operation. Thereafter, the customer's 'e-gold' account would be credited for the amount *of the wire*, minus an exchange fee collected by OmniPay." Indictment at ¶ 58 (emphasis added).[2] Each of the alleged overt acts in furtherance of the alleged conspiracy concerns either a transfer "by wire" or a transfer of e-gold from one e-gold account to another. See id. at ¶¶ 75-76.

---

[1]    The Indictment refers repeatedly to the alleged money transmitting business as "the E-GOLD operation." There is no such entity. Rather, the Indictment uses this term to refer collectively to e-Gold, G & SR, and OmniPay. See Indictment at ¶¶ 52-53.

[2]    The Indictment specifically alleges:

> Defendants conducted *wire transfers* both into and out of their GSR bank accounts in amounts generally totaling millions of dollars each month, both within and outside of the United States. Defendants received *wire transfers* into their accounts from individual customers seeking to exchange the national currency into "e-gold" and from other individuals and entities who needed to buy "e-gold" to provide their own "e-gold" exchange service. Defendants transferred money out of their accounts *by wire* for the purpose of exchanging "e-gold" back into national currency. Defendants *transferred funds between e-gold accounts* to fulfill orders by their customers.

Indictment at ¶ 66 (emphasis added).

According to the Indictment, the operation of this alleged business was unlawful under 18 U.S.C. § 1960.  The Indictment alleges that e-Gold and G & SR (OmniPay), collectively referred to in the Indictment as "the E-GOLD operation," are an unlicensed "money transmitting business" that: (1) affected interstate and foreign commerce; (2) operated without the appropriate license from the District of Columbia; (3) failed to comply with federal registration requirements; and (4) "involved the transportation and transmission of funds that were known to the defendants to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity."  Indictment at ¶ 50; see also id. at ¶ 53 ("The E-GOLD operation was operating as a money transmitting business"); id. at ¶ 68 (alleging that the defendants operated "the money transmitting business of E-Gold and OmniPay without a license").

**B.    Count Three (Operation of an Unlicensed Money Transmitting Business)**

Without alleging any additional facts, Count Three alleges the substantive offense of operating an unlicensed money transmitting business, again based on the defendants' operation of e-Gold and G & SR.  See Indictment at 25-26 (alleging that the defendants "did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business . . . through the operation of E-GOLD and GSR d/b/a OmniPay").  And as with the conspiracy count, Count Three alleges that the operation of these businesses violated 18 U.S.C. § 1960 because the businesses are, individually or collectively, an unlicensed "money transmitting business" that: (1) affected interstate and foreign commerce; (2) operated without the appropriate license from the District of Columbia; (3) failed to comply with federal registration requirements; and (4) "otherwise involved the transportation and transmission of

funds that are known to the defendant to have been derived from a criminal offense and are intended to be used to promote and support unlawful activity." Id.

### C.    Count Four (Money Transmission Without a License)

Count Four alleges that from approximately May 14, 2002 though approximately March 25, 2003, the defendants engaged in the business of money transmission in the District of Columbia without obtaining the proper state license, in violation of D.C. Code § 26-1002. Indictment at 26.[3]  As with Count Three, Count Four sets forth no factual allegations.

### ARGUMENT

### I.    BECAUSE 18 U.S.C. § 1960 APPLIES ONLY TO BUSINESSES THAT ENGAGE IN CASH TRANSACTIONS, COUNTS TWO AND THREE SHOULD BE DISMISSED FOR FAILURE TO STATE AN OFFENSE

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B).  By its terms, Section 1960 applies only to "money transmitting business[es]." 18 U.S.C. § 1960.  As explained more fully, *infra*, in order to qualify as a "money transmitting business," a business must engage in cash transactions.  Because the Indictment fails to allege that either e-Gold or G & SR engages in cash transactions — and indeed specifically alleges that e-Gold merely transfers e-gold between accounts and that G & SR transacts in wires — they cannot constitute a money transmitting business, either individually or collectively.  Thus, under the terms of the Indictment, the defendants could not have violated the law by operating an unlicensed money transmitting business, or by conspiring to operate an unlicensed money transmitting business.  Accordingly, Counts Two and Three of the Indictment must be dismissed.

---

[3]        Counts Two and Three cover a longer period of time than Count Four.  Both Counts Two and Three cover the period from approximately October 26, 2001 through December 2005.

A.    **Only a Business That Engages in Cash Transactions May Be Considered a "Money Transmitting Business"**

In order to qualify as an unlicensed money transmitting business under Section 1960, a business must first meet two threshold requirements.  First, the business must be a "money transmitting business."  18 U.S.C. § 1960(b)(1).  Second, the business must be one that "affects interstate or foreign commerce."  Id.  In addition to those two prerequisites, a business can be an unlicensed money transmitting business only if it satisfies at least one of three additional conditions: (1) the business must be operating without the appropriate state license, in a state where such operation is a misdemeanor or a felony; (2) the business must "fail[] to comply with the money transmitting business registration requirements" under 31 U.S.C. § 5330 or the regulations promulgated thereunder; or (3) the business must otherwise involve the transportation or transmission of funds that are known to the defendant to have been derived from or intended to be used to promote or support unlawful activity.  18 U.S.C. §§ 1960(b)(1)(A)-(C).

The first threshold element for a Section 1960 violation is that the business be a "money transmitting business."  Yet, while Section 1960 defines "money transmitting," it does not define the term "money transmitting business."  See 18 U.S.C. § 1960(b)(2).  Section 1960(b)(2) includes in the definition of "money transmitting" a broad array of activity, including transmitting "funds" by wire.  However, even if engaging in non-cash transactions constitutes "money transmitting," as set forth below, in order to determine whether one is engaged in a "money transmitting business," one needs to look to 31 U.S.C. § 5330, which is referenced in Section 1960(b)(1)(B).  Thus, even if the Indictment adequately alleges that the defendants engaged in "money transmitting," it does not adequately allege that the defendants operated a "money transmitting business."  Accordingly, it fails to allege a violation of operating an

unlicensed "money transmitting business" in violation of § 1960, and it therefore fails to allege a conspiracy to do so.

As indicated in 18 U.S.C. § 1960(b)(1)(B), Section 5330 of Title 31 sets forth the underlying federal registration requirements. "Money transmitting business" is defined in 31 U.S.C. § 5330(d)(1). Indeed, Section 5330(d)(1) sets forth the only definition of the term "money transmitting business" found in the United States Code.

