## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No.  07-109 (RMC)** |
| **v.** | : | |
| | : | |
| **E-GOLD, LTD.,** | : | |
| **GOLD & SILVER RESERVE, INC.,** | : | |
| **DOUGLAS L. JACKSON,** | : | |
| **BARRY K. DOWNEY, and** | : | |
| **REID A. JACKSON,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANTS'
## MOTION TO DISMISS COUNTS TWO,
## THREE AND FOUR OF THE INDICTMENT

### Introduction

On April 24, 2007, a federal grand jury indicted defendants e-gold, Ltd. ("e-gold"),

purveyor of an alternative payment system based on a "digital currency" known as "e-gold";

Gold & Silver Reserve, Inc. ("GSR"), operator of e-gold's website and a digital currency

exchange service known as "OmniPay," through which funds could be exchanged for e-gold or

vice versa; Douglas L. Jackson, co-founder, Chairman, and Chief Executive Officer of e-gold

and GSR and majority owner of GSR; Barry K. Downey, co-founder, Secretary, and Director of

e-gold and GSR and owner of 20 percent of GSR; and Reid A. Jackson, Managing Director of e-

gold and GSR and owner of three percent of GSR, for:  conspiracy to launder money instruments

(from about 1999 through December 2005), in violation of 18 U.S.C. §§ 1956, 1957 (Count 1);

conspiracy to operate an unlicensed money transmitting business (from October 26, 2001 through

in or about December 2005), in violation of 18 U.S.C. § 371 (Count 2); operation of an

unlicensed money-transmitting business (from October 26, 2001 through at least until December of 2005), in violation of 18 U.S.C. § 2, 18 U.S.C. § 1960 (Count 3); and money transmitting without a license (from May 14, 2002 through at least March 23, 2003), in violation of D.C. Code § 26-1002 (Count 4).

At trial in this case, the government intends to prove that, from about 1999 through December, 2005, the defendants, through e-gold and GSR, publicly offered and operated an Internet-based e-gold digital currency system as a payment mechanism that facilitated several different types of criminal activity, including investment fraud, credit card and identity fraud, and child pornography. In doing so, the e-gold system became the most popular and prominent digital currency for transmitting funds using Internet-based accounts.

Additionally, in operating the e-gold system without complying with either state licensing or federal registration requirements, and by transferring funds defendants knew and believed to be involved in criminal activity, defendants avoided compliance and reporting requirements applicable under federal laws to money transmitting businesses, and aided criminals in avoiding detection of their activities by law enforcement. By widely offering their services to individuals whom the defendants knew to be engaged in criminal activity and using e-gold to transfer illicit funds, and by choosing not to comply with state and federal requirements for money transmitting businesses that would have brought the criminal activity to light, defendants drastically increased the volume of transactions in their system and made the e-gold system dominant among internet-based digital currencies.

Defendants have filed a motion to dismiss Counts Two, Three, and Four of the indictment, all of which relate to charges of unlicensed money transmitting. They have not moved to dismiss Count One, which charges a money laundering conspiracy.

## Summary of Argument

Defendants have moved to dismiss Counts Two, Three, and Four of the indictment. Specifically, defendants contend that Counts Two and Three, which charge them with conspiracy to operate an unlicensed money transmitting business and operation of an unlicensed money transmitting business under 18 U.S.C. § 371 and 18 U.S.C. § 1960 respectively, fail to state an offense and should be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). Defendants' central argument is that 18 U.S.C. § 1960 ("Section 1960"), the statute that prohibits operation of an unlicensed money transmitting business, only applies to businesses that engage in cash transactions. Defendants argue that Counts Two and Three are defective because these charges do not specifically allege that defendants accepted cash from customers, and because Section 1960 is unconstitutionally vague as to whether it applies to non-cash businesses.

However, as is explained below, defendants are mistaken in their view that Section 1960 only applies to businesses engaged in cash transactions. Defendants have taken a reference to 31 U.S.C. § 5330 ("Section 5330") found in one subpart of Section 1960 and applied it to the entire statute. Defendants do not appear to dispute that their activity falls within Section 1960's definition of "money transmitting." Nor do defendants appear to dispute that they operate or manage a business whose activities fall within Section 1960's definition of "money transmitting." Nevertheless, defendants urge the Court to invalidate the government's effort to prosecute them under Section 1960 because, they insist, the statute does not contain a separate

3

definition for the phrase "money transmitting business." Absent that, defendants maintain, the

Court must either: (1) borrow a definition for the same phrase from another statute -- which

definition, defendants maintain, they fall without; or (2) declare Section 1960 void for vagueness.

But, defendants' tortured reading of Section 1960 is purely self-serving and lacks any support in

logic or the rules of statutory construction. Further, it is not the case that Section 5330 is, in fact,

limited only to businesses that actually accept cash. Nor does the indictment limit the

government's ability to submit proof at trial that defendants actually engaged in cash

transactions. Additionally, Section 1960, which contains its own definition of "money

transmitting," is clear on its face as to the conduct that is prohibited and is therefore

unambiguous and comports with Due Process. Only defendants' determined attempt to create an

inconsistency suggests vagueness.

As an alternative basis for dismissal, defendants contend that Counts Three and Four are

insufficient because they merely track the language of the statute and do not make any

independent factual allegations. However, except in limited circumstances where the conduct

forming the basis for the charge would not be evident from the statutory language, thereby

depriving the defendant of notice of the basis for their indictment, it is sufficient for an

indictment to simply track the statutory language. Here, Counts Three and Four both track the

statute and contain factual allegations sufficient under Federal Rule of Criminal Procedure 7.

Last, with respect to Count Four, defendants argue simply that the judicial economy that

permits charging a state offense in this federal case does not apply if the Court dismisses Counts

Two and Three, and, therefore Count Four should be dismissed at the same time. But, not only is

there no basis to dismiss Counts Two or Three, there is still an unchallenged Count One. Thus, the legal basis for defendants' assertion that Count Four should be dismissed does not exist.

## Argument

I.     COUNTS TWO AND THREE STATE AN OFFENSE UNDER FED. R. CR. P. 12(b)(3)(B), AND THERE IS NO BASIS TO DISMISS THEM.

Defendants argue that Counts Two and Three of the indictment should be dismissed for failure to state an offense under Federal Rule of Criminal Procedure 12, based on their view that Section 1960's prohibition of unlicensed money transmitting businesses applies only to businesses that engage in cash transactions. Because the indictment does not specifically allege that the defendants conducted cash transactions, defendants assert that a proper offense has not been stated with respect to these Counts. *See* Defendants' Motion to Dismiss ("Def. Mot."), at 5. This argument fails for several reasons.

First, despite defendants' contrary suggestion, Section 1960 defines "money transmitting" broadly to include transferring "funds" (as opposed to currency) by "any and all means," including by wire and check. On its face, the statute is not limited to cash transactions and therefore the indictment need not allege that either e-gold or GSR engaged in cash transactions with customers. Second, even if, as the defendants claim, the phrase "money transmitting business" in Section 1960 were governed by Section 5330 definition, that statute does not establish that the phrase applies only to businesses that engage in cash transactions. Third, assuming *arguendo* that Congress intended to limit Section 1960's application to businesses that transfer cash, whether e-gold and GSR engaged in cash transactions and operated to facilitate

cash transactions is a question for the jury to determine.  For all of these reasons, the Court

should deny defendants' motion to dismiss Counts Two and Three for failure to state an offense.

     A.     <u>A "Money Transmitting Business" Under Section 1960 Includes
Businesses That, As a Matter Of Practice, Do Not Accept Cash.</u>

Section 1960 imposes criminal penalties on anyone who "knowingly conducts, controls,

manages, supervises, directs, or owns all or part of an unlicensed money transmitting business."

18 U.S.C. § 1960(a).  It also provides that:

> As used in this section --
>
> (1)    the term "unlicensed money transmitting business" means a money transmitting
> business which affects interstate or foreign commerce in any manner or degree
> and --
>
>     (A)    is operated without an appropriate money transferring license in a State
> where such operation is punishable as a misdemeanor or a felony under
> State law, whether or not the defendant knew that the operation was
> required to be licensed or that the operation was so punishable ["state
> licensing prong"];
>
>     (B)    fails to comply with the money transmitting business registration
> requirements under section 5330 of title 31, United States Code, or
> regulations prescribed under such section ["federal registration prong"]; or
>
>     (C)    otherwise involves the transportation or transmission of funds that are
> known to the defendant to have been derived from a criminal offense or
> are intended to be used to be used [sic] to promote or support unlawful
> activity ["unlawful activity prong"];
>
> (2)    the term "money transmitting" includes transferring funds on behalf of the public
> by any and all means including but not limited to transfers within this country or
> to locations abroad by wire, check, draft, facsimile, or courier . . .

