UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| E-GOLD LIMITED, | :   Criminal No. 07-109-RMC |
| GOLD & SILVER RESERVE, INC., | : |
| DOUGLAS L. JACKSON, | : |
| BARRY K. DOWNEY and | : |
| REID A. JACKSON | : |

**DEFENDANTS' REPLY TO THE GOVERNMENT'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
COUNTS TWO, THREE AND FOUR OF THE INDICTMENT**

The defendants have moved to dismiss Counts Two, Three and Four of the Indictment. The Government has opposed the defendants' motion. In doing so, the Government ignores the statutory definition of "money transmitting business" and supplants it with a definition created by the Government out of whole cloth. Indeed, the Government argues that 18 U.S.C. § 1960 suffers no vagueness problems, because the statute purportedly gives plain and unambiguous notice that the reader is to ignore the statutory definition of the term "money transmitting business" and, instead, import a definition that has never appeared in any statute, regulation, or anywhere else — until it was articulated by the Government in its opposition to the defendants' motion. The Government's argument should be squarely rejected.

Separately, the Government implicitly concedes that because it failed to incorporate any factual allegations in Counts Three and Four of the Indictment, those counts must rise or fall on the Government's mere recitation of the statutory language. The Government fails to overcome the well-established rule that an indictment must allege the facts and circumstances that give rise to the alleged statutory violation. The Indictment's failure to do so in Counts Three and Four is fatal to those counts.

Finally, the Government contends that the dismissal of Counts Two and Three would not warrant the dismissal of Count Four. In making this argument, the Government simply ignores the fact that federal courts should be reluctant to try local District of Columbia offenses in the absence of a strong nexus between the local offense and a charged federal offense. The presumption is against — not in favor of — a federal court exercising jurisdiction over a local District of Columbia offense. Once the federal money-transmitting-business offenses in Counts Two and Three have been dismissed, the Court should exercise its discretion to dismiss the related local money-transmission offense in Count Four.

I. **THE TERM "MONEY TRANSMITTING BUSINESS" IS UNAMBIGUOUSLY DEFINED BY STATUTE; THERE IS NO BASIS TO SUPPLANT THAT DEFINITION WITH A DEFINITION THAT APPEARS NOWHERE IN THE UNITED STATES CODE**

As discussed in the defendants' initial memorandum of law, the sole definition of the term "money transmitting business" found in the United States Code is located at 31 U.S.C. § 5330. To meet this definition, a business must be required to file reports under 31 U.S.C. § 5313, and a business is only required to file reports under Section 5313 if it engages in cash — meaning coin and paper money — transactions. See Memorandum of Law in Support of Defendants' Motion to Dismiss Counts Two, Three and Four of the Indictment at 6-7 (Docket No. 93) ("Def. Memo."). Because the Indictment fails to allege that any of the defendants engaged in cash transactions, it therefore fails to allege that they operated a money transmitting business. Thus, Counts Two and Three of the Indictment must be dismissed. Id. at 8-9. None of the Government's arguments to the contrary are availing.

A. <u>The Government Fails to Justify Its Extraordinary Position that the Court Should Ignore a Term's Statutory Definition</u>

First, the Government claims that the definition of "money transmitting business" is plain from the language of Section 1960. Government's Response to Defendants' Motion to Dismiss Counts Two, Three and Four of the Indictment at 6-9 ("Gov't Opp."). In making this argument, the Government glosses over the fact that the term "money transmitting business" is not defined in Section 1960 at all.

Instead, the Government attempts to fashion its own definition for "money transmitting business" from Section 1960's definition of "money transmitting." It claims that "when Section 1960 refers to 'money transmitting business,' it is referring to any *business* engaged in '*money transmitting*' — *i.e.*, any business transferring funds (not just cash) on behalf of the public by any and all means." Gov't Opp. at 7 (emphasis in original).[1] The Government defines "funds," again without statutory support, to include wire transfers as well as paper currency and coins. It then argues that, because it has now made up a definition of "money transmitting business," there is no reason to reference the actual statutory definition of "money transmitting business" that appears in 31 U.S.C. § 5330.

The Government simply offers no logical explanation for why it makes sense to use a definition that not only fails to appear in Section 1960, but that also appears nowhere in the United States Code. In particular, it fails to offer a coherent explanation for why there is a need to resort to such a measure to define "money transmitting business" when there is a plain and unambiguous definition in a related statute.