Section 5330(d)(1)(B) provides, in part, that a business can constitute a money transmitting business *only* when it is required to file reports under 31 U.S.C. § 5313. <u>See</u> 31 U.S.C. § 5330(d)(1)(B). Section 5313, in turn, makes clear that such reports must be filed *only* by domestic financial institutions involved in transactions "for the payment, receipt, or transfer of *United States coins and currency* (or other monetary instruments the Secretary of Treasury prescribes)." 31 U.S.C. § 5313(a) (emphasis added).

The "currency transaction reports" referred to in Section 5330(d)(1)(B) contain the following definitions:

> **Currency**. The *coin and paper money* of the United States or any other country, which is circulated and customarily used and accepted as money.

<u>See</u> Currency Transaction Report at 3 (Department of the Treasury FinCEN Form 104) (attached hereto as Exhibit A) (emphasis added).

> **Transaction in Currency**. The **physical** transfer of currency from one person to another. This does not include a transfer of funds by means of bank check, bank draft, wire transfer or other written order that does not involve the physical transfer of currency.

<u>Id.</u> (emphasis in original).

**B.    Because the Indictment Does Not Allege That the Defendants Engaged in Cash Transactions, It Fails to Establish That They Operated a "Money Transmitting Business"**

In other words, in order to qualify as a "money transmitting business," a business must be required to file reports under 31 U.S.C. § 5313, and a business is only required to file reports under § 5313 if it engages in cash (coin and paper money) transactions.  While the Indictment alleges that *other* exchangers accepted cash, it does not allege that either e-Gold or G & SR transacted in cash.[4]   Instead, it alleges that G & SR engages in transactions by bank wire.  See Indictment at ¶ 58 ("To obtain 'e-gold' through OmniPay, a customer was required *to wire* national currency, in an amount greater than $1,000, to a bank account specified by the E-GOLD operation.  Thereafter, the customer's 'e-gold' account would be credited *for the amount of the wire*, minus an exchange fee collected by OmniPay.") (emphasis added).  And it alleges that e-Gold provides the settlement platform through which e-gold is transferred from one e-gold account to another.  See id. at ¶¶ 3-4 (alleging that e-Gold maintains customer accounts and transfers e-gold between e-gold accounts, but failing to allege that e-Gold engages in even wire transactions, much less cash transactions, with customers).

Because the Indictment fails to allege that either e-Gold or G & SR engage in transactions involving United States coins or currency, or any other monetary instrument prescribed by the Secretary of Treasury, the Indictment fails to allege they are required by Section 5313(a) to file reports.  Thus, neither is a "money transmitting business" under the statute.  And because neither is a "money transmitting business," neither can be an "unlicensed money transmitting business" under Section 1960.  Accordingly, the defendants — through their

---

[4]    The Indictment does not allege that the defendants either did or conspired to "conduct, control, manage, supervise, direct and own" these non-defendant exchangers in violation of Section 1960.  Rather, it alleges a Section 1960 violation based on the defendants' conducting, controlling, managing, supervising and owning of e-Gold and G & SR, entities that are not alleged to have engaged in cash transactions.

operation of e-Gold and G & SR — even accepting all of the factual allegations in the

Indictment, could not have violated the law by operating an unlicensed money transmitting

business, or by conspiring to do so.  Thus, Count Two must be dismissed for failure to allege a

cognizable conspiracy, and Count Three must be dismissed for failure to charge an offense.

## II.   ALTERNATIVELY, COUNTS TWO AND THREE OF THE INDICTMENT SHOULD BE DISMISSED BECAUSE SECTION 1960 FAILS TO PROVIDE FAIR WARNING OF THE CONDUCT IT PROSCRIBES

A criminal statute that fails to provide fair warning of the conduct it proscribes violates

the Due Process Clause of the United States Constitution.  See United States v. Lanier, 520 U.S.

259, 266 (1997); Bouie v. City of Columbia, 378 U.S. 347, 350-51 (1964).  This "fair warning

requirement" manifests itself in three ways:

> First, the vagueness doctrine bars enforcement of "a statute which
> either forbids or requires the doing of an act in terms so vague that
> men of common intelligence must necessarily guess at its meaning
> and differ as to its application" . . . . Second, as a sort of "junior
> version of the vagueness doctrine," . . . the rule of lenity ensures
> fair warning by so resolving ambiguity in a criminal statute as to
> apply it only to conduct clearly covered. . . . Third, . . . due process
> bars courts from applying a novel construction of a criminal statute
> to conduct that neither the statute nor any prior judicial decision
> has fairly disclosed to be within its scope.

Lanier, 520 U.S. at 266 (internal citations omitted).

### A.   Section 1960 Is, At Best, Ambiguous as to Whether a Business that Engages Only in Non-Cash Transactions Qualifies as a "Money Transmitting Business"

#### 1.   Section 1960 is Unconstitutionally Vague

A criminal law is invalid under the vagueness doctrine when it fails to "provide the kind

of notice that will enable ordinary people to understand what conduct it prohibits."  City of

Chicago v. Morales, 527 U.S. 41, 56 (1999).  "The degree of vagueness that the Constitution

tolerates — as well as the relative importance of fair notice and fair enforcement — depends in

part on the nature of the enactment."  Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).

Section 1960 sets forth a general intent crime.  See United States v. Keleta, 441 F. Supp. 2d 1, 1-3 (D.D.C. 2006); see also United States v. Talebnejad, 460 F.3d 563, 568, 572 (4th Cir. 2006) (holding that a defendant need not have knowledge of licensing requirements, but rather need only have knowledge that he or she is operating a money transmitting business), cert. denied, 127 S. Ct. 1313 (2007); United States v. Barre, 324 F. Supp. 2d 1173, 1177 (D. Colo. 2004) (same).  Accordingly, Section 1960 does not contain a specific intent element that "[might] mitigate a law's vagueness."  See Village of Hoffman Estates, 455 U.S. at 499 ("[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

As discussed, supra, Section 1960 does not itself define "money transmitting business," but rather requires reference to two additional statutes: 31 U.S.C. §§ 5313(a) and 5330(d)(1). Once reaching the definition, one finds that a "money transmitting business" refers to a business that engages in cash transactions — those involving "United States coins and currency (or any other monetary instruments the Secretary of Treasury prescribes)."  See 31 U.S.C. § 5313(a) (emphasis added).