18 U.S.C. § 1960(b).

Pursuant to Section 1960, the indictment properly alleges that defendants operated a

money transmitting business because it alleges that defendants operated a business engaged in

the transmission of funds for the public.  *See* Indictment ¶¶ 2-6, 13.  As a result, Counts Two and

Three should not be dismissed for failure to state an offense.

Defendants' assertion to the contrary is based on a flawed reading of Section

1960(b)(1)(B)'s reference to 31 U.S.C. § 5330.  *See* Def. Mot. at 5-7.  Defendants mistakenly

believe that no business, unless it falls within the definition of "money transmitting business"

contained in 31 U.S.C. 5330(d)(1), which they read as being limited to those that deal in "cash"

(as opposed to wire, checks, or other funds), can be considered to have violated Section 1960.

*See id.*  This interpretation of Section 1960 is wholly misguided for the following reasons.

First, the plain language of Section 1960 contradicts the defendants' claim.   As stated

above, Section 1960 defines "money transmitting" broadly to include "transferring funds on

behalf of the public by any and all means."  18 U.S.C. § 1960(b)(2).  Pursuant to this definition, a

business engages in "money transmitting" for purposes of Section 1960 when it transfers any

type of funds -- not just cash -- on behalf of the public by any means, including wire or check.

*See id.*  Therefore, when Section 1960 refers to "money transmitting business," it is referring to

any *business* engaged in "*money transmitting*" -- *i.e.*, any business transferring funds (not just

cash) on behalf of the public by any and all means.

Second, the defendants have proposed an interpretation of Section 1960 inconsistent with

basic canons of statutory construction.  By urging the Court to import Section 5330's definition

of "money transmitting business" into Section 1960, the defendants would render Section 1960's

definition of "money transmitting" meaningless, if not wholly superfluous.  To do so would

undermine the principle that courts should "give effect, if possible, to every clause and word of a

statute" and avoid "treat[ing] statutory terms as surplusage." *Duncan v. Walker*, 533 U.S. 167,

174 (2001) (internal quotation marks deleted).  Specifically, the clear purpose of Section 1960's definition of "money transmitting" is to establish the meaning of that phrase as it is used in the statute.[1]  To apply Section 5330's definition of "money transmitting business" to the entirety of Section 1960 would strip Section 1960's own definition of "money transmitting" of this purpose. Moreover, doing so would also contradict the plain language of Section 5330, which specifically provides that its definitions shall apply only "[f]or purposes of this section," 31 U.S.C. § 5330(d), a phrase that demonstrates Congress's intent.

Third, only subpart (B) of Section 1960(b)(1)'s definitions refers to Section 5330 of Title 31.  Subparts (A) (the state licensing prong) and (C) (the unlawful activity prong), which provide independent bases for establishing that a business is an unlicensed money transmitting business, do not reference or incorporate any part of Title 31.  *See* 18 U.S.C. § 1960(b)(1).  Accordingly, it should be apparent that Section 5330 is relevant only to subpart (B) of the "unlicensed money transmitting business" definition, and it should not alter in any way the independent definitions of an unlicensed money transmitting business contained in the other subparts.[2]  Moreover, subpart (B) does not rely upon Section 5330's definition of a "money transmitting business," but rather treats businesses that fail to comply with Section 5330's registration requirements as

---

[1]  Section 1960 does not use the stand-alone phrase "money transmitting" anywhere outside of that term's own definition.  *See* 18 U.S.C. § 1960.

[2]  As the indictment alleges, e-gold and GSR operated without a state license to do so in both the District of Columbia and Florida, among other states, which makes them an unlicensed money transmitting business under Section 1960(b)(1)(A).  *See, e.g.*, Indictment ¶¶ 7, 13, 19.  The indictment also sufficiently alleges that the defendants are an unlicensed money transmitting business pursuant to Section 1960(b)(1)(C) because it describes their extensive involvement in transferring funds they knew to be either the proceeds of criminal activity or promoting criminal activity.  *See, e.g.*, Indictment ¶¶ 31-48.

"unlicensed money transmitting business[es]" for purposes of Section 1960. *See* 18 U.S.C. § 1960(b)(1)(B).

Accordingly, because the references in Section 1960 to "money transmitting business" derive their meaning from the definition of "money transmitting" in Section 1960, and not from Section 5330, a "money transmitting business" under Section 1960 is not limited to businesses that engage in cash transactions. Because the indictment sufficiently alleges that e-gold and GSR engaged in the transfer of funds on behalf of the public, Counts Two and Three should not be dismissed for failure to state an offense.

      B.     <u>Businesses That Choose Not To Engage in Cash Transactions are Not Excepted From the Definition of "Money Tranmitting Business" In Section 5330.</u>

Assuming *arguendo* that the definition of "money transmitting business" in Section 5330 governs Section 1960, that definition does not disqualify businesses that avoid cash transactions, as defendants claim. Section 5330 provides that, for purposes of that section, "money transmitting business" means:

any business other than the United States Postal Service which --

(A)     provides check cashing, currency exchange, or money transmitting services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;

(B)     is required to file reports under section 5313; and

(C)     is not a depository institution (as defined in section 5313(g)).

31 U.S.C. § 5330(d)(1).[3]

Defendants maintain that only businesses that deal in "currency" are subject to the federal registration requirements referenced in Section 1960(b)(1)(B), because only such businesses are required to file the currency transaction reports ("CTRs") referenced in 31 U.S.C. § 5330(d)(1)(B). *See* Def. Mot. at 7. This interpretation of the federal registration requirements, however, is entirely at odds with the plain language of Section 5313. First, Section 5330's definition of "money transmitting business," which encompasses a condition that the business "(B) is required to file reports under section 5313," includes businesses that, while they may have chosen not to accept currency at any given moment, would be required to file the reports if they did accept currency. That is, 31 U.S.C. § 5313 encompasses "financial institutions" and provides that the obligation to file a CTR is simply triggered "*when* a financial institution is involved in a transaction" involving currency. 31 U.S.C. § 5313(a) (emphasis added). A "financial institution" is defined in 31 U.S.C. § 5312(a)(2) as including at least two definitions that apply here: "(N) a dealer in precious metals, stones, or jewels," and "(R) a licensed sender of money *or any other person who engages as a business in the transmission of funds.*" *Id.* (emphasis added). None of these provisions suggest that Congress intended for a business to rely on its practice or policy of not taking cash as a means of opting out of Section 5330's registration requirements.

Second, Section 1960(b)(1)(B) refers to businesses that fail to comply with the registration requirements of the statute, 31 U.S.C. § 5330, *or* the regulations implementing the

---

[3]  In addition, 31 U.S.C. § 5330(d)(2) provides that "[t]he term 'money transmitting service' includes accepting currency *or funds denominated in the currency of any country* and transmitting the currency or funds, *or the value of the currency or funds*, by any means through a financial agency or institution, a Federal reserve bank or other facility of the Board of Governors of the Federal Reserve System, or an electronic funds transfer network." *Id.* (emphasis added).

statute.  18 U.S.C. § 1960(b)(1)(B).  It does so because Section 5330, which governs the

registration of money transmitting businesses with the Financial Crimes Enforcement Network

("FinCEN") within the Department of Treasury, provides only a general framework and

delegates substantial authority to the Secretary of the Treasury to "prescribe, by regulation, the

form and manner for registering a money transmitting business."  31 U.S.C. § 5330(a)(2).  In

fact, Section 5330, as part of the Bank Secrecy Act, did not have any effect until the

implementing regulations were issued by the Treasury Department, and, therefore, what the

regulations say is critical to understanding the scope of Section 5330(d).  *See California Bankers

Ass'n v. Shultz*, 416 U.S. 21, 26 (1974) ("statute's civil and criminal penalties attach only upon

violation of regulations promulgated by the Secretary [of the Treasury]").

   Importantly, these regulations clarify the scope of Section 5330 and describe in detail

which businesses are required to register with FinCEN.  *See* 31 C.F.R. §§ 103.41(a), 103.11(uu).

Specifically, these regulations provide that "each money services business . . . must register with

the Department of Treasury," 31 C.F.R. § 103.41(a), and further define "money services

business" to include:

> (A)   Any person, whether or not licensed or required to be licensed,
> who engages as a business in accepting currency, *or funds
> denominated in currency*, and transmits the currency or funds, *or
> the value of the currency or funds*, by any means through a
> financial agency or institution, a Federal Reserve Bank or other
> facility of one or more Federal Reserve Banks, the Board of
> Governors of the Federal Reserve System, or both, or an electronic
> funds transfer network; or
>
> (B)   *Any other person engaged as a business in the transfer of funds.*

11

31 C.F.R. § 103.11(uu)(5) (emphasis added). Nothing in these regulations limits their applicability to businesses filing CTRs or businesses engaged in cash transactions. By defining "money services business" with reference to accepting "funds denominated in currency" and transmitting the "value of the currency or funds," and generally as the "transfer of funds," these regulations clearly demonstrate that a business can be a "money transmitting business" that is subject to Section 5330's registration requirements even if it does not engage in currency (i.e., cash) transactions.