---

[1] The Government does not explain whether its newly minted definition means that the business's sole purpose must be money transmitting, its primary purpose must be money transmitting, or whether any business that engages in even a single act of money transmission qualifies as a "money transmitting business."

The Government argues that if the lack of a definition of "money transmitting business" in Section 1960 is resolved by referencing the definition in Section 5330, then Section 1960's separate definition of "money transmitting" would add little value to the statute. The Government complains that this violates a canon of statutory construction disfavoring rendering statutory language superfluous. Yet, plainly not every statute is drafted as economically as it could be.

The more fundamental principle the Government wishes to ignore is *in pari materia* (upon the same matter or subject), which holds that the definition of a term may be determined from other statutes on the same subject matter. See, e.g., Wachovia Bank v. Schmidt, 546 U.S. 303, 315-316 (2006) ("[U]nder the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read as if they were one law.") (internal quotations omitted); Branch v. Smith, 538 U.S. 254, 281 (2003) ("[C]ourts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part").

The application of this principle is particularly apt here, where the same section of a single congressional act — the Riegle Community Development and Regulatory Improvement Act of 1994, Pub. L. 103-325, § 408, 108 Stat. 2160, 2249-52 (1994) — both added Section 5330 to the United States Code and simultaneously amended Section 1960. See Haig v. Agee, 453 U.S. 280, 300 (1981) (holding that when two statutory provisions are simultaneously amended, they "must be read *in pari materia*"); Burns v. U.S. R.R. Ret. Bd., 701 F.2d 193, 213 (D.C. Cir. 1983) (holding that two acts, "sharing as they do a common legislative history and purpose, must be read *in pari materia*" to effectuate congressional intent).

Section 1960 uses a term that is defined in a closely related statute. There is no basis to ignore the statutory definition of that term, much less to replace it with a definition that has no

statutory basis. In using the term "money transmitting business," but not separately defining it, Section 1960 must be read to incorporate the definition of that term set forth in 31 U.S.C. § 5330.

### B. The Term "Money Transmitting Business" Should Not Be Given Different Definitions in Different Subparts of the Same Statute

Indeed, the Government acknowledges, as it must, the fact that Sections 1960 and 5330 are related and must be read together, because it acknowledges the explicit reference to Section 5330 in Section 1960(b)(1)(B). Yet, the Government asserts that because Section 5330 is explicitly referenced only in subpart (b)(1)(B) of Section 1960, and not in subparts (b)(1)(A) or (b)(1)(C), it should apply only to subpart (b)(1)(B), and "it should not alter in any way the independent definitions of an unlicensed money transmitting business contained in the other subparts." Gov't Opp. at 8. According to the Government's logic, however, different definitions of "money transmitting business" would then govern the different subparts of Section 1960. In (b)(1)(A) or (b)(1)(C), "money transmitting business" would be defined by the Government's newly created definition, whereas in subpart (b)(1)(B), "money transmitting business" would have a different meaning and would be defined by Section 5330.

The plain language of the statute indicates that this is not what Congress intended. In order to qualify as an unlicensed money transmitting business under Section 1960, a business must first meet two threshold requirements. First, the business must be a "money transmitting business." 18 U.S.C. § 1960(b)(1). Second, the business must be one that "affects interstate or foreign commerce." Id. In addition to those two prerequisites, a business can be an *unlicensed* money transmitting business only if it then satisfies at least one of three additional conditions: (1) the business must be operating without the appropriate state license, in a state where such operation is a misdemeanor or a felony; (2) the business must "fail[] to comply with the money transmitting business registration requirements" under 31 U.S.C. § 5330 or the regulations

promulgated thereunder; or (3) the business must otherwise involve the transportation or transmission of funds that are known to the defendant to have been derived from or intended to be used to promote or support unlawful activity. 18 U.S.C. §§ 1960(b)(1)(A)-(C). Thus, whether a business constitutes a "money transmitting business" must be determined, applying a single definition, before one even gets to the question of whether it is an *unlicensed* money transmitting business under any of the three subparts.