Yet, Section 1960 includes a definition for "money transmitting," which "includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(b)(2) (emphasis added).  If the definition of "money transmitting" in Section 1960(b)(2) is intended to trump the definition of "money transmitting business" in 31 U.S.C. §

5330(d)(1) and prohibit operating a business that does not deal in cash and is not required to file reports under Section 5313, the statute does not by its terms manifest this intent.[5]

Accordingly, the statute is "so vague that men of common intelligence must necessarily guess at its meaning." See Lanier, 520 U.S. at 266. Given the conflicting nature of the terms "money transmitting" and "money transmitting business," Section 1960 fails to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." See Morales, 527 U.S. at 56.

### 2.     The Rule of Lenity Governs the Interpretation of an Ambiguous Statute

Since it is ambiguous at best whether Section 1960 reaches the conduct alleged in Counts Two and Three of the Indictment, the rule of lenity dictates that the ambiguity must be resolved in the defendants' favor. When "the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." Crandon v. United States, 494 U.S. 152, 158 (1990). As the Supreme Court has stated:

> We have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.

Arthur Andersen LLP v. United States, 544 U.S. 696, 703 (2005) (quoting United States v. Aguilar, 515 U.S. 593, 600 (1995) (internal citations and quotation marks omitted)).

The rule of lenity, therefore, "works to protect a citizen from punishment under a statute that gives at best dubious notice that it has criminalized his conduct." Valdes v. United States, 475 F.3d 1319, 1323 (D.C. Cir. 2007). Under this principle, "where text, structure, and history

---

[5]     Indeed, the reference in Section 1960(b)(2) to 31 U.S.C. § 5330(d)(1) specifically belies any such intent.

fail to establish that the Government's position is unambiguously correct," courts must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor."   United States v. Granderson, 511 U.S. 39, 54 (1994).

In this case, it cannot be said that the Government's position — that Section 1960 applies to businesses that do not engage in cash transactions — is "unambiguously correct."  By virtue of Section 5313's specific requirement in the definition of "money transmitting business" of transactions in "United States coins and currency (or any other monetary instruments the Secretary of Treasury prescribes)," Section 1960 does not make reasonably clear that a business that does not engage in cash transactions can constitute a "money transmitting business."  Thus, the statute fails to make reasonably clear that the defendants' alleged unlicensed operation of e-Gold and G & SR — businesses that do not engage in cash transactions — could subject them to federal criminal penalties.  Accordingly, the Court must resolve that ambiguity in the defendants' favor, and dismiss Counts Two and Three of the Indictment.

**B.  Any Construction of Section 1960 to Encompass Businesses that Engage Solely in Non-Cash Transactions Would Be Novel and Would Violate Due Process**

No court has ever construed Section 1960 to deem a business that does not transact in cash to be a money transmitting business.  Nor have governmental or quasi-governmental agencies prior to the Indictment in this case, or for that matter since, provided fair notice that businesses that do not transact in cash are "money transmitting businesses" that require licensure.

Governmental pronouncements have provided no guidance that would suggest that all digital currency businesses, whether or not they accept cash, are "money transmitting businesses."  For example, a December 2005 report — issued jointly by a number of government agencies, including the Department of Justice — observed that "*[w]hether an online payment*

*system or digital currency service meets the definition of a money transmitting business pursuant to [Bank Secrecy Act] regulations . . . depends upon its location and the ways in which it participates in or conducts transactions.*" See MONEY LAUNDERING THREAT ASSESSMENT WORKING GROUP, U.S. MONEY LAUNDERING THREAT ASSESSMENT at 27 (2005) (emphasis added), *available at* http://www.ots.treas.gov/docs/4/480215.pdf.

Similarly, in an October 13, 2006 report, the Financial Action Task Force ("FATF") indicated that in the United States, *money transmitters* are among money services businesses that are required to register with the Financial Intelligence Unit known as the Financial Crimes Enforcement Network ("FinCEN"), are subject to anti-money laundering reporting and recordkeeping requirements, and are often required to be licensed on the state level. See FINANCIAL ACTION TASK FORCE, REPORT ON NEW PAYMENT METHODS at 39 (2006), *available at* http://www.fatf-gafi.org/dataoecd/30/47/37627240.pdf. But, the FATF stated that "*[w]hether an online payment system or digital precious metals dealer meets the definition of a money transmitter pursuant to the relevant regulations, though, depends upon its location and the ways in which it participates in or conducts transactions.*" Id. (emphasis added).

A January 2007 staff report issued by the United States House of Representatives Committee on Energy and Commerce, addressing digital currencies such as e-gold, concluded that: "*Digital currencies that do business in the U.S. are not subject to any of the U.S. banking requirements.*" STAFF OF HOUSE COMM. ON ENERGY & COMMERCE, 109TH CONG., SEXUAL EXPLOITATION OF CHILDREN OVER THE INTERNET at 30 (2007) (emphasis added), *available at* http://republicans.energycommerce.house.gov/108/News/01032007_Report.pdf. The staff report noted "*the lack of regulation of digital currencies by any government entity, domestic or foreign*." Id. at 29-30 (emphasis added); see also id. at 6 ("Digital currencies on the Internet are

not regulated anywhere in the world.")  Likewise, a Special Agent of the FBI's Cyber Crimes Unit, when questioned by Fox News in February 2007 about the Government's investigation of the e-Gold business, stated that: "At this point it is not illegal, *it operates in an area of the law where there is no law*." See *FOX 11 Investigates: E-Gold* (KTTV video, 2007) (emphasis added), *available at* http://www.myfoxla.com/myfox/pages/ContentDetail?contentId=2521038.

On May 3, 2007 — the date on which the defendants were arraigned in this case — the Department of Justice announced the release of the 2007 National Money Laundering Strategy. (the "2007 Strategy").  See Press Release, U.S. Dep't of Justice, 2007 National Money Laundering Strategy Released (May 3, 2007), *available at* http://www.usdoj.gov/opa/pr/2007/May/07_opa_325.html.  Specifically citing e-Gold as an example of what it called a "digital currency service," the 2007 Strategy noted that it was not clear whether such services are money transmitting businesses that require licensing.  See U.S. DEP'T OF TREASURY, U.S. DEP'T OF JUSTICE, & U.S. DEP'T OF HOMELAND SECURITY, 2007 NAT'L MONEY LAUNDERING STRATEGY at 43, 45 (2007) ("Whether an online payment system or digital currency service meets the definition of a money transmitter pursuant to [Bank Secrecy Act] regulations, though, depends upon its location and the ways in which it participates in or conducts transactions."), *available at* http://www.treas.gov/press/releases/docs/nmls.pdf.