Defendants would have the Court ignore these regulations -- which are specifically referred to in Section 1960(b)(1)(B) -- and instead urge the Court to consult FinCEN's CTR form to determine whether e-gold and GSR are "money transmitting businesses" that are subject to Section 5330's registration requirements.[4]  In fact, the form that squarely addresses this issue is not the CTR form but rather FinCEN's "Registration of Money Services Business" form, which is the form that businesses actually submit when registering under 31 U.S.C. § 5330. *See* FinCEN Form 107, attached hereto as Exhibit 1. This registration form instructs, *inter alia*, that all "money transmitters" must register with the Department of Treasury, and further explains -- consistent with the regulations -- that a "money transmitter" is "a person that engages as a business in the transfer of funds through a financial institution." *Id.* at 3. The form also includes a list of people and entities that are not required to register with FinCEN. Not surprisingly,

---

[4] At least one court has held that "[d]efendant's possible belief that the registration requirements of 31 U.S.C. § 5330 did not apply to him because of the content of the Treasury Department registration forms does little to establish a deficiency in the charge." *United States v. Mazza-Aluluf*, 2008 WL 318348 (S.D.N.Y. Feb. 5, 2008) (addressing motion to dismiss indictment that alleged a conspiracy to violate Section 1960 and a substantive violation of the same section).

businesses engaging in cash transactions are not included on this list of exceptions. *Id.*
Accordingly, online payment systems that do not accept cash, for example PayPal, have
registered with FinCEN pursuant to Section 5330.[5]

      C.    <u>Even if Section 1960 Were Limited To Businesses That Engage In Cash
Transactions, There Is No Basis To Dismiss Counts Two And Three.</u>

      Again, assuming *arguendo* that the definition of "money transmitting business" in
Section 5330 should be imported into Section 1960, and assuming that this definition is limited
to businesses engaged in cash transactions, by alleging in the indictment that GSR accepted
currency by wire transfer, the Government is not conceding that GSR and e-gold did not engage
in cash transactions and facilitate movements of cash. *See, e.g.*, Indictment ¶ 58. Indeed,
whether GSR and e-gold engaged in cash transactions would be a factual question for the jury.[6]
Certainly, the defendants are not arguing that money transmitters must *only* accept cash and no
other means of payment.

---

[5] For confirmation of PayPal's registration with FinCEN, *see* Money Services Business
Listing for California at line 7164 (available under "California" in the MSB State Selector at
http://www.msb.gov/guidance/msbstateselector.php). For confirmation of the fact that PayPal
does not engage in cash transactions, *see* PayPal Help Center article, "What payment methods
can I use to send money?" (available at
https://www.paypal.com/helpcenter/main.jsp;jsessionid=HC4Vd2sXZCRG9HlW9mbQpFLySPZ
DgD6L19n4jxmGJ1tbhTp9TQKD!1246472403?locale=en_US&_dyncharset=UTF-
8&countrycode=US&cmd=_help&serverInstance=9005&t=solutionTab&ft=searchTab&ps=solut
ionPanels&solutionId=11155&isSrch=Yes) ("You can use funds in your PayPal balance, PayPal
Buyer Credit, PayPal Plus Credit Card, eBay MasterCard, debit or credit card, or confirmed bank
account.").

[6] As defendants note, the indictment alleges that digital currency exchangers other than
OmniPay accepted cash on behalf of the e-gold operation, Indictment ¶¶ 5, 59, 60, and it will be a
matter of proof at trial the extent to which defendants encouraged, facilitated, or participated in
cash transactions.

More fundamentally, even if their interpretation of Section 1960 is correct, defendants have not shown -- and cannot show -- that the indictment must specifically allege that e-gold and GSR engaged in cash transactions. Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment be "a plain, concise, and definite written statement of the *essential* facts constituting the offense charged." Fed. R. Cr. P. 7(c) (emphasis added). Indeed, "the function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them." *United States v. Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991). Defendants have cited no authority for the proposition that engaging in cash transactions is one of the "essential facts" constituting a Section 1960 violation, and the government is aware of no case or jury instruction that has imposed such a requirement. Accordingly, the Court should deny the motion to dismiss Counts Two and Three for failure to state an offense.

II.  SECTION 1960 IS UNAMBIGUOUS AND GIVES FAIR NOTICE OF THE CONDUCT IT PROSCRIBES.

Defendants also challenge Counts Two and Three of the indictment on the basis that Section 1960 fails to provide fair warning of the conduct it proscribes, making it vague and thereby violating the Due Process Clause of the United States Constitution. Def. Mot., at 9.

As defendants note, it is well established that a criminal statute must give fair warning of the conduct it makes a crime. *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964). Further,

> [t]he constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

14

*Id.* The central inquiry, however, is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

Section 1960, as courts have recognized, does give defendants fair warning of the conduct that is forbidden by the statute. *See United States v. Talebnejad*, 460 F.3d 563 (4th Cir. 2006) (overruling district court that had granted defendants' motion to dismiss Section 1960 indictment in part based on a vagueness challenge); *United States v. Barre*, 324 F. Supp. 2d. 1173, 1176 (D. Colo. 2004) (rejecting defendants contention that Section 1960 was unconstitutionally vague on the basis that its "definition of 'money transmitting business' is unintelligible"); *United States v. Velastegui*, 199 F.3d 590, 594-96 (1999) (finding Section 1960's state licensing prong to be plain on its face as applied to money transmitting businesses that were agents of state licensees).

Defendants' contention that Section 1960 is unconstitutionally vague rests on two points. First, defendants assert that Section 1960 does not contain a specific intent element, contributing to the statute's vagueness. Second, defendants assert that, because the definition of "money transmitting" in Section 1960 is at odds with the definition of "money transmitting business" in 31 U.S.C. § 5330(d)(1), a conflict arises, resulting in a lack of notice of the type of activity the statute prohibits, making it unconstitutionally vague. For the reasons set forth below, both of defendants' arguments lack merit.

A.    Section 1960 Is A Constitutionally-Valid General Intent Crime.

While defendants' argument is minimal on the point, they suggest that the fact that Section 1960 does not contain a specific intent element contributes to the statute's vagueness. Def. Mot., at 10 (citing *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498 (1982)).

15

However, while even strict-liability criminal statutes may be constitutionally permissible in limited circumstances, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437-38 (1978); *Staples v. United States*, 511 U.S. 600, 606 (1994), the Supreme Court "has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979). Section 1960, which incorporates specific *mens rea* requirements, is not a vague statute.

Specifically, as the Fourth Circuit recognized in *United States v. Talebnejad*, 460 F.3d 563, 568 (4th Cir. 2006), because Section 1960 requires defendants to know the facts that makes their conduct illegal, it is a constitutional statute. In *Talebnejad*, the Fourth Circuit considered the government's appeal of the district court's dismissal of the indictment, which was based in part on an argument that Section 1960(b)(1)(A) violated the Due Process Clause because it lacked a *scienter* requirement regarding applicable state licensing laws. The Talebnejads were charged with operating money transmitting businesses out of their home without having obtained licenses to do so in Maryland. Not unlike what the government will prove at trial in this case, the Talebnejads looked into obtaining a license several years before they were indicted, but decided not to because of the cost and because they did not believe the licensing statute applied to their business. *Id.* at 567.

The *Talebnejad* court recognized that Section 1960 contains five elements: "(1) operat[ion of] a money transmitting business, (2) that affects interstate commerce, and (3) that is unlicensed under state law, when (4) state law requires a license and (5) state law punishes lack of a license as a felony or misdemeanor." *Id.* The court broke these elements into two categories, describing the first three elements as factual elements, regarding which the defendant

16

must have the *mens rea*, and the last two as legal elements, regarding which the defendants do

not need to have knowledge. *Id.*; *see also United States v. Elfgeeh*, 2008 WL 383046 (2d Cir.)