The only place where that single definition is supplied is in Section 5330. The Government cannot justify its wish to ignore this definition.[2] Indeed, the Government itself has repeatedly recognized elsewhere that Section 1960 cannot be read without reference to the definition of "money transmitting business" contained in Section 5330. See Verified Complaint for Forfeiture In Rem, United States v. All Property In/Underlying E-Gold Account Numbers: 544179 & 109243, No. 07-01337 (RMC) at ¶ 28 (D.D.C.) (Docket No. 1) ("In addition to the definition of 'money transmitting' contained in 18 U.S.C. § 1960, *section 5330 of Title 31 defines a money transmitting business.*") (emphasis added). The Government based its allegation in its civil forfeiture complaint that "[t]he E-GOLD operation constitutes a money transmitting business" on the definition set forth in Section 5330. Id. at ¶ 29; see also Government's Response to Gold & Silver Reserve, Inc.'s Emergency Petition to Vacate Freeze of Regions Bank Account Nos. 6709194851 & SunTrust Bank Account No. 1000028078359 & Request for an Emergency Hearing, In the Matter of Seizure of All Funds on Deposit in SunTrust Account No. 1000028078359, in the Name of Gold & Silver Reserve, Inc. & All Funds on Deposit in

---

[2] The Government argues that Section 5330 prohibits any other section of the United States Code from using its definition of "money transmitting business." This plainly is not the case. Section 5330(d) states that "for purposes of this section, the following" definition of "money transmitting business" shall apply. While stating that the definition set forth in subpart (d) applies to Section 5330, Section 5330 nowhere purports to state that the same definition cannot also apply elsewhere.

Regions Bank Account Number 67-0919-4851, in the Name of Gold & Silver Reserve, Inc., No. 05-664M-01 at 7-8 (D.D.C.) (referring to Section 5330's definition of "money transmitting business"); Plaintiff's Opposition to Claimant's Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment, In the Matter of Seizure of All Funds on Deposit in SunTrust Account No. XXXXXXXXX8359, in the Name of Gold & Silver Reserve, Inc. & All Funds on Deposit in Regions Bank Account Number XX-XXXX-4851, in the Name of Gold & Silver Reserve, Inc., No. 05-2497 (RMC) at 8-9 (D.D.C.) (Docket No. 8) (same).

C. The Statutory Definition of "Money Transmitting Business" Applies to Section 1960

Ultimately, whether Counts Two and Three of the Indictment allege an offense depends on whether e-gold, Ltd. ("e-Gold") or Gold & Silver Reserve, Inc. ("G&SR") are "money transmitting businesses." The only definition of this term is found in Section 5330, a statute closely related to Section 1960. Conversely, the definition the Government currently seeks to use — which is inconsistent with the Government's own reading of the statute in related cases — has no statutory or regulatory basis, and indeed the Government claims none. It plainly makes more sense to read Section 1960 to incorporate Section 5330's statutory definition of "money transmitting business."

Because, as set forth in the defendants' opening brief, and as further set forth below, the statutory definition of "money transmitting business" encompasses only businesses that engage in cash transactions, and because the Indictment fails to allege that any of the defendants engaged in cash transactions, the Indictment fails adequately to allege that the defendants operated an unlicensed money transmitting business. Accordingly, Counts Two and Three of the Indictment must be dismissed.

## II. ANY AMBIGUITY WITH RESPECT TO WHETHER THE STATUTORY DEFINITION OF "MONEY TRANSMITTING BUSINESS" APPLIES TO SECTION 1960 MUST BE RESOLVED IN THE DEFENDANTS' FAVOR

For the reasons set forth above, the Government's reading of Section 1960 — which uses the Government's definition of "money transmitting business" and ignores the statutory definition of "money transmitting business" set forth in Section 5330 — makes little sense in comparison to the defendants' reading of Section 1960. However, even if both readings were sensible, the statute's susceptibility to competing interpretations demonstrates the statute's ambiguity as applied to the defendants.

The Government contends, however, that Section 1960 is clear on its face. See Gov't Opp. at 4. In support of its argument, the Government points to cases where courts have purportedly concluded that Section 1960 "gives defendants fair warning of the conduct that is forbidden by the statute." Id. at 15.