If this Court were to hold that the Indictment adequately alleges that e-Gold is a "money transmitting business" to which Section 1960 applies, relying on a novel interpretation that Section 1960 applies to entities that do not transact in cash, the statute would be unconstitutionally vague as to the defendants.  At the time that they were engaged in the conduct at issue in the Indictment, they had no fair notice that the alleged conduct was in violation of Section 1960.  Accordingly, Counts Two and Three of the Indictments would need to be

dismissed, even were the Court to accept the Government's current novel reading of Section 1960.

## III.    THE COURT SHOULD EXERCISE ITS DISCRETION TO DIMISS COUNT FOUR

While a federal district court may exercise jurisdiction over a defendant charged with violating a local offense that is properly joined in an indictment with a federal offense, the exercise of that power is purely discretionary.  In re United States v. Kember, 648 F.2d 1354, 1359-60 (D.C. Cir. 1980).  There is, however, no reason for a federal court to exercise that discretion when there is no accompanying federal offense.

Counts Two and Three allege violations of federal money transmitting statutes, and Count Four alleges a violation of the D.C. Code's money transmitting provision, § 26-1002. With Counts Two and Three in the Indictment, judicial economy supports trying Count Four in federal court at the same time that Counts Two and Three are tried, rather than dismissing Count Four and having a separate trial on that count in D.C. Superior Court.  However, with the dismissal of Counts Two and Three on the grounds set forth above, that judicial economy disappears.  The general presumption that state offenses should be tried in state court warrants the exercise of the Court's discretion, upon the dismissal of Counts Two and Three, to dismiss the alleged state offense set forth in Count Four.  Id. at 1360 ("[T]he U.S. District Court for the District of Columbia should decline to try local offenses when those offenses have been disassociated from any federal charges prior to trial and retention of the case would not comport with '[t]he responsibilities of the District Court with respect to matters of federal concern.'") (quoting United States v. Jackson, 562 F.2d 789, 800 (D.C. Cir. 1977)).

IV.    **COUNTS THREE AND FOUR SHOULD BE DISMISSED FOR FAILURE TO SET FORTH A PLAIN, CONCISE, AND DEFINITE WRITTEN STATEMENT OF THE ESSENTIAL FACTS**

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  An indictment is insufficient if it does not enable the defendant "to plead [either] an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974).  While the language of the statute may be used in the general description of an alleged offense, "'it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'"  Id. (quoting United States v. Hess, 124 U.S. 483, 487 (1888)).

Both Counts Three and Four of the Indictment merely track the language of the statute alleged to have been violated, without making any independent factual allegations.  Further, neither Count Three nor Count Four incorporate and re-allege any of the factual allegations asserted in support of Counts One and Two.  See Indictment at 25-26.

"Each count in an indictment is regarded as if it was a separate indictment."  United States v. Fulcher, 626 F.2d 985, 988 (D.C. Cir. 1980) (citing Dunn v. United States, 284 U.S. 390, 393 (1932)).  "Each count must stand on its own, and cannot depend for its validity on the allegations of any other count *not specifically incorporated*."  Id. (emphasis added).  Thus, the allegations of one count of an indictment are not "necessarily incorporated" in the other counts, and one count "cannot absorb by osmosis" the allegations of another count.  Id.  Because Counts Three and Four fail to set forth any factual allegations, they plainly fail to meet the mandate of

Rule 7(c)(1) to set forth "a plain, concise and definite written statement of the essential facts constituting the offense charged."

In United States v. Pickett, 209 F.Supp.2d 84, 88 (D.D.C. 2002) (Jackson, J.), the court dismissed a count of the indictment in circumstances similar to those found here. In Pickett, the deficient count did not elaborate on the nature of the defendant's alleged criminal conduct, nor did it incorporate by reference any factual allegations found elsewhere in the indictment. Pickett, 209 F. Supp. 2d at 88. Instead, the deficient count "merely reiterate[d] the statutory language of the offense it purport[ed] to charge." Id. The court observed that while the grand jury might have intended for the conduct charged in an earlier count to "constitute the substance of the offense it sought to charge" in the deficient count, "[i]t did not, however, say so." Accordingly, the court concluded that "neither this Court nor a trial jury may be permitted to guess at the grand jury's unexpressed intent." Id. at 89 (citing Russell v. United States, 369 U.S. 749, 770 (1962); United States v. Nance, 533 F.2d 699, 701 (D.C.Cir.1976)). The court also found that no other court could say — upon a subsequent prosecution of the defendant on an "identical charge in a future indictment" — that a jury verdict would operate as a bar to that prosecution. Id.

As in Pickett, while Counts Three and Four of the Indictment track the relevant statutory language, they fail to include any factual allegations — within the counts themselves, or by reference to other counts in the Indictment. Counts Three and Four merely allege that the defendants violated 18 U.S.C. § 1960 and D.C. Code § 26-1002 "through the operation of E-GOLD and GSR d/b/a OmniPay." See Indictment at 25-26. These conclusory allegations fail to set forth the essential facts on which they are based. Accordingly, Counts Three and Four must be dismissed for failure to comply with Rule 7(c)(1). See Fulcher, 626 F.2d at 987-88 (holding that a count must be dismissed when it fails to allege sufficient facts and does not incorporate

factual allegations by reference to other sections of the indictment, and reversing defendant's conviction on such a deficient count).

## **<u>CONCLUSION</u>**

For the reasons set forth above, Counts Two, Three and Four of the Indictment should be dismissed.

Respectfully submitted,


By: _____/s/_____
     Barry J. Pollack (D.C. Bar No. 434513)
     Dawn E. Murphy-Johnson (D.C. Bar No. 490232)
     KELLEY DRYE COLLIER SHANNON
     3050 K Street, N.W., Suite 400
     Washington, D.C. 20007
     bpollack@kelleydrye.com
     202.342.8400
     202.342.8451 fax

     *Attorneys for Defendant Barry K. Downey*


     Mitchell S. Fuerst
     Andrew S. Ittleman, Esq. CAMS
     Fuerst Humphrey Ittleman, PL
     1001 Brickell Bay Drive
     Suite 2002
     Miami, Florida 33131
     mfuerst@fuerstlaw.com
     305.350.5694
     305.371.8989 fax

     *Attorneys for Defendant e-gold, Ltd.*


     Aron U. Raskas
     Kramon & Graham, P.A.
     One South Street, Suite 2600
     Baltimore, MD 21202-3201
     aur@kg-law.com
     (410) 752-6030
     (410) 361-8211 fax

     *Attorneys for Defendant Gold & Silver Reserve, Inc.*

Joshua G. Berman
Machalagh Proffit-Higgins
Sonnenschein Nath & Rosenthal LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, DC  20005-3364
jberman@sonnenschein.com
202/408-5208
202/408-6399 fax

*Attorneys for Defendant Douglas L. Jackson*


A.J. Kramer
Michelle Peterson
Office of the Federal Public Defender
625 Indiana Avenue  N.W.
Suite 550
Washington, D.C. 20004
Shelli_Peterson@fd.org
(202) 208-7528

*Attorneys for Reid A. Jackson*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2008, a true and correct copy of the foregoing Defendants' Motion to Dismiss Counts Two, Three and Four of the Indictment was served via ECF on all counsel of record.