(noting change to Section 1960 that occurred in 2001, no longer requiring that defendant knew of

licensing requirement in order to be guilty of crime), *United States v. Keleta*, 441 F. Supp. 2d 1,

2 (D.D.C. 2006) ("[T]he legislative history related to the Patriot Act, by which Section 1960 was

amended, clarifies that Section 1960 was intended to be a general intent crime sans proof of

knowledge of federal registration requirements or willful violation thereof.").[7]

As the Supreme Court noted in *Staples v. United States*, 511 U.S. 600, 606 (1994), the

presumption that a *mens rea* attaches to the elements of the offense "requires knowledge only of

the facts that make the defendant's conduct illegal, lest it conflict with the related presumption,

deeply rooted in the American legal system, that, ordinarily, ignorance of the law or a mistake of

law is no defense to criminal prosecution." 511 U.S. at 622 n.3 (Ginsburg, J. Concurring in the

judgment).

Accordingly, in a prosecution under Section 1960, defendants must know that they were

operating a money transmitting business that affected interstate commerce and that they were not,

in fact, licensed under state law. However, a defendant would not need to know that a state

license was required or that a lack of such license was punishable as a felony or misdemeanor.

---

[7] It is worth noting, also, that Congress consciously modeled Section 1960 after 18 U.S.C. § 1955, the illegal gambling business statute, *see* S. Rep. No. 101-460 (1990) *as reprinted in* 1990 U.S.C.C.A.N 6645, which is a similar general intent statute that has been consistently found to be constitutional. *See e.g. United States v. Ables*, 167 F.3d 1021, 1031 (6th Cir. 1999); *United States v. O'Brien*, 131 F.3d 1428, 1430 (10th Cir. 1997); *United States v. Hawes*, 529 F.2d 472, 481 (5th Cir. 1976).

Thus, Section 1960 is not unconstitutionally vague on the basis that it is not a "specific intent" crime.

    B.    <u>Section 1960 Is Clear On Its Face And Is Not Ambiguous.</u>

Defendants contend that Section 1960 is ambiguous because the definition of "money transmitting" it contains in subsection (b)(2) is inconsistent with the definition of "money transmitting business" in 31 U.S.C. § 5330(d)(1)(A). As explained in Part I above, Section 5330 applies only to the federal registration prong of Section 1960 and, therefore, does not conflict with the rest of the statute.

Nonetheless, central to defendants' argument is their view that Section 5330, entitled "Registration of money transmitting businesses," limits the definition of "money transmitting business" to those businesses that are "required to file reports under section 5313 [because they accept cash]." 31 U.S.C. § 5330(d)(1)(B). Because, in defendants' view, the definition in Section 1960 is broader than the definition in Section 5330 and thus inconsistent, defendants argue that Section 1960 is unconstitutionally vague.

"In construing a statute, we look first for the plain meaning of the text. If the language of the statute has a plain and unambiguous meaning, our inquiry ends so long as the resulting statutory scheme is coherent and consistent." *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)) (internal quotation marks and other citation omitted). "Whether statutory language is plain depends on the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Barnes, supra*, 295 F.3d at 1359. Further, "where Congress has carefully employed a

term in one place and excluded it in another, it should not be implied where excluded." *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (1972).

Here, as explained above, Section 1960, in <u>one</u> subsection, refers to 31 U.S.C. 5330. However, Section 1960 contains three definitions of an "unlicensed money transmitting business," which include the state licensing prong, the federal registration prong, and the unlawful activity prong. Accordingly, one of the ways a business may violate Section 1960 is by failing to comply under the federal registration prong "with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section." However, all three prongs of the definition of an "unlicensed money transmitting business" are independent of each other and by themselves a violation of Section 1960, as indicated by the fact that they are connected by the disjunctive "or." *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise.").

Further, Congress was clearly aware of Section 5330 and chose to incorporate its registration requirements into the federal registration prong of Section 1960, a logical choice given that Section 5330, in its entirety, relates to the registration of money transmitting businesses with the federal government. At the same time Congress incorporated Section 5330 into the federal registration prong, it chose *not* to include it in either the state licensing prong or the unlawful activity prong, which again is logical in that Section 5330 was intended only to lay out the procedures for registration with the federal government.

Clearly, the reference to Section 5330 in Section 1960 is limited to the federal registration requirement applicable to money transmitting businesses. Whether defendants have violated the other two prongs of Section 1960 -- state licensing and unlawful activity -- can and should be determined on the basis of the language of Section 1960 itself.[8] Thus, there truly is no conflict between the definition of "money transmitting" in Section 1960 and the definition of "money transmitting business" in Section 5330. Rather, the definition in Section 5330 simply further clarifies the circumstances under which a business can violate the federal registration prong of Section 1960.

### C.    The Court Should Not Look Beyond The Language Of The Statute.

Based on their proposition that Section 5330 contains the controlling definition of "money transmitting business" for all of Section 1960 and limits the definition to only those businesses that actively accept cash, defendants argue that Section 1960 does not provide "fair notice" that "business that do not transact in cash are 'money transmitting businesses' that require licensure." Def. Mot., at 12. In support of this argument, defendants argue that 1) no court has ever construed Section 1960 as covering a business that chooses not to accept cash, and 2) several government publications "provid[e] no guidance that would suggest that all digital currency businesses, whether or not they accept cash, are 'money transmitting businesses.'" *Id.*

---

[8] Because the statute is not ambiguous, defendants' discussion of the rule of lenity does not apply. *United States v. Shabani*, 513 U.S. 10, 17 (1994). In any event, the rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *United States v. Villanueva-Sotelo*, __ F.3d __, No. 07-3055, Slip Op. at 8 (D.C. Cir. Feb. 15, 2008) (published opinion available at 2008 WL 398446) (internal quotation marks and citation omitted). "[T]he rule of lenity is not invoked by a grammatical possibility and does not apply if the ambiguous reading relied upon is an implausible reading of the congressional purpose." *Id.* (internal quotation marks and citation omitted).

20

First, and most importantly, Section 1960 is clear on its face as to the conduct it

proscribes. It takes a tortured reading of the statute, with intent to force a perceived pre-requisite

of a cash-accepting business from Section 5330 onto all prongs of Section 1960, to create

"ambiguity" here. As the Supreme Court has said, "[w]hen we find the terms of a statute

unambiguous, judicial inquiry is complete, except 'in rare and exceptional circumstances.'"

*Rubin v. United States*, 449 U.S. 424, 430 (1981).

There is certainly no support for defendants' position that the *lack* of case law on the

specific issue they have raised -- whether Section 1960 applies to a non-cash-accepting business -

- is relevant to interpretation of the statute.[9] Nor is there support for the idea that governmental

publications or unofficial statements by a single law enforcement agent, none of which are issued

for the purpose of providing guidance on the issue, have any bearing on whether a statute

provides fair warning of the conduct it prohibits.

Nonetheless, it bears noting that the publications cited to by defendants in support of their

contention that the applicability of Section 1960 is unclear do not, in fact, support that

contention. For example, defendants cite to two versions of the Money Laundering Threat

Assessment for 2005 and 2007, a Treasury Department publication issued to provide background

information and analysis on money laundering to law enforcement and policy-makers. The

---

[9] There is relatively little case law on the application of Section 1960 at all given that the statute was not widely used until significant amendments as a result of the Patriot Act at the end of 2001. Title III of the USA PATRIOT Act amended Section 1960 to modify the scienter requirement under the statute's state licensing prong. Whereas before, the government had to prove the defendant operated the business intentionally without a license, under the Patriot Act provision, the intent element was omitted, negating any mistake of law defense. H.R. Rep. No. 107-250, at 54 (2001). Additionally, Section 1960 was amended to add the unlawful activity prong. *Id.*

language they themselves cite does nothing more than emphasize that whether Section 1960 applies in this case will be a factual matter for the jury:

> "[w]hether an online payment system or digital currency service meets the definition of a money transmitting business pursuant to [Bank Secrecy Act] regulations, though, depends upon its location and the ways in which it participates in or conducts transactions."

Def. Mot., at 13-14.  Defendants also reference a report by the Financial Action Task Force ("FATF"), an inter-governmental body made up of representatives from many different countries, whose purpose is the development and promotion of national and international policies to combat money laundering and terrorist financing.  As did the Money Laundering Threat Assessment, the FATF report simply states that whether an online payment system is a "money transmitter" depends on "its location and the ways in which it participates in or conducts transactions." Financial Action Task Force, Report on New Payment Methods at 39 (2006), available at http://www.fatf-gafi.org/dataoecd/30/47/37627250.pdf.

Finally, defendants cite a report issued by the U.S. House of Representatives Committee on Energy and Commerce, and a statement during a television interview by an FBI Special Agent, both of which erroneously state that digital currencies are not subject to regulation in the United States.  Def. Mot., at 13.  Neither of these sources cited any regulation or detailed the basis for such a statement, and were simply uninformed.  However, these statements are simply irrelevant to a determination of what conduct is prohibited by Section 1960, a matter that can be decided by looking to the statute itself.