Yet, none of those cases involve the question of whether a business must engage in cash transactions to qualify as a "money transmitting business." See, e.g., United States v. Talebnejad, 460 F.3d 563, 572-73 (4th Cir. 2006) (holding that Section 1960 sets forth a constitutionally valid general intent crime); United States v. Velastegui, 199 F.3d 590, 593 (2d Cir. 1999) (analyzing whether the "direct transmission of money to Mexico by an unlicensed agent of a state-licensed money transmitting business falls clearly within the range of criminal liability under section 1960."); United States v. Barre, 324 F. Supp. 2d 1173, 1176 (D. Colo. 2004) (relying on Velastegui, 199 F.3d at 595, and concluding, without analysis, that Section 1960's definition of "money transmitting business" is sufficiently clear).[3]

---

[3] The Government goes to great lengths to argue that Section 1960's status as a general-intent crime does not render it unconstitutionally vague. See Gov't Opp. at 15-18. The Government has misread the defendants' initial argument relating to this point. Compare Def. Memo. at 10 (stating that Section 1960 does not contain a specific intent element that might

Section 1960 does not set forth the definition of money transmitting business the Government now wishes to ascribe to it. Nor does any case law adopt the Government's definition. Finally, as the defendants noted in their opening brief, no government agency or agent has plainly set forth the definition the Government now wishes to use.

The Government argues that the Court should refrain from consulting "the publications cited to by defendants," because in the Government's view, Section 1960's definition of money transmitting business is plain on its face. See Gov't Opp. at 18-22. Yet, the defendants did not cite those various governmental pronouncements to demonstrate that Section 1960 is facially ambiguous; instead, the publications show that any construction of Section 1960 encompassing businesses that engage solely in non-cash transactions would be novel and would violate due process. See Def. Memo. at 12-15.[4] Indeed, the Government seeks to avoid review of those publications, because they show that, at the time of the conduct at issue in the Indictment, the defendants had no fair notice that such alleged conduct was a violation of Section 1960.

### III. PURSUANT TO THE STATUTORY DEFINITION, ONLY A BUSINESS THAT ENGAGES IN CASH TRANSACTIONS MAY BE CONSIDERED A "MONEY TRANSMITTING BUSINESS"

The Government alternatively argues that if Section 5330 governs the definition of "money transmitting business," Counts Two and Three of the Indictment should survive, because

---

*mitigate* its vagueness — not that Section 1960 is vague *because* it is a general intent crime) and Gov't Opp. at 18 ("Thus, Section 1960 is not unconstitutionally vague on the basis that it is not a 'specific intent' crime.").

[4] Moreover, contrary to the Government's assertion, see Gov't Opp. at 21, the Money Laundering Threat Assessment cited by the defendants, see Def. Memo. at 12, is much more than a mere "publication" of the Treasury Department. It was authored jointly by no less than five federal departments and agencies, including five divisions of the Department of Justice. See Money Laundering Threat Assessment Working Group, U.S. Money Laundering Threat Assessment (2005), *available at* http://www.ots.treas.gov/docs/4/480215.pdf (listing as working group members the Department of the Treasury, the Department of Justice, the Department of Homeland Security, the Board of Governors of the Federal Reserve System, and the United States Postal Service).

Section 5330 and regulations promulgated thereunder do not require that a business engage in cash transactions to qualify as a "money transmitting business." See Gov't Opp. at 9-13. This conclusion, however, rests on the Government's flawed reading of the relevant statutory and regulatory provisions.

First, the Government argues that, whether or not they actually deal in cash, all "financial institutions" are required to file reports under Section 5313. See Gov't Opp. at 10. And, as a result, opting out of accepting cash does not relieve e-Gold and G&SR — which the Government asserts are "financial institutions" — of Section 5330's registration requirements. Id.

As a threshold matter, the Government is incorrect that e-Gold and G&SR are "financial institutions." However, even assuming, *arguendo*, that e-Gold and G&SR are "financial institutions," the Government's argument ignores the plain language of Section 5313. Section 5313 clearly states that "financial institutions" are required to file reports only if "involved in a transaction for the payment, receipt, or transfer of *United States coins and currency* (or other monetary instruments the Secretary of Treasury prescribes)." 31 U.S.C. § 5313(a) (emphasis added). The Indictment fails to allege that the defendants actually engaged in cash transactions. Thus, they were not required to file reports under Section 5313, which means they do not qualify as "money transmitting businesses" for the purposes of Section 5330.