_____/s/_____
Barry J. Pollack

# EXHIBIT A

| FINCEN Form **104**<br>(Eff. December 2003)<br>Department of the Treasury<br>FinCEN | **Currency Transaction Report**<br>▶ Previous editions will not be accepted after August 31, 2004.<br>▶ Please type or print.<br>*(Complete all parts that apply--See Instructions)* | <br>OMB No. 1506-0004 |

**1**  Check all box(es) that apply:   **a** ☐ Amends prior report   **b** ☐ Multiple persons   **c** ☐ Multiple transactions

**Part I   Person(s) Involved in Transaction(s)**

**Section A--Person(s) on Whose Behalf Transaction(s) Is Conducted**

**2**  Individual's last name or entity's name | **3**  First name | **4**  Middle initial

**5**  Doing business as (DBA) | **6** SSN or EIN

**7**  Address (number, street, and apt. or suite no.) | **8**  Date of birth __/__/____  MM DD YYYY

**9**  City | **10** State | **11** ZIP code | **12** Country code (if not U.S.) | **13** Occupation, profession, or business

**14** If an individual, describe method used to verify identity:  **a** ☐ Driver's license/State I.D.  **b** ☐ Passport  **c** ☐ Alien registration

**d** ☐ Other _____  **e** Issued by: _____  **f** Number: _____

**Section B--Individual(s) Conducting Transaction(s) (if other than above).**
If Section B is left blank or incomplete, check the box(es) below to indicate the reason(s)

**a** ☐ Armored Car Service  **b** ☐ Mail Deposit or Shipment  **c** ☐ Night Deposit or Automated Teller Machine  **d** ☐ Multiple Transactions  **e** ☐ Conducted On Own Behalf

**15** Individual's last name | **16**  First name | **17**  Middle initial

**18** Address (number, street, and apt. or suite no.) | **19** SSN

**20** City | **21** State | **22** ZIP code | **23** Country code (If not U.S.) | **24** Date of birth __/__/____  MM DD YYYY

**25** If an individual, describe method used to verify identity:  **a** ☐ Driver's license/State I.D.  **b** ☐ Passport  **c** ☐ Alien registration

**d** ☐ Other _____  **e** Issued by: _____  **f** Number: _____

**Part II   Amount and Type of Transaction(s).   Check all boxes that apply.**

**26**  Total cash in $_____ **0**.00 | **27**  Total cash out $_____ **0**.00 | **28**  Date of transaction __/__/____  MM DD YYYY

**26a**  Foreign cash in _____ **0**.00 *(see instructions, page 4)* | **27a**  Foreign cash out _____ **0**.00 *(see instructions, page 4)*

**29** ☐  Foreign Country_____ | **30** ☐  Wire Transfer(s) | **31** ☐  Negotiable Instrument(s) Purchased

**32** ☐  Negotiable Instrument(s) Cashed | **33** ☐  Currency Exchange(s) | **34** ☐  Deposit(s)/Withdrawal(s)

**35** ☐  Account Number(s) Affected (if any): | **36** ☐  Other (specify)

_____

_____

_____

**Part III   Financial Institution Where Transaction(s) Takes Place**

**37** Name of financial institution | Enter Regulator or BSA Examiner code number ▶ (see instructions)

**38** Address (number, street, and apt. or suite no.) | **39** EIN or SSN

**40** City | **41** State | **42** ZIP code | **43** Routing (MICR) number

**Sign Here** ▶ | **44** Title of approving official | **45** Signature of approving official | **46** Date of signature __/__/____  MM DD YYYY

**47** Type or print preparer's name | **48** Type or print name of person to contact | **49** Telephone number (___)___-____

▶ For Paperwork Reduction Act Notice, see page 4.     Cat. No. 37683N     FinCEN Form 104 (Rev. 08-03)

FinCEN Form 104 (Eff. 12-03)                                                                                   Page 2

# Multiple Persons
Complete applicable parts below if box 1b on page 1 is checked

**Part I    Person(s) Involved in Transaction(s)**

**Section A--Person(s) on Whose Behalf Transaction(s) Is Conducted**

| 2 Individual's last name or entity's name | 3 First name | 4 Middle initial |
|---|---|---|

| 5 Doing business as (DBA) | 6 SSN or EIN |
|---|---|

| 7 Address (number, street, and apt. or suite no.) | 8 Date of birth / / MM DD YYYY |
|---|---|

| 9 City | 10 State | 11 ZIP code | 12 Country code (if not U.S.) | 13 Occupation, profession, or business |
|---|---|---|---|---|

14 If an individual, describe method used to verify identity:  **a** ☐ Driver's license/State I.D.  **b** ☐ Passport  **c** ☐ Alien registration

**d** ☐ Other _____  **e** Issued by: _____  **f** Number: _____

**Section B--Individual(s) Conducting Transaction(s) (if other than above).**

| 15 Individual's last name | 16 First name | 17 Middle initial |
|---|---|---|

| 18 Address (number, street, and apt. or suite no.) | 19 SSN |
|---|---|

| 20 City | 21 State | 22 ZIP code | 23 Country code (if not U.S.) | 24 Date of birth / / MM DD YYYY |
|---|---|---|---|---|

25 If an individual, describe method used to verify identity:  **a** ☐ Driver's license/State I.D.  **b** ☐ Passport  **c** ☐ Alien registration

**d** ☐ Other _____  **e** Issued by: _____  **f** Number: _____

**Part I    Person(s) Involved in Transaction(s)**

**Section A--Person(s) on Whose Behalf Transaction(s) Is Conducted**

| 2 Individual's last name or entity's name | 3 First name | 4 Middle initial |
|---|---|---|

| 5 Doing business as (DBA) | 6 SSN or EIN |
|---|---|

| 7 Address (number, street, and apt. or suite no.) | 8 Date of birth / / MM DD YYYY |
|---|---|

| 9 City | 10 State | 11 ZIP code | 12 Country code (if not U.S.) | 13 Occupation, profession, or business |
|---|---|---|---|---|