III.     COUNTS THREE AND FOUR OF THE INDICTMENT SATISFY THE
         REQUIREMENTS OF RULE 7(C).

The defendants claim that Count Three and Count Four of the indictment are deficient

because they fail to include the "essential facts" of the charged offenses.  That claim is without

merit.  Not only do Counts Three and Four of the indictment "track the relevant statutory

language," as the defendants concede, *see* Def. Mot., at 16, the indictment provides sufficient

notice to the defendants of the nature of the charges against them.

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment contain

"a plain, concise, and definite written statement of the essential facts constituting the offense

charged."  As the Supreme Court has firmly held, however, "the Federal Rules 'were designed to

eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in

procedure."  *United States v. Resendiz-Ponce*, 127 S.Ct. 782, 789 (2007) (*quoting United States

v. Debrow*, 346 U.S. 374, 376 (1953)).  Accordingly, "[w]hile detailed allegations might well

have been required under common-law pleading rules, they surely are not contemplated by Rule

7(c)(1)."  *Id.* (internal quotation omitted).

"An indictment is sufficient if it clearly informs the defendant of the precise offense of

which he is accused so that he may prepare a defense."  *Conlon v. United States*, 628 F.2d 150,

155 (D.C. Cir. 1980).   It is ordinarily sufficient for the indictment to "set forth the offense in the

words of the statute itself."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  This rule applies

unless the words of the statute do not "fully, directly, and expressly, without any uncertainty or

ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."

*Id.*; *see United States v. Quinn*, 401 F. Supp. 2d 80, 101 (D.D.C. 2005) (*quoting Hamling*) ("'It is

generally sufficient that an indictment set forth the offense in the words of the statute itself,' so long as those words leave no uncertainty or ambiguity about the elements of the offense.").

The Supreme Court long ago rejected the notion that an indictment must specify the "particular means" by which a crime has been committed. *See United States v. Simmons*, 96 U.S. 360, 364 (1878). Nor is the indictment required to specify the government's proof of the offenses. *See United States v. Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991) ("Indictments do not recite the government's theory of proof. . . . Despite the all too common use of 'speaking' indictments, the function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them."); *see also Debrow*, 346 U.S. at 367 (*quoting Cochran v. United States*, 157 U.S. 286, 290 (1895) ("The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain."); *United States v. Walsh*, 194 F.3d 37, 44 (2nd Cir. 1999) ("we have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (internal quotation marks and citation omitted).

In this case, Counts Three and Four of the indictment charge the defendants with operating an unlicenced money transmitting business (under both federal and District of Columbia law, respectively). Not only does the indictment "track the language of the statute[s] alleged to have been violated," as the defendants concede in their motion, it also alleges specific factual information such as the dates of the offenses, the locations of the offenses (*e.g.*, the District of Columbia and elsewhere), and perhaps most importantly, it names of the businesses that the defendants are accused of operating in violation of the relevant statutes:   e-gold and

Omnipay.  These factual allegations, coupled with the statutory language, provide sufficient notice to the defendants of the offenses with which they are charged.[10]

In their motion, the defendants chiefly rely on the opinion in *United States v. Pickett*, 209 F. Supp. 2d 84, 88 (D.D.C. 2002), where a U.S. Capitol Police officer was charged with making false statements, in violation of 18 U.S.C. §1001, and obstructing members of the U.S. Capitol Police, in violation of 40 U.S.C. § 212a-2(d).  The District Court granted the defendant's motion to dismiss the obstruction charge,[11] which "merely reiterate[d] the statutory language of the offense it purport[ed] to charge," stating the indictment failed to specify the conduct of the defendant that formed the basis for the charge.  *Pickett*, 209 F. Supp. 2d at 88.

This case is different than *Pickett* for the simple reason that it involves an entirely different statutory offense.  The Supreme Court recently observed that, "while an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity."  *Resendiz-Ponce*, 127 S.Ct. at 789.  "A clear example [of such a crime] is [2 U.S.C. § 192,] the statute making it a crime for a witness summoned before a congressional committee to refuse to answer any question "pertinent to the question under

_____

[10]  The defendants stress that other counts in the indictment contain more detailed factual assertions than Counts Three and Four.  However, it is irrelevant whether the counts at issue could have included additional information about these crimes.  *See Conlon*, 628 F.2d at 156 (upholding sufficiency of indictment; "[t]here is a difference, of course, between failing to state an element of the offense and being less specific than one could be in spelling out the acts that constitute the offense.").

[11]  The District Court denied the defendant's motion to dismiss the false statements charge.  On appeal post-trial, the Court of Appeals reversed the District Court, and ordered the remaining count of the indictment to be dismissed as well.  *See United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004).  The court recognized that "indictments have been upheld where they tracked the language of the statute," but found that the indictment had failed to allege all of the statutory elements.  *Id.*

inquire." *Id.* (*quoting* 2 U.S.C. § 192). The Court addressed the sufficiency of an indictment under that statute in *Russell v. United States*, 369 U.S. 749, 764 (1962), where it held the indictment deficient for failing to specify the subject of the congressional inquiry at issue in the case. In doing so, the Court stated that an indictment "must do more than simply repeat the language of the criminal statute" when "guilt depends so crucially upon such a specific identification of fact." *Id.* The District Court in *Pickett* based its analysis upon the ruling in *Russell*. *See Pickett*, 209 F. Supp. 2d at 89 (*citing Russell* and *United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976)).[12]

However, *Russell* does not stand for the broader proposition that an indictment must allege the factual details underlying any criminal charge, and its holding has been narrowly construed by the Court. *See Resendiz-Ponce*, 127 S.Ct. at 789 ("we held [in *Russell*] that indictments under [18 U.S.C.] § 192 must do more than restate the language of the statute."); *Hamling*, 418 U.S. at 118 (distinguishing *Russell* based on the fact that it involved a different statutory offense). In *Resendiz-Ponce*, where the defendant was charged with attempting to reenter the United States after deportation, in violation of 8 U.S.C. § 1326(a), the Court of Appeals dismissed the indictment because it failed to allege "any specific over act" by the defendant. 127 S.Ct. at 785-86. The government conceded that it was required to prove an overt act in order to convict the defendant, but reasoned that "the indictment [] implicitly alleged that

---

[12] In *Nance*, the Court of Appeals ruled insufficient several counts alleging the defendants obtained something of value by false pretenses in violation of District of Columbia law. 533 F.2d at 474. Each count contained language that referenced "the following representation," but then failed to include any alleged false representations. *Id.* Recognizing that "[o]rdinarily, it is proper for an indictment to be drawn in the language of the statute," the Court turned to the Supreme Court's opinion in *Russell* in finding the indictment had failed to apprise the defendants of the nature of the charges against them.

[the defendant] engaged in the necessary overt act simply by alleging that he attempted to enter the United States." *Id.* at 787 (internal quotation marks omitted). The Supreme Court agreed and reversed the Court of Appeals, holding that "the use of the word 'attempt,' coupled with the specification of the time and place of the [the defendant's] attempted illegal reentry, satisfied" the requirements for an indictment. *Id.* at 788. Significantly, "unlike the statute at issue in *Russell*," the Court determined that guilt under 18 U.S.C. § 1326(a) [did] not 'depend so crucially upon such a specific identification of fact.'" *Id.* at 789 (*quoting Russell*, 369 U.S. at 764).

A similar issue arose in *Hamling*, where the defendants were charged with mailing obscene material in violation of 18 U.S.C. § 1461. The indictment "charged [the defendants] only in the statutory language." *Hamling*, 418 U.S. at 117. The Court upheld the sufficiency of the indictment, holding that the term "obscenity" was "sufficiently definite in legal meaning to give a defendant notice of the charge against him," and therefore the indictment was not required to specify "the various components parts" of the alleged obscenity. *Id.* at 118-19.

The defendants have not claimed, nor have they provided any support for the notion, that the 18 U.S.C. § 1960 is among the limited class of statutory offenses that, by its statutory language, does not "fully, directly, and expressly without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *See Hamling*, 418 U.S. at 87. Perhaps most importantly, unlike in *Pickett*, the statute at issue in this case does not "depen[d] so crucially upon such a specific identification of fact." *See Russell*, 369 U.S. at 764. Like the statutes at issue in *Hamling* and *Resendiz-Ponce*, this case falls within the general rule that it is sufficient for the indictment to track the language of the federal statute. The indictment

27

sufficiently informs the defendants of the nature of the charges against them, and it meets the

pleading requirements of Rule 7(c).

IV.    BECAUSE COUNT FOUR MAY APPEND TO COUNT ONE, WHICH
       DEFENDANTS DO NOT CHALLENGE, THERE IS NO BASIS TO DISMISS IT.