The Government also claims that the regulations promulgated under Section 5330 do not require that a business engage in cash transactions to qualify as a "money transmitting business." See Gov't Opp. at 10-13. This argument is simply irrelevant. Section 5330 itself unambiguously defines "money transmitting business" in the statute itself. The Government has not and could not argue otherwise. Thus, one need not look to the regulations to find the definition of "money

transmitting business," nor does the Department of Treasury have the authority to define "money transmitting business" in a manner that is inconsistent with the statutory definition.[5]

Finally, the Government argues that even if a business must engage in cash transactions to qualify as a "money transmitting business," engaging in cash transactions is not an "essential element" of a Section 1960 violation and it need not be alleged in the Indictment. However, the Government must concede that the operation of a money transmitting business is an essential element of a Section 1960 violation. The Indictment specifically alleges that the defendants operated a money transmitting business through the acceptance of wires, not cash, and therefore fails adequately to allege facts that would support the conclusion that the defendants operated a money transmitting business. See, e.g., Indictment at ¶ 58 ("To obtain 'e-gold' through OmniPay, a customer was required *to wire* national currency, in an amount greater than $1,000, to a bank account specified by the E-GOLD operation. Thereafter, the customer's 'e-gold' account would be credited *for the amount of the wire*, minus an exchange fee collected by OmniPay.") (emphasis added).

The Government asserts that it would be permitted at trial to demonstrate that the defendants actually engaged in cash transactions, even though its theory in the Indictment was that the defendants operated a money transmitting business without engaging in cash transactions. Again, to qualify as a "money transmitting business," the defendants must have

---

[5] The Government notes that FinCen Form 107 instructs "money transmitters" to register with the Department of Treasury, and that the form explains that "a 'money transmitter' is a 'person that engages as a business in the transfer of funds through a financial institution.'" See Gov't Opp. at 12. G&SR accepts wire transfers, as does nearly every business in the United States, but neither it nor any of the other defendants can be said to *transfer funds through a financial institution.* More importantly, the issue is not the definition of "money transmitter," but rather the definition of "money transmitting business." The statutory definition cannot be amended by language in a FinCen form. Finally, as noted in the defendants' opening brief, FinCen Form 104 states that Currency Transaction Reports must only be filed where there is a physical transfer of cash. Any ambiguity created by the apparent inconsistency between the two FinCen forms must be resolved in the defendants' favor under the rule of lenity.

engaged in cash transactions. The Indictment's failure to allege that the defendants did, in fact, engage in cash transactions is fatal to Counts Two and Three, and cannot be cured by proof at trial — as this would create a variance between the Indictment and the Government's proof. See Stirone v. United States, 361 U.S. 212, 217 (1960) ("While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.").

The Government also argues it should be allowed to prove at trial that exchangers other than the defendants accepted cash transactions, something that is alleged in the Indictment. And, the Government argues that it should be allowed to put on evidence at trial as to "the extent to which defendants encouraged, facilitated, or participated in cash transactions." See Gov't Opp. at 13 n.6. However, Section 1960 is not violated simply by encouraging or facilitating the acceptance of cash by third parties. While those third parties might be "money transmitting businesses," Section 1960 is only violated when a person "knowingly conducts, controls, manages, supervises, directs, or owns" an unlicensed money transmitting business. The Indictment does not allege that any of the defendants conducted, controlled, managed, supervised, directed or owned any of the third-party exchangers that allegedly accepted cash. Nor does the Indictment allege that the defendants aided and abetted a Section 1960 violation by the third party exchangers. Rather, the Indictment alleges that the defendants violated Section 1960 in that they controlled, managed, supervised, directed or owned e-Gold and G&SR.

The Indictment plainly alleges that the defendants operated e-Gold and G&SR as a money transmitting business even though it alleges that e-Gold accepted no customer funds and

that G&SR accepted only wires. It does not allege that any of the defendants engaged in cash transactions or "knowingly conduct[ed], control[led], manage[d], supervise[d], direct[ed], or own[ed]" any entity other than e-Gold and G&SR. Accordingly, Counts Two and Three fail to state an offense.

IV.    SHOULD THE COURT DISMISS COUNTS TWO AND THREE, THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS COUNT FOUR

Should the Court dismiss Counts Two and Three, it should also exercise its discretion to dismiss Count Four — a local District of Columbia offense. The Government asserts in a single sentence, without citation to any support, that because the defendants have not challenged Count One, which alleges the federal offense of conspiracy to commit money laundering, "there is no basis for them to complain about the government's election to include Count Four," which relates solely to allegations of money transmission without a license in violation of District of Columbia law. The Government's assertion fails in two respects.