14 If an individual, describe method used to verify identity:  **a** ☐ Driver's license/State I.D.  **b** ☐ Passport  **c** ☐ Alien registration

**d** ☐ Other _____  **e** Issued by: _____  **f** Number: _____

**Section B--Individual(s) Conducting Transaction(s) (if other than above).**

| 15 Individual's last name | 16 First name | 17 Middle initial |
|---|---|---|

| 18 Address (number, street, and apt. or suite no.) | 19 SSN |
|---|---|

| 20 City | 21 State | 22 ZIP code | 23 Country code (if not U.S.) | 24 Date of birth / / MM DD YYYY |
|---|---|---|---|---|

25 If an individual, describe method used to verify identity:  **a** ☐ Driver's license/State I.D.  **b** ☐ Passport  **c** ☐ Alien registration

**d** ☐ Other _____  **e** Issued by: _____  **f** Number: _____

## Suspicious Transactions

This Currency Transaction Report (CTR) should NOT be filed for suspicious transactions involving $10,000 or less in currency OR to note that a transaction of more than $10,000 is suspicious. Any suspicious or unusual activity should be reported by a financial institution in the manner prescribed by its appropriate federal regulator or BSA examiner. (See the instructions for Item 37). If a transaction is suspicious and in excess of $10,000 in currency, then both a CTR and the appropriate Suspicious Activity Report form must be filed.

In situations involving suspicious transactions requiring immediate attention, such as when a reportable transaction is ongoing, the fianacial institution shall immediately notify, by telephone, appropriate law enforcement and regulatory authorities in addition to filing a timely suspicious activity report.

### General Instructions

**Who Must File.** Each financial institution (other than a casino, which instead must file FinCEN Form 103, and the U.S. Postal Service for which there are separate rules) must file FinCEN Form 104 (CTR) for each deposit, withdrawal, exchange of currency, or other payment or transfer, by, through, or to the financial institution which involves a transaction in currency of more than $10,000. Multiple transactions must be treated as a single transaction if the financial institution has knowledge that (1) they are by or on behalf of the same person, and (2) they result in either currency received (Cash In) or currency disbursed (Cash Out) by the financial institution totaling more than $10,000 during any one business day. For a bank, a business day is the day on which transactions are routinely posted to customers' accounts, as normally communicated to depository customers. For all other financial institutions, a business day is a calendar day.

Generally, financial institutions are defined as banks, other types of depository institutions, brokers or dealers in securities, money transmitters, currency exchangers, check cashers, and issuers and sellers of money orders and traveler's checks. Should you have questions, see the definitions in 31 CFR Part 103.

**When and Where To File.** This form should be e-filed through the Bank Secrecy Act E-filing System. Go to http: //bsaefiling.fincen.treas.gov/index.jsp to register. This form is also available for download on the Financial Crimes Enforcement Network's Web site at www.fincen.gov, or may be ordered by calling the IRS Forms Distribution Center at (800) 829-3676. File this CTR by the 15th calendar day after the day of the transaction with the:

> Enterprise Computing Center - Detroit
> ATTN: CTR
> P.O. Box 33604
> Detroit, MI 48232-5604

Keep a copy of each CTR for five years from the date filed.

A financial institution may apply to file the CTRs magnetically. To obtain an application to file magnetically, write to the:

> Enterprise Computing Center - Detroit
> ATTN: CTR Magnetic Media Coordinator
> P.O. Box 33604
> Detroit, MI 48232-5604

**Identification Requirements.** All individuals (except a employees of armored car services) conducting a reportable transaction(s) for themselves or for another person, must be identified by means of an official

document(s). Acceptable forms of identification include driver's license, military and military/dependent identification cards, passport, state issued identification card, cedular card (foreign), non-resident alien identification cards, or any other identification document or documents, which contain name and preferably address and a photograph and are normally acceptable by financial institutions as a means of identification when cashing checks for persons other than established customers.

Acceptable identification information obtained previously and maintained in the financial institution's records may be used. For example, if documents verifying an individual's identity were examined and recorded on a signature card when an account was opened, the financial institution may rely on that information. In completing the CTR, the financial institution must indicate on the form the method, type, and number of the identification. Statements such as "known customer" or "signature card on file" are not sufficient for form completion.

**Penalties.** Civil and criminal penalties are provided for failure to file a CTR or to supply information or for filing a false or fraudulent CTR. See 31 U.S.C. 5321, 5322 and 5324.

**For purposes of this CTR, the terms below have the following meanings:**

**Currency.** The coin and paper money of the United States or any other country, which is circulated and customarily used and accepted as money.

**Person.** An individual, corporation, partnership, trust or estate, joint stock company, association, syndicate, joint venture or other unincorporated organization or group.

**Organization.** Entity other than an individual.

**Transaction in Currency.** The physical transfer of currency from one person to another. This does not include a transfer of funds by means of bank check, bank draft, wire transfer or other written order that does not involve the physical transfer of currency.

**Negotiable Instruments.** All checks and drafts (including business, personal, bank, cashier's and third-party), money orders, and promissory notes. For purposes of this CTR, all traveler's checks shall also be considered negotiable instruments whether or not they are in bearer form.

**Foreign exchange rate.** If foreign currency is a part of a currency transaction that requires the completion of a CTR, use the exchange rate in effect for the business day of the transaction to compute the amount, in US dollars, to enter in item 26/27. The source of the exchange rate that is used will be determined by the reporting institution.

### Specific Instructions

Because of the limited space on the front and back of the CTR, it may be necessary to submit additional information on attached sheets. Submit this additional information on plain paper attached to the CTR. Be sure to put the individual's or entity's name and identifying number (items 2, 3, 4, and 6 of the CTR) on any additional sheets so that if it becomes separated, it may be associated with the CTR.

**Item 1a. Amends Prior Report.** If this CTR is being filed because it amends a report filed previously, check Item 1a. Staple a copy of the original CTR to the amended one, complete Part III fully and only those other entries which are being amended.

**Item 1b. Multiple Persons.** If this transaction is conducted by more than one person or on behalf of more than one person, check Item 1b. Enter information in Part I for one of the persons and provide information on any other persons on the back of the CTR.