        Given that Defendants do not challenge the federal money laundering charge set forth in

the first count of their indictment, there is no basis for them to complain about the government's

election to include Count Four.

## Conclusion

For all of the reasons set forth above, the government respectfully requests that the Court

deny defendants' motion to dismiss Counts Two, Three, and Four of the Indictment.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:          /s/

JONATHAN HARAY
Assistant United States Attorney
U.S. Attorney's Office
555 Fourth Street, N.W., Rm. 5838
Washington, D.C.   20530
(202) 353-2877
Jonathan.Haray@usdoj.gov

KIMBERLY KIEFER PERETTI
Senior Counsel
U.S. Department of Justice
Computer Crime and Intellectual Property
Section, Criminal Division
1301 New York Ave., NW, Suite 600
Washington, D.C.  20530
(202) 353-4249
kimberly.peretti@usdoj.gov

LAUREL LOOMIS RIMON
Deputy Chief for Litigation
U.S. Department of Justice
Asset Forfeiture and Money Laundering
Section, Criminal Division
1400 New York Ave., NW, Room 2200
Washington, D.C.   20530
(202) 514-1315
Laurel.Loomis.Rimon@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2008, a copy of the foregoing was served via ECF on counsel for the defendants,

Joshua G. Berman, Esq.
Sonnenschein Nath & Rosenthal LLP
1301 K St NW
Suite 600, East Tower
Washington, DC 20005
T: (202) 408-5208
F: (202 408-6399
jberman@sonnenschein.com

Mitchell Fuerst, Esq.
Andrew Ittleman, Esq.
Fuerst Humphrey Ittleman
1001 Brickell Bay Drive
Suite Two Thousand Two
Miami, FL 33131
mfuerst@fuerstlaw.com
aittleman@fuerstlaw.com

Michelle Peterson, Esq.
Federal Public Defender
625 Indiana Ave., NW – Suite 550
Washington, D.C. 20004-2923
shelli_peterson@fd.org

Barry J. Pollack, Esq.
Kelley Drye Collier Shannon
3050 K St., NW - Suite 400
Washington, DC 20007
bpollack@kelleydrye.com

Aron Raskas, Esq.
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD 21202-3201
araskas@kg-law.com


_____/s/_____

Laurel Loomis Rimon
Deputy Chief, Asset Forfeiture and
 Money Laundering Section

31

# EXHIBIT 1

## FinCEN Form 107

Formerly Dept. Treasury
form TD F 90-22.55,
**Effective January , 2005**

## Registration of Money
## Services Business

**Please type or print. ·Always complete entire report. See instructions.**
**Previous editions will not be accepted after June 30, 2005.**



**OMB No.1506-0013**

*Send your completed form to: IRS Detroit Computing Center, Attn: Money Services Business Registration, P. O. Box 33116, Detroit, MI 48232-0116*

| Part I | Filing Information |
|---|---|

1 Indicate the type of filing by checking a, b, c, or d below.

a ☐ Initial registration    b ☐ Renewal    c ☐ Correction    d ☐ Re-registration

2 If you checked item 1 d  please indicate the reason(s). Check all that apply.

a ☐ Re-registered under state law    b ☐ More than 10 percent transfer of equity interest    c ☐ More than 50 percent increase in agents

| Part II | Registrant Information |
|---|---|

3 Legal name of the money services business

4 Doing business as

5 Address

6 City

| 7 State | 8 ZIP Code | 9 EIN (entity), SSN/ITIN (individual) | 10 Telephone number (include area code) |
|---|---|---|---|
| | | | ( ) — |

| Part III | Owner or Controlling Person |
|---|---|

| 11 Individual's last name, or organization's name | 12 First name | 13 Middle initial |
|---|---|---|

14 Address

| 15 City | 16 State | 17 ZIP Code | 18 Country (if other than US) |
|---|---|---|---|

| 19 Telephone number - (include area code) | 20 Date of birth | 21 SSN/ITIN (individual), EIN (entity) |
|---|---|---|
| ( ) — | / / MM DD YYYY | |

22 Skip this item if you completed item 21.

If the owner or controlling person is an individual enter their form of identification, the ID number, and the issuing state or country.

a ☐ Driver's license/state ID    b ☐ Passport    c ☐ Alien registration    d ☐ Other _____

e ☐ ID number | | | | | | | | | | | | | | | | | | | |    f  Issuing state or country _____

| Part IV | Money Services and Product Information |
|---|---|

23 States and/or territories where the registrant, its agents or branches are located. Check as many as apply. If you check either "All States" or
"All States & Territories", do not check any other boxes.

a ☐ All States & Territories
b ☐ All States

| | | | | |
|---|---|---|---|---|
| ☐ Alabama (AL) | ☐ District of Columbia (DC) | ☐ Maine (ME) | ☐ New Mexico (NM) | ☐ South Dakota (SD) |
| | ☐ Florida (FL) | ☐ Maryland (MD) | ☐ New York (NY) | ☐ Tennessee (TN) |
| | ☐ Georgia (GA) | ☐ Massachusetts (MA) | ☐ North Carolina (NC) | ☐ Texas (TX) |
| ☐ Alabama (AL) | ☐ Guam (GU) | ☐ Michigan (MI) | ☐ North Dakota (ND) | ☐ Utah (UT) |
| ☐ Alaska (AK) | ☐ Hawaii (HI) | ☐ Minnesota (MN) | ☐ N. Mariana Isls. (MP) | ☐ Vermont (VT) |
| ☐ American Somoa (AS) | ☐ Idaho (ID) | ☐ Mississippi (MS) | ☐ Ohio (OH) | ☐ Virgin Islands (VI) |
| ☐ Arizona (AZ) | ☐ Illinois (IL) | ☐ Missouri (MO) | ☐ Oklahoma (OK) | ☐ Virginia (VA) |
| ☐ Arkansas (AR) | ☐ Indiana (IN) | ☐ Montana (MT) | ☐ Oregon (OR) | ☐ Washington (WA) |
| ☐ California (CA) | ☐ Iowa (IA) | ☐ Nebraska (NE) | ☐ Pennsylvania (PA) | ☐ West Virginia (WV) |
| ☐ Colorado (CO) | ☐ Kansas (KS) | ☐ Nevada (NV) | ☐ Puerto Rico (PR) | ☐ Wisconsin (WI) |
| ☐ Connecticut (CT) | ☐ Kentucky (KY) | ☐ New Hampshire (NH) | ☐ Rhode Island (RI) | ☐ Wyoming (WY) |
| ☐ Delaware (DE) | ☐ Louisiana (LA) | ☐ New Jersey (NJ) | ☐ South Carolina (SC) | |

| Part IV | (continued) | 2 |
|---------|-------------|---|

24 Enter the number of branches of the registrant. **Reminder: do not separately register each branch.** See instructions for an explanation of the term "branch".

25 Money services business activities of the registrant. Check as many as apply. See instructions for an explanation of the terms " issuer", "seller", "redeemer", "check casher", and "money transmitter".

a ☐ Issuer of traveler's checks    d ☐ Issuer of money orders    g ☐ Currency dealer or exchanger

b ☐ Seller of traveler's checks    e ☐ Seller of money orders    h ☐ Check casher

c ☐ Redeemer of traveler's checks    f ☐ Redeemer of money orders    i ☐ Money transmitter

26 Is any part of the registrant's money services business an informal value transfer system? See the explanation of "money transmitter" in the instructions.    a ☐ Yes    b ☐ No

27 Is any part of the registrant's money services business conducted as a mobile operation?    a ☐ Yes    b ☐ No

28 Enter the number of agents authorized to conduct each money services business activity. Do not include branches, or persons who are solely employees. See instructions for an explanation of the term "agent".

a  Traveler's check sales    e  Currency exchange or dealer

b  Traveler's check redemption    f  Check cashing

c  Money order sales    g  Money transmission

d  Money order redemption

| Part V | Primary Transaction Account for MSB Activities |
|--------|-----------------------------------------------|

29 If the registrant has more than one transaction account for money services business activities check here ☐. See instructions for an explanation of the term "transaction account". The registrant's primary transaction account is the one that has the greatest annual dollar amount of money services business activity. In items 30 through 35 enter information about the registrant's primary transaction account for money services business activities.

30 Name of financial institution where the primary transaction account is held

31 Address    32 City

33 State    34 ZIP Code    —    35 Primary transaction account number

| Part VI | Location of Supporting Documentation |
|---------|-------------------------------------|

If the supporting documentation is kept at the U.S. location reported in Part II  check here ☐ and continue to Part VII.