First, whether the Court should retain jurisdiction over Count Four in the absence of Counts Two and Three is not a matter of the "Government's election." It is within the Court's discretion to exercise jurisdiction over local offenses. See United States v. McLaughlin, 164 F.3d 1, 7 (D.C. Cir. 1998) ("Where an indictment contains both District of Columbia and federal charges, the district court *may* adjudicate the entire case.") (emphasis added); In re United States v. Kember, 648 F.2d 1354, 1359-60 (D.C. Cir. 1980) ("While Congress conferred power on the U.S. District Court to try local offenses whenever those offenses are properly joined with a federal offense, Congress did not instruct the federal forum to exercise that power without regard to the exigencies of the particular case.").

Second, should the Court dismiss Counts Two and Three, the judicial economy supporting a federal trial on Count Four no longer exists — a point the Government does not

dispute. A federal court must be prudential in exercising jurisdiction over a local offense. Kember, 648 F.2d at 1359-60 (D.C. Cir. 1980). This Court should not do so in the absence of a compelling reason to do so. Id. at 1360 ("[T]he U.S. District Court for the District of Columbia should decline to try local offenses when those offenses have been disassociated from any federal charges prior to trial and retention of the case would not comport with '[t]he responsibilities of the District Court with respect to matters of federal concern.'") (quoting United States v. Jackson, 562 F.2d 789, 800 (D.C. Cir. 1977)). Following the dismissal of the federal money-transmitting-business charges, there is no reason to exercise jurisdiction over the related local money-transmitting charge.

## V. ADDITIONALLY, COUNTS THREE AND FOUR SHOULD BE DISMISSED BECAUSE THEY FAIL TO SET FORTH A PLAIN, CONCISE, AND DEFINITE WRITTEN STATEMENT OF THE ESSENTIAL FACTS

In its opposition to the defendants' motion, the Government implicitly concedes that because it did not incorporate into Counts Three and Four any of the factual allegations from the remainder of the Indictment, they can only survive dismissal if the single paragraph supporting each count tracking the respective statutory language standing alone adequately alleges the offense. Because these paragraphs do not provide the factual basis for the allegations, Counts Three and Four violate Federal Rule of Criminal Procedure 7(c)(1) and should be dismissed.

The Government argues that tracking the language of the statute alone provides the defendants with sufficient notice of the charges against them, and that this is also sufficient to satisfy Rule 7. See Gov't Opp. at 23-28. In making this argument, the Government attempts to distinguish the outcome in United States v. Pickett, 209 F. Supp. 2d 84 (D.D.C. 2002) (Jackson, J.), by grafting onto the court's opinion a holding never asserted by the court.

The Government claims that Pickett does not apply to this case because it involved "an entirely different statutory offense," which, because of some unidentified characteristic, rendered it part of a "limited class of statutory offenses," that must be charged with greater specificity than others. See Gov't Opp. at 25-27 ("Perhaps most importantly, unlike in *Pickett*, the statute at issue in this case does not 'depen[d] so crucially upon such a specific identification of fact.'"). Yet, Pickett held no such thing.

The court in Pickett did not find the relevant statute, 40 U.S.C. § 212a-2(d), to be unique in any respect, nor did it hold that there was anything distinctive about the pertinent allegations, which involved claims of obstruction and interference with the Capitol Police in the performance of their duties. Pickett, 209 F. Supp. 2d at 88. Rather, the court found the relevant count of the indictment lacking because it "merely reiterate[d] the statutory language of the offense it purport[ed] to charge," and did not "elaborate on the nature of [the defendant's] obstructive conduct." Id. Citing Federal Rule of Criminal Procedure 7(c)(1), the court concluded that the deficient count had to be dismissed. Id. at 88-89. Despite the Government's claim, nowhere did the court conclude that the statute underlying the deficient count was part of some "limited class" of offenses that must be charged with greater factual specificity than others.[6]

---

[6] The Government relies on the court's citation to Russell v. United States, 369 U.S. 749, 770 (1962), for the proposition that the statute in Pickett falls among those that, when charged in an indictment, require more specific factual allegations than most. Russell held that an indictment under 2 U.S.C. § 192 necessitates the identification of the subject under inquiry by a congressional committee at the time of the defendant's alleged refusal to answer certain questions. But Pickett did not cite Russell for an overarching rule that unless a statute falls within a select subgroup, an indictment need only track the statutory language to satisfy Rule 7, nor does Russell stand for that proposition. See Russell, 369 U.S. at 765 ("It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, — *it must descend to particulars*.") (quoting United States v. Cruikshank, 92 U.S. 542, 558 (1875)) (emphasis added) (internal quotation marks omitted). Instead, Pickett cited the Supreme Court's separate holding in Russell that a bill of particulars cannot save an invalid indictment, in light of the fact-finding function of the grand jury. See Pickett, 209 F. Supp. 2d at 89 (citing Russell, 369 U.S. at 770 ("To allow the prosecutor, or the court, to make a subsequent guess as to what