**Item 1c. Multiple Transactions.** If the financial institution has knowledge that there are multiple transactions, check Item 1c.

### PART I - Person(s) Involved in Transaction(s)

Section A must be completed. If an individual conducts a transaction on his own behalf, complete Section A and leave Section "B" BLANK. If an individual conducts a transaction on his own behalf and on behalf of another person(s), complete Section "A" for each person and leave Section "B" BLANK. If an individual conducts a transaction on behalf of another person(s), complete Section "B" for the individual conducting the transaction, and complete Section "A" for each person on whose behalf the transaction is conducted of whom the financial institution has knowledge.

**Section A. Person(s) on Whose Behalf Transaction(s) Is Conducted.** See instructions above.

**Items 2, 3, and 4. Individual/Organization Name.** If the person on whose behalf the transaction(s) is conducted is an individual, put his/her last name in Item 2, first name in Item 3, and middle initial in Item 4. If there is no middle initial, leave item 4 BLANK. If the transaction is conducted on behalf of an entity, enter the name in Item 2 and leave Items 3 and 4 BLANK.

**Item 5. Doing Business As (DBA).** If the financial institution has knowledge of a separate "doing business as" name, enter it in Item 5. For example, Smith Enterprise DBA MJ's Pizza.

**Item 6. SSN/ITIN or EIN.** Enter the Social Security Number (SSN) or Individual Taxpayer Identification Number (ITIN) or Employer Identification Number (EIN) of the person or entity identified in Item 2. If none, write NONE.

**Items 7, 9, 10, 11, and 12. Address.** Enter the permanent address including ZIP Code of the person identified in Item 2. Use the U.S. Postal Service's two letter state abbreviation code. A P. O. Box should not be used by itself, and may only be used if there is no street address. If a P. O. Box is used, the name of the apartment or suite number, road or route number where the person resides must also be provided. If the address is outside the U.S., provide the street address, city, province or state, postal code (if known), and the two letter country code. For country code list go to www.fincen.gov/reg_bsaforms.html or telephone 800-949-2732 and select option number 5. If U.S., leave item 12 blank.

**Item 8. Date of Birth.** Enter the date of birth. Eight numerals must be inserted for each date. The first two will reflect the month, the second two the day, and the last four the year. A zero (0) should precede any single digit number. For example, if an individual's birth date is April 3 1948, Item 8 should read 04 03 1948.

**Item 13. Occupation, profession, or business.** If known, identify the occupation, profession or business that best describes the individual or entity in Part I (e.g., attorney, car dealer, carpenter, doctor, farmer, plumber, truck driver, etc.). Do not use nondescript terms such as businessman, merchant, store owner (unless store's name is provided), or self employed. If unemployed, or retired are used enter the regular or former occupation if known.

**Item 14. If an Individual, Describe Method Used To Verify Identity.** If an individual conducts the transaction(s) on his/her own behalf, his/her identity must be verified by examination of an acceptable document (see General Instructions). For example, check box a if a driver's license is used to verify an individual's identity, and enter the state that issued the license and the number in items e and f. If the transaction is conducted by an individual on behalf of another individual not present, leave item 14 blank. Also leave item 14 blank if the transaction is conducted on behalf of an entity.

FinCEN Form 104  (Eff. 12-03)                                                                                                          Page 4

**Section B. Individual(s) Conducting Transaction(s) (if other than above).** Financial institutions should enter as much information as is available. However, there may be instances in which Items 15-25 may be left BLANK or incomplete. If Items 15-25 are left BLANK or incomplete, check one or more of the boxes provided to indicate the reasons.

**Example:** If there are multiple transactions that, if only when aggregated, the financial institution has knowledge the transactions exceed the reporting threshold, and therefore, did not identify the transactor(s), check box **d** for Multiple Transactions.

**Items 15, 16, and 17. Individual's Name.** Complete these items if an individual conducts a transaction(s) on behalf of another person. For example, if John Doe, an employee of XY Grocery Store, makes a deposit to the store's account, XY Grocery Store should be identified in Section A and John Doe should be identified in Section B.

**Items 18, 20, 21, 22, and 23. Address.** Enter the permanent street address including ZIP Code of the individual. (See the instructions for Items 7 and 9 through 12.) Enter country code if not U.S. (Reference item 12).

**Item 19. SSN/ITIN.** If the individual has a Social Security Number, or Individual Taxpayer Indentifcation Number, enter it in Item 19. If the individual does not have an SSN/ITIN, enter NONE.

**Item 24. Date of Birth.** Enter the individual's date of birth. (See the instructions for Item 8.)

**Item 25. If an Individual, Describe Method Used To Verify Identity.** Enter the method used to identify the individual's identity. (See **General Instructions** and the instructions for Item 14.)

**PART II - Amount and Type of Transaction(s)**
Complete Part II to identify the type of transaction(s) and the amount(s) involved.

**Items 26 and 27. Total Cash In/Total Cash Out.** In the spaces provided, enter the total amount of currency received (Total Cash In) or total currency disbursed (Total Cash Out) by the financial institution. If foreign currency is exchanged, use the U.S. dollar equivalent on the day of the transaction (See "Foreign exchange rates"), and complete item 26a or 27a, whichever is appropriate.

If less than a full dollar amount is involved, increase that figure to the next highest dollar. For example, if the currency totals $20,000.05, show the total as $20,001.00.

**Items 26a and 27a. Foreign cash in/Foreign cash out.** If foreign currency is exchanged, enter the amount of foreign currency (Do not convert to U.S. dollars) in items 26a and 27a. Report country of origin in item 29.

**Item 28. Date of Transaction.** Insert eight numerals for each date. (See instructions for Item 8.)

**Item 29. Foreign Country.** If items 26a and/or 27a are completed indicating that foreign currency is involved, check Item 29 and identify the country. If multiple foreign currencies are involved, check box 36 and identify the additional country(s) and/or currency(s) involved.

**Determining Whether Transactions Meet the Reporting Threshold.**

Only cash transactions that, if alone or when aggregated, exceed $10,000 should be reported on the CTR. Transactions shall not be offset against one another.

If there are both Cash In and Cash Out transactions that are reportable, the amounts should be considered separately and not aggregated. However, they may be reported on a single CTR.

If there is a currency exchange, it should be aggregated separately with each of the Cash In and Cash Out totals.

**Example 1:** A person deposits $11,000 in currency to his savings account and withdraws $3,000 in currency from his checking account. The CTR should be completed as follows:

Cash In $11,000 and no entry for Cash Out. This is because the $3,000 transaction does not meet the reporting threshold.