36 Address

37 City    38 State    39 ZIP Code    —

| Part VII | Authorized Signature |
|----------|---------------------|

I am authorized to file this form on behalf of the money services business listed in Part II. I declare that the information provided is true, correct and complete. I understand that the money services business listed in Part II is subject to the Bank Secrecy Act and its implementing regulations. See 31 CFR Part 103. The money services business listed in Part II maintains a current list of all agents, an estimate of its business volume in the coming year, and all other information required to comply with 31 U.S.C. 5330 and the regulations thereunder. **The signature of the owner, controlling person or authorized corporate officer is mandatory.**

40 Signature    41 Print name

42 Title    43 Date of signature

MM / DD / YYYY

**FinCEN Form 107a     Registration of Money Services Business Instructions     1**

## General Information

### Who Must Register

Generally each money services business must register with the Department of the Treasury. This form must be used by a money services business (also referred to as an MSB) to register. However, not all MSBs are required to register. For example, if you are an MSB solely because you are an agent of another MSB, you are not required to register. The discussion below will help you determine whether or not you are an MSB that is required to register. For more information visit www.msb.gov.

The term money services business includes:
1. Currency dealers or exchangers who exchange more than $1,000 for any one customer on any day.
2. Check cashers who cash checks totaling more than $1,000 for any one customer on any day.
3. Issuers of traveler's checks, money orders or stored value who issue more than $1,000 in traveler's checks, money orders or stored value for any one customer on any day.
4. Sellers of traveler's checks, money orders or stored value who sell more than $1,000 in traveler's checks, money orders or stored value for any one customer on any day.
5. Redeemers of traveler's checks, money orders or stored value who redeem more than $1,000 in traveler's checks, money orders or stored value for any one customer on any day.
6. Money transmitters.
7. U.S. Postal Service.

The following are not required to register:
1. A business that is an MSB solely because it serves as an agent of another MSB. For example, a supermarket corporation that sells money orders for an issuer of money orders is not required to register. This is true even if the supermarket corporation serves as an agent for two or more MSBs. However, an MSB that serves as an agent of another MSB and engages in MSB activities on its own behalf must register. For example, a supermarket corporation must register if, in addition to acting as an agent of the money order issuer, it provides check cashing or currency exchange services on its own behalf in an amount greater than $1,000 for any one person on any day.
2. The United States Postal Service, any agency of the United States, of any state, or of any political subdivision of any state.
3. At this time, persons are not required to register to the extent that they issue, sell or redeem stored value. If, however, a money services business provides money services in addition to stored value, the provision of stored value services does not relieve it of the responsibility to register, if required, as a provider of those other services.

For the regulatory definition of "money services business" see 31 CFR 103.11(n) and (uu).

The following terms are used in the form and instructions to describe a money services business:
1. An "agent" is a separate business entity from the issuer that the issuer authorizes, through written agreement or otherwise, to sell its instruments or, in the case of funds transmission, to sell its send and receive transfer services. A person who is solely an employee of the MSB is not an agent of that MSB.
2. A "branch" is an owned location of either an issuer or agent at which financial services are sold. An MSB should not separately register each of its branches. A mobile operation owned by an MSB is a branch of that MSB. The MSB's headquarters is not a branch. If the MSB has only one location, that location is not a branch.
3. A "check casher" is a person engaged in the business of providing cash to persons in return for a check.
4. A "currency dealer or exchanger" is a person who engages in the physical exchange of currency for retail customers.
5. "Informal value transfer system". See explanation of the term money transmitter.
6. An "issuer" is the business that is ultimately responsible for payment of money orders or travelers checks as the drawer of such instruments, or a money transmitter that has the obligation to guarantee payment of a money transfer.
7. A "money transmitter" is a person that engages as a business in the transfer of funds through a financial institution.
Generally, acceptance and transmission of funds as an integral part of the execution and settlement of a transaction other than the funds transmission itself (for example, in connection with the bona fide sale of securities) will not cause a person to be a money transmitter.
An "informal value transfer system" is a kind of money transmitter. An informal value transfer system includes any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system.
8. A "person" is an individual, a corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture, or other unincorporated organization or group, an Indian Tribe (as that term is defined in the Indian Gaming Regulatory Act), and all entities cognizable as legal personalities.
9. A "redeemer" is a business that accepts instruments in exchange for currency or other instruments for which it is not the issuer. You are not a redeemer if you take the instruments in exchange for goods or general services, provided that the amount of cash returned is not more than $1,000 for any one customer on any day.
10. A "seller" is a business that issuers authorize, through written agreement or otherwise, to sell their instruments or their send and receive transfer services.

11. A "transaction account" is a deposit or account on which the depositor or account holder is permitted to make withdrawals by negotiable or transferable instrument, payment orders of withdrawal, telephone transfers, or other similar items for the purpose of making payments or transfers to third persons or others. Such terms include demand deposits, negotiable order of withdrawal accounts, savings deposit subject to automatic transfers, and share draft accounts. See 12 USC 461(b)(1)(c).

### When to Register

*Initial registration:* File the form within 180 days after the date the business is established.
*Renewal:* Each MSB must renew its registration every two years, on or before December 31. See 31 CFR 103.41(b)(2). For example, if an MSB registered on October 15, 2003, it must file a renewal by December 31, 2004, and then every 24 months thereafter (on or before December 31, 2006, then December 31, 2008, etc.).
*Correction:* Use the form to correct a prior report. Complete Part I in its entirety and only those other entries that are being added or changed. Staple a copy of the prior report (or the acknowledgement from DCC if received) to the corrected report.
*Re-registration:* Refile a new registration form when one of the following events occur:
1. a change in ownership requiring re-registration under state registration law;
2. more than 10 percent of voting power or equity interest is transferred (except certain publicly-traded companies) or;
3. the number of agents increases by more than 50 percent.

### Where to Register

Send your completed form to:

**IRS Detroit Computing Center
Attn: Money Services Business Registration
P.O. Box 33116
Detroit, MI 48232-0116**

The IRS Detroit Computing Center (abbreviated DCC) will send an acknowledgement of receipt to the registrant listed in Part I within approximately 60 days after the form is processed. DCC can respond to general questions over the phone at telephone (800) 800-2877.

| FinCEN Form 107 | Registration of Money Services Business Instructions | 2 |
|---|---|---|

## General Instructions

1. This form is available on the Financial Crimes Enforcement Network's web site for MSBs at www.msb.gov, or FinCEN's web site at www.fincen.gov, or by calling the IRS Forms Distribution Center at (800) 829-3676.

2. Unless there is a specific instruction to the contrary, leave blank any items that do not apply or for which information is not available.

3. Complete the form by providing as much information as possible.

4. Do not include supporting documents with this form.

5. Type or complete the form using block written letters.

6. Enter all dates in MM/DD/YYYY format where MM=month, DD=day, and YYYY=year. Precede any single number with a zero, i.e., 01,02, etc.

7. List all U.S. telephone numbers with area code first and then the seven-digit phone number, using the format (XXX) XXX-XXXX.

8. Always enter an individual's name as last name, first name, and middle initial (if known). If a legal entity is listed, enter its name in the last name field.

9. Enter identifying numbers starting from left to right. Do not include spaces, dashes, or other punctuation. Identifying numbers include social security number (SSN), employer identification number (EIN), individual taxpayer identification number (ITIN), alien registration number, driver's license/state identification, foreign national identification, and passport number.

10. Enter all Post Office ZIP Codes from left to right with at least the first five numbers, or with all nine (ZIP + 4) if known.

11. Addresses: Enter the permanent street address, city, two-letter state or territory abbreviation used by the U.S. Postal Service and ZIP Code (ZIP+4 if known) of the individual or entity. A post office box number should not be used for an individual, unless no other address is available. For an individual, also enter any apartment number, suite number, or road or route number. If a P.O. Box is used for an entity, enter the street name, suite number, and road or route number. If the address of the individual or entity is in a foreign country, enter the city, province or state, postal code and the name of the country. Complete any part of the address that is known, even if the entire address is not known. If the address is in the United States leave country code blank.

## Specific Instructions

### Part I    Filing Information
See "When to Register" in the General Information part of these instructions.

### Part II    Registrant Information
**Item 3--Legal name of the money services business.** Enter the full legal name of the registrant money services business as it is shown on the charter or other document creating the entity. For example, enter Good Hope Enterprises, Inc. when the money services business is Good Hope Enterprises, Inc., d.b.a Joe's Check Cashing. If a sole proprietorship, enter the business name of the proprietorship.

**Item 4-- Doing business as.** If applicable, enter the separate doing business as name of the registrant. For example, enter d.b.a. Joe's Check Cashing when the money services business is Good Hope Enterprises, Inc., d.b.a. Joe's Check Cashing.