The Government states that the Indictment need not include "detailed" or "particular" allegations. Gov't Opp. at 23, 24. Yet, it is clear that at least some "elaborat[ion]" on the defendants' alleged conduct is required. Pickett, 209 F. Supp. 2d at 88-89; see also, e.g., Hamling v. United States, 418 U.S. 87, 117 (1974) (holding that an indictment "must be accompanied with such a *statement of the facts and circumstances* as will inform the accused of the specific offence, coming under the general description, with which he is charged") (quoting United States v. Hess, 124 U.S. 483, 487 (1888)) (emphasis added); Conlon v. United States, 628 F.2d 150, 155 (D.C. Cir. 1980) ("The more generally applicable rule is that the indictment may use the language of the statute, *but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged.*") (emphasis added); United States v. Nance, 533 F.2d 699, 702 (D.C. Cir. 1976) ("It would have been relatively simple for the Government to incorporate the applicable false pretense allegations of count 1 by reference in the remaining counts. Failing this, the judgments of conviction on [the remaining counts] are vacated").[7]

Because Counts Three and Four fail to include any independent or incorporated factual allegations, they fail to meet the requirements of Rule 7, and must be dismissed. See Fed. R.

---

was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.")).

[7] The Government asserts that the Indictment alleges factual information — "such as the dates of the offenses, the locations of the offenses (e.g., the District of Columbia and elsewhere), and perhaps most importantly, it names of [sic] the businesses that the defendants are accused of operating in violation of the relevant statutes" — that provides the defendants with "sufficient notice of the offenses with which they are charged." See Gov't Opp. at 24. Yet, minimal conclusory allegations are insufficient to satisfy Rule 7's requirement. Indeed, indictments that included factual information well beyond that alleged in Counts Three and Four have been found lacking. See Nance, 533 F.2d at 700 (noting that the faulty indictment alleged the "name of the victim, the date of the false representation, the amount involved and the date the sum was paid," but failed to set forth sufficient allegations to comply with Rule 7).

Crim. P. 7(c)(1) (requiring that an indictment be "a plain, concise, and definite written statement of the *essential facts* constituting the offense charged.") (emphasis added).

## CONCLUSION

For the reasons set forth above and in the defendants' memorandum of law in support of their motion to dismiss, Counts Two, Three and Four of the Indictment should be dismissed.

Dated: March 19, 2008     Respectfully submitted,

By: _____/s/_____
Barry J. Pollack (D.C. Bar No. 434513)
Dawn E. Murphy-Johnson (D.C. Bar No. 490232)
KELLEY DRYE COLLIER SHANNON
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
bpollack@kelleydrye.com
202.342.8400
202.342.8451 fax

*Attorneys for Defendant Barry K. Downey*

Mitchell S. Fuerst
Andrew S. Ittleman
Fuerst Humphrey Ittleman, PL
1001 Brickell Bay Drive
Suite 2002
Miami, Florida 33131
mfuerst@fuerstlaw.com
305.350.5694
305.371.8989 fax

*Attorneys for Defendant e-gold, Ltd.*

Aron U. Raskas
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD 21202-3201
aur@kg-law.com
(410) 752-6030
(410) 361-8211 fax

*Attorneys for Defendant Gold & Silver Reserve, Inc.*


Joshua G. Berman
Machalagh Proffit-Higgins
Sonnenschein Nath & Rosenthal LLP
1301 K Street, N.W., Suite 600, East Tower
Washington, DC 20005-3364
jberman@sonnenschein.com
202/408-5208
202/408-6399 fax

*Attorneys for Defendant Douglas L. Jackson*


A.J. Kramer
Michelle Peterson
Office of the Federal Public Defender
625 Indiana Avenue N.W.
Suite 550
Washington, D.C. 20004
Shelli_Peterson@fd.org
(202) 208-7528

*Attorneys for Reid A. Jackson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2008, a true and correct copy of the foregoing Defendants' Reply to the Government's Opposition to Defendants' Motion to Dismiss Counts Two, Three and Four of the Indictment was served via ECF on all counsel of record.

_____/s/_____
Barry J. Pollack