**Example 2:** A person deposits $11,000 in currency to his savings account and withdraws $12,000 in currency from his checking account. The CTR should be completed as follows:

Cash In $11,000, Cash Out $12,000. This is because there are two reportable transactions. However, one CTR may be filed to reflect both.

**Example 3:** A person deposits $6,000 in currency to his savings account and withdraws $4,000 in currency from his checking account. Further, he presents $5,000 in currency to be exchanged for the equivalent in French Francs. The CTR should be completed as follows:

Cash In $11,000 and no entry for Cash Out. This is because in determining whether the transactions are reportable, the currency exchange is aggregated with each of the Cash In and Cash Out amounts. The result is a reportable $11,000 Cash In transaction. The total Cash Out amount is $9,000, which does not meet the reporting threshold. Therefore, it is not entered on the CTR.

**Example 4:** A person deposits $6,000 in currency to his savings account and withdraws $7,000 in currency from his checking account. Further, he presents $5,000 in currency to be exchanged for the equivalent in French francs. The CTR should be completed as follows:

Cash In $11,000, Cash Out $12,000. This is because in determining whether the transactions are reportable, the currency exchange is aggregated with each of the Cash In and Cash Out amounts. In this example, each of the Cash In and Cash Out totals exceed $10,000 and must be reflected on the CTR.

**Items 30-33.** Check the appropriate item(s) to identify the following type of transaction(s):
  **30.** Wire Transfer(s)
  **31.** Negotiable Instrument(s) Purchased
  **32.** Negotiable Instrument(s) Cashed
  **33.** Currency Exchange(s)

**Item 34. Deposits/Withdrawals.** Check this item to identify deposits to or withdrawals from accounts, e.g. demand deposit accounts, savings accounts, time deposits, mutual fund accounts, or any other account held at the financial institution. Enter the account number(s) in Item 35.

**Item 35. Account Numbers Affected (if any).** Enter the account numbers of any accounts affected by the transactions that are maintained at the financial institution conducting the transaction(s). If necessary, use additional sheets of paper to indicate all of the affected accounts.

**Example 1:** If a person cashes a check drawn on an account held at the financial institution, the CTR should be completed as follows:
  Indicate negotiable instrument(s) cashed and provide the account number of the check.

If the transaction does not affect an account, make no entry.

**Example 2:** A person cashes a check drawn on another financial institution. In this instance, negotiable instrument(s) cashed would be indicated, but no account at the financial institution has been affected. Therefore, Item 35 should be left BLANK.

**Item 36. Other (specify).** If a transaction is not identified in Items 30-34, check Item 36 and provide an additional description. For example, a person presents a check to purchase "foreign currency." If multiple (more than one) foreign currencies are involved in the transaction, enter the amount of the largest foreign currency transaction in item 26a or 27a and that currency's country-code of origin in item 29. Then check box 36 and enter the additional foreign currencies amount(s) and country-code(s) of origin in the space provided.

**PART III - Financial Institution Where Transaction(s) Take Place**

**Item 37. Name of Financial Institution and Identity of Regulator or BSA Examiner.** Enter the financial institution's full legal name and identify the regulator or BSA examiner, using the following codes:

| Regulator or BSA Examiner | CODE |
|---|---|
| Comptroller of the Currency (OCC) | 1 |
| Federal Deposit Insurance Corporation (FDIC) | 2 |
| Federal Reserve System (FRS) | 3 |
| Office of Thrift Supervision (OTS) | 4 |
| National Credit Union Administration (NCUA) | 5 |
| Securities and Exchange Commission (SEC) | 6 |
| Internal Revenue Service (IRS) | 7 |
| U.S. Postal Service (USPS) | 8 |
| Commodity Futures Trading Commission (CFTC) | 9 |
| State Regulator | 10 |

**Items 38, 40, 41, and 42. Address.** Enter the street address, city, state, and ZIP Code of the financial institution where the transaction occurred. If there are multiple transactions, provide information of the office or branch where any one of the transactions has occurred.

**Item 39. EIN or SSN.** Enter the financial institution's EIN. If the financial institution does not have an EIN, enter the SSN of the financial institution's principal owner.

**Item 43. Routing (MICR) Number.** If a depository institution, enter the routing (Magnetic Ink Character Recognition (MICR)) number.

**SIGNATURE**

**Items 44 and 45. Title and signature of Approving Official.** The official who reviews and approves the CTR must indicate his/her title and sign the CTR.

**Item 46. Date of Signature.** The approving official must enter the date the CTR is signed. (See the instructions for Item 8.)

**Item 47. Preparer's Name.** Type or print the full name of the individual preparing the CTR. The preparer and the approving official may not necessarily be the same individual.

**Items 48 and 49. Contact Person/Telephone Number.** Type or print the name and telephone number of an individual to contact concerning questions about the CTR.

**Paperwork Reduction Act Notice.** The requested information is useful in criminal, tax, and regulatory investigations and proceedings. Financial institutions are required to provide the information under 31 U.S.C. 5313 and 31 CFR Part 103, commonly referred to as the Bank Secrecy Act (BSA). The BSA is administered by the U.S. Department of the Treasury's Financial Crimes Enforcement Network (FinCEN). You are not required to provide the requested information unless a form displays a valid OMB control number. The time needed to complete this form will vary depending on individual circumstances. The estimated average time is 19 minutes. If you have comments concerning the accuracy of this time estimate or suggestions for making this form simpler, you may write to the **Financial Crimes Enforcement Network, P. O. Box 39, Vienna, VA 22183. Do not** send this form to this office. Instead, see **When and Where to File** in the instructions.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| E-GOLD LIMITED, | : | Criminal No.  07-109-RMC |
| GOLD & SILVER RESERVE, INC., | : | |
| DOUGLAS L. JACKSON, | : | |
| BARRY K. DOWNEY and | : | |
| REID A. JACKSON | : | |
| _____/ | | |

**[PROPOSED] ORDER**

Upon consideration of the Defendants' Motion to Dismiss Counts Two, Three and Four

of the Indictment, any opposition thereto, and the entire record herein, on this _____ day of

_____, 2008, it is by the Court hereby

**ORDERED** that the defendants' motion is **GRANTED**; and it is further

**ORDERED** that Counts Two, Three and Four of the Indictment are hereby

**DISMISSED**.

_____
The Honorable Rosemary M. Collyer
United States District Judge