**Items 5, 6, 7 and 8-- Address.** Enter the permanent address of the registrant.

**Item 9--EIN (entity), SSN/ITIN (individual).** If the registrant is an entity enter its employer identification number (EIN). If the registrant is an individual and a U.S. Citizen or an alien with a social security number, enter his/her SSN. If the registrant is an individual who is an alien and has an individual taxpayer identification number, enter his/her ITIN. If a number has been applied for, but not yet received, leave item 9 blank. When the number is received file a corrected form.

### Part III    Owner or Controlling Person
**General:** Any person who owns or controls a money services business is responsible for registering the MSB. Only one registration form is required for any business in any registration period.

If more than one person owns or controls the business, they may enter into an agreement designating one of them to register the business. The designated owner or controlling person must complete Part III and provide the requested information. In addition, that person must sign and date the form as indicated in Part VII. Failure by the designated person to register the business does not relieve any other person who owns or controls the business of the liability for failure to register the business.

An "Owner or Controlling Person" includes the following:

| Registrant Business | Owner or Controlling Person |
|---|---|
| Sole Proprietorship | the individual who owns the business |
| Partnership | a general partner |
| Trust | a trustee |
| Corporation | the largest single shareholder |

If two or more persons own equal numbers of shares of a corporation, those persons may enter into an agreement as explained above that one of those persons may register the business.

If the owner or controlling person is a corporation, a duly authorized officer of the owner-corporation may execute the form on behalf of the owner-corporation.

**Item 11--Individual's last name, or organization's name.** If the registrant is a publicly held corporation, it is sufficient to write "public corporation" in item 11. Where registrant is a public corporation, a duly authorized officer of the registrant must execute the form in Part VII.

**Items 12 to 21--**Enter the applicable information for the owner or controlling person. Their home address and phone number should not be used, unless a business address and phone number are unavailable.

**Item 22--Identification information.** If you completed item 21, you may omit this item. If you did not complete item 21, enter separately the form of identification, the ID number, and the issuing state or country. Do not provide "other" identification unless no driver's license/state ID, passport or alien registration number is available. "Other" identification includes any unexpired official identification that is issued by a governmental authority. If you check item 22 d, give a brief description of the "other" identification.

### Part IV    Money Services and Product Information
**Item 23--States and/or territories where the registrant, its agents or branches are located.** Check the box(es) for any state, territory or district in which the money services business offers services through its branches and/or agents. If a service is offered on tribal lands, mark the box for the state, territory or district in which the tribal lands are located. If you checked either "All States" or "All States & Territories", do not check any other states or territories.

**Item 24--Enter the number of branches of the registrant.** Enter the number of branches of the money services business at which one or more MSB activities are offered. If there are no branches, enter zero. See the General Information for an explanation of the term "branch".

**Item 25--MSB activities of the registrant.** Items 25a through 25i are MSB activities. Check the box of each MSB activity conducted by the registrant at its branches. See the General Information for an explanation of the terms "issuer", "seller", "redeemer", "check casher", and "money transmitter".

**Item 26--Informal value transfer system.** If any part of the registrant's money services business is an informal value transfer system, check yes. An informal value transfer system is a kind of money transmitter. See the General Information explanation of the term "money transmitter".

**FinCEN Form 107**    **Registration of Money Services Business Instructions**    **3**

**Item 27--Mobile operation.** If any part of the registrant's money services business is conducted as a mobile operation, check yes. A mobile operation is one based in a vehicle. For example, a check cashing service offered from a truck is a mobile operation. For purposes of Item 24, each mobile operation should be counted as a separate branch. **Item 28--Number of agents.** Enter the number of agents that the registrant has authorized to sell or distribute its MSB services. Do not count branches or any person who is solely an employee of the MSB. A bank is not an agent for this purpose. See the General Information for an explanation of the term "agent".

**Part V    Primary Transaction Account for MSB Activities**
**Item 29--**Check the box if the registrant has more than one primary transaction account for money services business activities. Example: If the registrant is both an issuer of money orders and an issuer of traveler's checks and the registrant has separate clearing accounts for money orders and traveler's checks, the box should be checked.
**Item 30--Name of the financial institution where the primary transaction account is held.** Enter the name of the bank or other financial institution where the registrant has its primary transaction account. If you indicated that the registrant has more than one primary transaction account in Item 29, enter information about the account with the greatest money service activity transaction volume as measured by value in dollars. See the General Information for an explanation of the term "transaction account".
**Items 31, 32, 33 and 34--**Enter the permanent address for the financial institution.
**Item 35--**Primary transaction account number. Enter the primary transaction account number.

**Part VI    Location of Supporting Documentation**
**General:** The registrant must retain for five (5) years certain information at a location within the United States. That information includes:
1. A copy of the registration form.
2. Annual estimate of the volume of the registrant's business in the coming year.
3. The following information regarding ownership or control of the business:  the name and address of any shareholder holding more than 5% of the registrant's stock, any general partner, any trustee, and/or any director or officer of the business.
4. An agent list.

If the registrant has agents it must prepare and maintain a list of its agents. That agent list must be updated annually and retained by the business at the location in the United States reported on this registration form in Part II or Part VI. The agent list should not be filed with this registration form. The agent list must include:
1. Each agent's name,
2. Each agent's address,
3. Each agent's telephone number,
4. The type of service(s) provided by each agent on behalf of the registrant,
5. A listing of the months in the immediately preceding 12 months in which the gross transaction amount of each agent with respect to financial products/services issued by the registrant exceeds $100,000,
6. The name and address of any depository institution at which each agent maintains a transaction account for the money services business activities conducted by the agent on behalf of the registrant,
7. The year in which each agent first became an agent of the registrant, and
8. The number of branches or subagents of each agent.

**Items 36, 37, 38 and 39--**If the supporting documentation is retained at a location other than the address listed in Part II, enter the location information in items 35 through 38.

**Part VII    Authorized Signature**
**Items 40, 41, 42 and 43--**The owner or controlling person listed in Part III must sign and date the form as indicated in Part VII. If the owner or controlling person is a corporation, a duly authorized officer of the corporation must execute the form on behalf of the corporation.

**Penalties for failure to comply:** Any person who fails to comply with the requirements to register, keep records, and/or maintain agent lists pursuant to 31 CFR 103.41 may be liable for civil penalties of up to $5,000 for each violation. Failure to comply also may subject a person to criminal penalties, which may include imprisonment for up to five (5) years and criminal fines. See 18 USC 1960.

**Note:** Registration with the IRS Detroit Computing Center does not satisfy any state or local licensing or registration requirement.

**Paperwork Reduction Act Notice.** The purposes of this form are to provide an effective and consistent means for money services businesses to register with the Financial Crimes Enforcement Network, and to assure maintenance of reports or records where such reports or records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings. This report is required by law, pursuant to authority contained in Public Law 103-305; 31 USC 5330; 5 USC 301; 31 CFR 103. The information collected may be provided to those officers and employees of any constituent unit of the Department of the Treasury who have a need for the records in the performance of their duties. The records may be referred to any other department or agency of the United States, to any State, or Tribal Government. Public reporting and recordkeeping burden for this information collection is estimated to average 45 minutes per response, and includes time to gather and maintain data for the required report, review the instructions, and complete the information collection. Send comments regarding this burden estimate, including suggestions for reducing the burden, to the Office of Management and Budget Paperwork Reduction Project, Washington, DC 20503 *and* to the Paperwork Reduction Act; Department of the Treasury, Financial Crimes Enforcement Network, P.O. Box 39, Vienna, VA 22183-0039. The agency may not conduct or sponsor, and an organization (or a person) is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

**Privacy Act Notice.** Pursuant to the requirements of Public Law 93-579 (Privacy Act of 1974), notice is hereby given that, in accordance with 5 U.S.C. 552a(e), the authority to collect information on **FinCEN Form 107** is Public Law 103-305; 31 USC 5330; 5 USC 301; 31 CFR 103.
The Department of the Treasury may use and share the information with any other department or agency of the United States, to any State, or Tribal Government, or part thereof, upon the request of the head of such department or agency, or authorized State or Tribal Government official for use in a criminal, tax, or regulatory investigation or proceeding, and to foreign governments in accordance with an agreement, or a treaty. Disclosure of this information is mandatory. Civil and criminal penalties, including in certain circumstances a fine of not more than $5,000 per day and imprisonment of not more than five years, are provided for failure to file the form, supply information requested by the form, and for filing a false or fraudulent form. Disclosure of the social security number or taxpayer identification number is mandatory. The authority to collect is 31 CFR 103. The social security number/taxpayer identification number will be used as a means to identify the individual or entity who files the report.