## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br><br>)<br><br>)<br><br>)<br><br>)<br>**v.**                          )<br><br>)<br>**E-GOLD, LTD, *et al.*,**      )<br><br>)<br>        **Defendants.**      )<br><br>) | **Criminal Action No.  07-109  (RMC)** |

## MEMORANDUM OPINION

Title 18 of the United States Code ("U.S.C.") sets out federal law covering Crimes and Criminal Procedure.  Title 31 of the U.S.C. sets out federal law covering Money and Finance, including the Internal Revenue Code.  18 U.S.C. § 1960 makes it a crime to operate an unlicensed money transmitting business.  Section 1960 defines what it means to be unlicensed and what it means to engage in money transmitting.  By those definitions, a business can clearly engage in money transmitting without limiting its transactions to cash or currency and would commit a crime if it did so without being licensed.  The only definition in the United States Code for a "money transmitting business" *per se* is at 31 U.S.C. § 5330.  Section 5330 defines a money transmitting business as one that, *inter alia*, is required to report certain cash or currency transactions to the Internal Revenue Service ("IRS").

Before the Court is a motion to dismiss filed by the criminal defendants in this case. They have all been charged with operating an unlicensed money transmitting business in violation of Section 1960.  They contend that Section 1960 does not apply to their operations because they never deal in cash or currency.  Since they are not required to file reports with the IRS concerning

cash transactions, they argue that they do not operate a "money transmitting business" and, therefore, cannot be an "unlicensed money transmitting business" within the scope of Section 1960. They further argue that even if one could distinguish Section 1960 and Section 5330, Section 1960 is unconstitutionally vague as to the meaning of the term "money transmitting business," and therefore violates Defendants' rights under the Due Process Clause of the Constitution, or at least is ambiguous as to the meaning of that term, and the rule of lenity requires dismissal of most of the counts in the criminal indictment.

       The Defendants have moved, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss Count Two of the Indictment for failure to state an offense under 18 U.S.C. § 371, and to dismiss Count Three for failure to state an offense under 18 U.S.C. § 1960. The Defendants also move to dismiss Count Four, based on the Court's discretion not to exercise jurisdiction over an alleged state offense, Money Transmission Without a License in violation of D.C. Code § 26-1002. Alternatively, the Defendants move to dismiss Counts Three and Four for failure to comply with Federal Rule of Criminal Procedure 7(c)(1).[1] Whether the Defendants' business activities, described below, are criminal in nature has been orally contested since the Indictment was obtained. The Court is now advantaged by the written arguments presented by the parties, as well as a spirited oral argument, and finds that Counts Two and Three properly allege offenses of 18 U.S.C. §§ 371 and 1960. Since the Indictment remains intact, the Court will maintain the state-law count in Count Four. The motions to dismiss are based on a mis-reading of the

---

[1] The United States obtained a Superseding Indictment in this case on the day before the motions hearing on the instant motions. Defendants conceded at that hearing that the Superseding Indictment robbed their Rule 7(c)(1) arguments of force and weight. They will not be addressed further here.

statutory text and will be denied.

# I

## BACKGROUND

The Indictment alleges that Defendant e-Gold, Ltd. ("e-Gold") is an issuer of digital currency known as "e-gold," "which function[s] as an alternative payment system" over the Internet. Indictment ¶¶ 2, 14. In order for an individual to use e-gold as a currency, he must complete "four primary steps." *Id.* ¶ 3. First, he must open an account with e-Gold. *Id.* Second, to fund the account, the account-holder must "convert[]" national currency[2] into e-gold. *Id.* Third, the account holder can then use the e-gold to buy a good or pay for a service, or to transfer funds to someone else. *Id.* Finally, the account-holder may "exchange" his e-gold back into national currency. *Id.* For every transfer of e-gold from one e-gold account to another, e-Gold collects a transaction fee. *Id.* It also collects a monthly storage fee for the actual gold bullion and other precious metals that back up virtual "e-gold" and are said to be stored in Europe. *Id.*

To convert national currency into e-gold, or vice versa, e-Gold requires the services of a "digital currency exchanger." *Id.* ¶¶ 3-5. The digital currency exchanger takes national currency from account holders and exchanges it for e-gold. *Id.* ¶ 4. It can also exchange e-gold back into national currency. *Id.* ¶ 5. Defendant Gold & Silver Reserve, Inc. ("G&SR"), which operates e-Gold, offers such a digital currency exchange service, known as OmniPay. *Id.* ¶ 15.

Along with e-Gold and G&SR, three individual Defendants are named in the Indictment. These three are alleged to have varying management roles in e-Gold and G&SR and to have an ownership interest in G&SR. *Id.* ¶¶ 16-18. Specifically, Defendant Douglas L. Jackson is

---

[2] Since e-Gold operates on the Internet, this "national currency" can be from any nation.

alleged to be co-founder, Chairman, and Chief Executive Officer of e-Gold and GS&R and majority owner of GS&R; Defendant Barry K. Downy is alleged to be co-founder, Secretary, and a Director of e-Gold and GS&R and an owner of 20 percent (20%) of GS&R; and, finally, Defendant Reid A. Jackson is alleged to be the Managing Director of e-Gold and GS&R and owner of three percent (3%) of GS&R.  All Defendants are charged with conspiracy to launder money instruments (from about 1999 through December 2005), in violation of 18 U.S.C. §§ 1956, 1957 (Count One);[3] conspiracy to operate an unlicensed money transmitting business (from October 26, 2001 through December 2005), in violation of 18 U.S.C. § 371 (Count Two); operation of an unlicensed money transmitting business (from October 26, 2001 through (at least) December 2005), in violation of 18 U.S.C. §§ 2, 1960 (Count Three); and money transmitting without a license (from May 14, 2002 through at least March 23, 2003), in violation of D.C. Code § 26-1002 (Count Four).

## II

## APPLICABLE LAW

The interplay of various statutes is critical to Defendants' motion.  They are set out for ease of reference hereafter.

18 U.S.C. § 1960 ("Section 1960") imposes criminal penalties on anyone who "knowingly conducts, controls, manages, supervises, directs or owns all or part of an unlicensed money transmitting business."  18 U.S.C. § 1960(a) (2008).  It also provides that:

As used in this section --

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and –

---

[3] Defendants do not move to dismiss Count One.

(A) is operated without an appropriate money transferring license in a State where said operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

(B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

(C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;

(2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier . . . .

18 U.S.C. § 1960(b).

The significance of the reference in Section 1960(b)(1)(B) to 31 U.S.C. § 5330 ("Section 5330") underlies Defendants' motion to dismiss. Section 5330 provides that, for purposes of that section, "money transmitting business" means:

any business other than the United States Postal Service which --

(A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internally outside of the conventional financial institutions system;

(B) is required to file reports under section 5313; and

-5-

> (C) is not a depository institution (as defined in section 5313(g)).

31 U.S.C. § 5330(d)(1) (2008).[4]  Further, 31 U.S.C. § 5313 ("Section 5313 "), titled "Reports on domestic coins and currency transactions,"  provides:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. . . .

31 U.S.C. § 5313(a) (2008).

## III

## ANALYSIS

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."  Fed. R. Crim. P. 12(b)(3)(B).  Calling on this Rule, the Defendants argue:

> By its terms, Section 1960 applies only to "money transmitting business[es]."  18 U.S.C. § 1960. . . . [I]n order to qualify as a "money transmitting business," a business must engage in cash transactions.  Because the Indictment fails to allege that either e-Gold or G&SR engages in cash transactions – and indeed specifically

---

[4]  31 U.S.C. § 5330(d)(2) provides that "[t]he term 'money transmitting service' includes accepting currency or funds denominated in the currency of any country and transmitting the currency or funds, or the value of the currency or funds, by any means through a financial agency or institution, a Federal reserve bank or other facility of the Board of Governors of the Federal Reserve System, or an electronic funds transfer network."

alleges that e-Gold merely transfers e-gold between accounts and that G&SR transacts in wires – they cannot constitute a money transmitting business, either individually or collectively. Thus, under the terms of the Indictment, the defendants could not have violated the law by operating an unlicensed money transmitting business, or by conspiring to operate an unlicensed money transmitting business.[5] Accordingly, Counts Two and Three of the Indictment must be dismissed.

Defs.' Mem. at 5; *see also* Defs.' Reply at 7 ("the statutory definition of 'money transmitting business' encompasses only businesses that engage in cash transactions"). Stated in the reverse, Defendants argue that one cannot be engaged in a money transmitting business *unless* one engages in cash transactions. In support of their position, Defendants rely on Section 5330(d)(1)(B), which defines money transmitting businesses, in part, as those required to file cash transaction reports under Section 5313. Defs.' Mem. at 7 ("a business can constitute a money transmitting business *only* when it is required to file reports under 31 U.S.C. § 5313"). Defendants submit that Section 5313 "in turn, makes it clear that such reports must be filed *only* by domestic financial institutions involved in transactions 'for the payment, receipt, or transfer of *United States coins and currency* (or other monetary instruments the Secretary of Treasury prescribes).'" *Id.* (citing 31 U.S.C. § 5313(a) (emphasis added)). For a definition of "currency" and "transaction in currency," Defendants refer the Court to the "currency transaction reports" referred to in Section 5330(d)(1)(B) which define these terms as follows:

> **Currency**. The *coin and paper money* of the United States or any other country, which is circulated and customarily used and accepted as money.

Currency Transaction Report at 3 (Department of Treasury FinCEN Form 104) (emphasis added).

---

[5] Defendants' position is that their businesses are not required to obtain licenses; they do not argue that they are licensed anywhere.

> **Transaction in Currency**.  The **physical** transfer of currency from one person to another.  This does not include a transfer of funds by means of bank check, bank draft, wire transfer or other written order that does not involve the physical transfer of currency.

*Id.*  (emphasis in original).

Defendants contend that, taken together, these statutory provisions establish that an entity is a "money transmitting business" *only if* it engages in the physical transfer of currency, and because the Government failed to allege that Defendants engaged in the physical transfer of currency, Defendants cannot be a money transmitting business, or consequently, an unlicensed money transmitting business, for purposes of Section 1960.  Defs.' Mem. at 8 ("in order to qualify as a 'money transmitting business,' a business must be required to file reports under 31 U.S.C. § 5313, and a business is only required to file reports under § 5313 if it engages in cash (coin and paper money) transactions").   In the alternative, Defendants argue that because the term "money transmitting business" is only defined in Section 5330, and that definition purportedly conflicts with the definition of "money transmitting" in Section 1960(b)(2), Section 1960 is unconstitutionally vague, or "at best," ambiguous as to the proper meaning of the term "money transmitting business," and the rule of lenity dictates that the Court should "resolve the ambiguity" in Defendant's favor.  *Id.* at 12 (citing *United States v. Granderson*, 511 U.S. 39, 54 (1994)).

The Court disagrees.

A. *The Indictment Properly States a Criminal Offense under Section 1960*

Section 1960 is clear on a stand-alone basis.  The Court must begin its inquiry with the fundamental principle that statutory interpretation begins with the language of the statute itself.  *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990).  Section 1960 defines "money

transmitting" broadly to include transferring "funds," not just currency, by "any and all means;" it is not limited to cash transactions. *See* 18 U.S.C. § 1960(b)(2). Section 1960 also defines the term "unlicensed money transmitting business." *See id*. § 1960(b)(1). Assuming the definition of "money transmitting" is unambiguous (and Defendants have not argued otherwise), the statute could not be rendered ambiguous merely because it fails to define the term "money transmitting business" where it has already defined the terms "money transmitting" and "unlicensed money transmitting business." The word "business" has an ordinary and plain meaning, and "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that 'the legislative purpose is expressed by the ordinary meaning of the words used.'" *United States v. Locke*, 471 U.S. 84, 95 (1985) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)); *see also* Linda D. Jellum & David Charles Hricik, Modern Statutory Interpretation: Problems, Theories, and Lawyering Strategies 137 (2006) (stating that "[w]ords in a statute should generally be given their common, ordinary, and accepted meaning"). Thus, absent any reference to Section 5330, as was the case prior to an amendment enacted in 1994, *see* Reigle Community Development and Regulatory Improvement Act of 1994, Pub. L. No. 103-325, § 408(c), 108 Stat. 2160, 2252 (amended 2001) (the "Reigle Community Development Act"),[6] Section 1960 is clear on its face, and Defendants' operation (consisting of e-Gold and G&SR, together, as the Government alleges) unquestionably constitutes a "business" as that word is commonly understood.

But does Section 1960's reference to Section 5330 in Section 1960(b)(1)(B) limit its scope to businesses that handle cash? The answer is no – for two reasons: (1) Section 1960 does not

---

[6] For further information on the history of the Reigle Community Development Act, *see* Conference Report on H.R. 3474, 140 Cong. Rec. 6642, 6666-67 (1994).

borrow the definition of "money transmitting business" from Section 5330, and (2) Section 5330's definition of "money transmitting business" is not limited to cash transactions, but rather includes transmissions of funds by any means.[7]

     1.  *Section 1960*

     Section 1960 does not borrow the definition of "money transmitting business" from Section 5330. As the Government noted in its Response to Defendants' Motion to Dismiss, Section 1960 was modeled on 18 U.S.C. § 1955 (2008), "Prohibition on illegal gambling business," which makes it a federal crime to operate a gambling business in violation of state law. *See* S. Rep. No. 101-460, at 15 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6645, 6659. Although Congress could have proscribed all illegal gambling when it enacted 18 U.S.C. § 1955 ("Section 1955") as part of the Organized Crime Control Act of 1970 (the "Organized Crime Control Act"), Pub. L. No. 91-452, § 803(a), 84 Stat. 922, 937, it used the term "business" because it evidently sought to proscribe only large-scale illegal gambling operations. *See United States v. Thomas*, 508 F.2d 1200, 1204 (8th Cir. 1975) (internal citation omitted).[8] The House Judiciary Committee Report on this section of the

---

    [7] Because the Court holds that the definition of "money transmitting business" in Section 5330 does not control the interpretation of Section 1960, the scope of Section 5330's definition of "money transmitting business" is relevant only to whether the Government has properly alleged that Defendants e-Gold and G&SR (together and/or separately) are required to register with the Secretary of Treasury pursuant to 31 U.S.C. § 5330. If Defendants do constitute a money transmitting business under Section 1960, and if they are required to comply with the business registration requirements under Section 5330 (or the regulations promulgated thereunder), then their failure to do so could constitute a crime in violation of 18 U.S.C. § 1960(b)(1)(B).

    [8] The only reason that the court in *Thomas* even considered the meaning of the term "business" under 18 U.S.C. § 1955 was because the statute states that an "illegal gambling business" must involve five or more persons, and the parties disputed whether the individual bookmakers in that case were acting as independent operators or as part of one organized business network. *See Thomas*, 508 F.2d at 1203-06. The *Thomas* court therefore found it

Organized Crime Control Act states:

> The intent of section 1511 and section 1955 . . . is not to bring all illegal gambling activity within the control of the Federal Government, but to deal only with illegal gambling activities of major proportions. It is anticipated that cases in which their standards can be met will ordinarily involve business-type gambling operations of considerably greater magnitude than simply meet the minimum definitions. The provisions of this title do not apply to gambling that is sporadic or of insignificant monetary proportions. It is intended to reach only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern.

H.R. Rep. No. 91-1549, at 53 (1970), *reprinted in* 1970 U.S.C.A.A.N. 4007, 4029; *accord* S. Rep. No. 91-617, at 73 (1969). Because Section 1960 was modeled from Section 1955, it can be inferred that Congress employed the term "business" after "money transmitting" in subsections (a) and (b)(1) of Section 1960 to indicate that Section 1960 was designed to tackle large-scale operations as opposed to small-scale or individual money transmitters. The Government's Superceding Indictment alleges that e-Gold and G&SR, together, maintained a cadre of employees under the supervision of the three primary managers, Messrs. Douglas Jackson, Barry Downey and Reid Jackson. *Cf.* Superceding Indictment at ¶ 11 (alleging that "[e]mployees of the E-Gold operation received no training regarding financial transactions or avoiding criminal transactions"). The Superceding Indictment further alleges that the total value of the funds that the combined e-Gold operations transferred or caused to be transferred was approximately $145,535,374.26. *Id.* at 18. According to the facts alleged, Defendants e-Gold and G&SR, together, undoubtedly constitute an operation of "major proportions," and as a result, fit comfortably within Congress's intended meaning of the term "business." And if the Government can prove that e-Gold and G&SR engaged in money

_____

necessary to explain the origin and purpose of the five-person minimum.

transmitting, which the parties have heretofore assumed for the purposes of Defendants' Motion to Dismiss, then e-Gold and G&SR are in fact money transmitting businesses.

The Court recognizes that reliance on the legislative history of a separate, albeit historically related, statute may not by itself eliminate all ambiguity from the phrase "money transmitting business" in Section 1960 (assuming *arguendo* that any ambiguity existed at the outset). The structure of the statute as well as the relevant canons of statutory construction, however, guide the Court to the same conclusion.

Section 1960(b)(1) states, "[a]s used in this section-- the term 'unlicensed money transmitting business' means a money transmitting business which affects interstate or foreign commerce in any manner or degree *and*--" does one of three impermissible acts. 18 U.S.C. § 1960(b)(1) (emphasis added). Thus, an "unlicensed money transmitting business" is a "money transmitting business" that affects interstate or foreign commerce *and* that either (A) is operated without an appropriate state money transmitting license, *or* (B) fails to comply with the registration requirements under Section 5330 (or the regulations promulgated thereunder), *or* (C) "otherwise" transmits funds originating from or in aid of illegal activities. *See id.* In order to be guilty of a violation of Section 1960, therefore, an entity must first, as a prerequisite, be a business that engages in "money transmitting" as so defined in Section 1960(b)(2). *See id.* The employment of the conjunctive "and" makes clear that in addition to being a business engaged in money transmitting, a defendant must also either operate without a state license, fail to comply with the registration requirements of Section 5330, or otherwise transmit funds that the defendant knows were derived from or intended to support an unlawful activity. From the construction of the statute alone, therefore, the phrase "money transmitting business," as illuminated by the definition of "money

transmitting" contained in Section 1960(b)(2), applies to subsections (b)(1)(A), (b)(1)(B) and (B)(1)(C).  In contrast, the use of the conjunctive "or" makes it apparent that subsection (b)(1)(B), including the reference to Section 5330, does not apply laterally to subsections (b)(1)(A) or (b)(1)(C).  *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (reiterating that "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise").

    Furthermore, the phrase "[a]s used in this section" clarifies that the terms "unlicensed money transmitting business," "money transmitting" and "State," as defined in Section 1960(b), apply to the entirety of Section 1960, including subsection (a) and subsections (b)(1)(A), (b)(1)(B) and (b)(1)(C).  The Court begins with the "presum[ption] that the same term has the same meaning when it occurs here and there in a single statute."  *See Envtl. Def. v. Duke Energy Corp.*, 127 S. Ct. 1423, 1432 (2007).  Furthermore, "[t]he definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute."  1A Singer, Sutherland Statutory Construction, § 20:8, at 135 (6th ed. 2002) (citing *Fla. Dept. of Banking & Fin. v. Bd. of Governors of Fed. Reserve Sys.*, 800 F.2d 1534, 1536 (11th Cir. 1986) (other citations omitted)); *accord* Am. Jur. 2d § 149 (2008) ("The rule has also been stated as being that when a definition of a word or phrase is provided in a statute, that meaning must be ascribed to the word or phrase whenever it is repeated in the statute unless a contrary intent appears.").[9]

---

    [9] The Court recognizes that "[m]ost words have different shades of meaning, and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section."  *See Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932).  It also recognizes that while

        undoubtedly, there is a natural presumption that identical words
        used in different parts of the same act are intended to have the

If Congress had wanted to define the phrase "money transmitting business" to have the exact same meaning in Section 1960 as it has in Section 5330, it plainly could have done so considering that it amended Section 1960 to include a reference to Section 5330 at the same time that it enacted Section 5330. *See* Pub. L. No. 103-325, § 408(c), 108 Stat. 2160, 2249-52. In fact, Congress did just that in Section 5330 where it employs the term "transaction account" "as [that term is] defined in section 19(b)(1)(C) of the Federal Reserve Act." *See* 18 U.S.C. § 5330(b)(3). Similarly, in Section 5313, the term "depository institution" "has the meaning given to such term in section 19(b)(1)(A) of the Federal Reserve Act . . . and . . . includes" other entities that Congress chose to include solely for the purposes of Section 5313. 18 U.S.C. § 5313(g). In its 1994 amendment to Section 1960, Pub. L. No. 103-325, § 408(c), 108 Stat. 2160, 2249-52, Congress could have simply deleted the definition of the term "money transmitting" from Section 1960(b)(2) and added the term "money transmitting business," ascribing to it the definition provided in Section 5330(d)(1). But Congress clearly chose not to do so. *See Rusello v. United States*, 464 U.S. 16, 23 (1983) (citing *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (internal quotations omitted) ("When Congress includes particular language in one section of a statute but omits it in another section of same Act, it is generally presumed that Congress acted intentionally and purposely in its disparate inclusion or exclusion.")). Given that Congress certainly could have, but did not, include a definition of "money transmitting business" in Section 1960 or clearly state that the

> same meaning[,] . . . the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.

*See id.* The Court simply finds no such variation or contrary intent in the text of Section 1960, especially where, as here, one term is specifically defined in the statute, and the other, not.

definition in Section 5330 applies to Section 1960, there is a strong presumption that Congress did not intend for the definition in Section 5330 to apply to Section 1960. *See* 2B Singer, *supra*, § 51:02, at 122-123 (5th ed. 1992) (stating that "where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed"). It is contrary to this presumption to conclude that the term "money transmitting" has one meaning in Section 1960(a) and Section 1960(b)(1) due to Section 1960(b)(1)(B)'s reference to Section 5330, but another in Section 1960(b)(2) where "money transmitting" is defined. In the absence of any clear evidence that Section 5330's definition of "money transmitting business" should supercede Section 1960's definition of "money transmitting," the fact that the term "money transmitting business" is used, and according to Defendants, used differently, in each section, does not overcome this presumption. The term "money transmitting" has the same meaning throughout the entirety of Section 1960, as Section 1960(b) plainly states, whether followed by the word "business" or not. That meaning is the one ascribed to it in Section 1960(b)(2).[10]

Were that not enough, Section 5330(d)(1) states that "[f]or the purposes of this section, . . . [t]he term 'money transmitting business' means any business other than the United States Postal Service. . . ." 18 U.S.C. § 5330(d)(1). Contrary to Defendants' assertion that "Section

---

[10] Most of this discussion regarding the application of Section 5330's definition of "money transmitting business" to Section 1960 is of little consequence because, as we will see, there is virtually no substantive difference, nor did Congress intend there to be a substantive difference, between the terms "money transmitting" in Section 1960 and "money transmitting business" in Section 5330. The actual definition of a "money transmitting business" under Section 5330 tracks the language of Section 1960 so closely (with certain minor exceptions that are irrelevant for our purposes, *e.g.*, a "depository institution") as to be virtually indistinguishable.

5330 nowhere purports to state that" the definition of "money transmitting business" in Section 5330 "cannot also apply elsewhere," *see* Defs.' Reply at 6 n.2, it is a widely accepted principle of statutory interpretation that "if a word is defined to mean something particular 'in this section,' then it will be given that definition only in that section and will be given either its ordinary meaning in the rest of the statute, or if it is defined in [another] definition section, the meaning given there." *See* Jellum, *supra*, at 137*; see also Gi Corp. v. Nu-Tek Elecs. & Mfg., Inc.*, 1996 U.S. Dist. LEXIS 11175, at *14 (E.D. Pa. July 31, 1996). The definition of "money transmitting business," as defined in Section 5330(d)(1), therefore, *only* applies to Section 5330, and not to Section 1960.

Finally, were the Court to adopt Defendants' construction of the statute and find that the definition of "money transmitting business" provided in Section 5330 applies to Section 1960, the Court would render the definition of "money transmitting" provided in Section 1960(b)(2) wholly superfluous. It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal citations and quotations omitted). Consequently, a statute should not be interpreted in a way that renders a word or phrase superfluous when such an interpretation can be avoided. The term "money transmitting" appears six times in Section 1960. *See* 18 U.S.C. § 1960. In all but one of those instances, it is followed by the word "business." *See id.* To conclude that the definition of "money transmitting" supplied in Section 1960(b)(2) only applies to that one instance where "money transmitting" is not followed by the word "business" would render subsection 1960(b)(2) and the definition of "money transmitting" contained therein entirely superfluous. The Court cannot interpret Section 1960 so as to make that definition mere surplusage, despite Defendants' ardent

-16-

suggestion that "not every statute is drafted as economically as it could be," Defs.' Reply at 4.[11]

Thus, the plain language of Section 1960, the legislative history, and the relevant canons of statutory

interpretation require the Court to reject Defendants' contention that the definition of "money

transmitting business" provided in Section 5330 applies to Section 1960. The definition of "money

transmitting" provided in Section 1960(b)(2) applies to each and every instance where such term

appears in Section 1960. Consequently, Defendants' alleged conduct, including, *inter alia*,

transferring funds on behalf of the public by wire, qualifies them as a "money transmitting business"

under Section 1960.

>    2. *Section 5330*

>    While the Court's conclusion that the definition of "money transmitting business" in

Section 5330 is inapplicable to Section 1960 effectively disposes of the majority of Defendants'

primary grounds for dismissal, it remains to be determined whether the Government properly alleges

a criminal offense pursuant to Section 1960(b)(1)(B), *i.e.*, does Defendants' conduct, as alleged,

require them to comply with the registration requirements under Section 5330? Defendants' contend

that a "money transmitting business," as so defined in Section 5330(d)(1), refers only to entities that

engage in cash transactions. The Defendants' argument misinterprets the law. The term "money

---

[11] The Court notes Defendants' assertion that the principle of *in pari materia* ("part of the same material"), which holds that "statutes addressing the same subject matter generally should be read 'as if they were one law,'" *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315-16 (2006) (internal citations omitted), controls the interpretation of Section 1960. While it is true that under the principle of *in pari materia*, words of a single section of a statute should generally be construed in light of the entire statute, it is a more controversial proposition that the same word in "related" statutes be given the same meaning. *See* Jellum, *supra*, at 173. Because application of this controversial branch of *in pari materia* would conflict with the cardinal principle that courts should interpret a statute so as to render no word or clause superfluous, the Court holds that the canon of *in pari materia* is inapplicable in this instance.

transmitting business" as used in Section 5330 includes all financial institutions that fall outside of

the conventional financial institutions system (and that are not a "depository institution"), not just

those that engage in cash transactions. As stated above, for purposes of Section 5330:

> The term "money transmitting business" means any business other than the United States Postal Service which--
>
>> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;
>>
>> (B) is required to file reports under section 5313; and
>>
>> (C) is not a depository institution (as defined in section 5313(g)).

18 U.S.C. § 5330(d)(1). A "money transmitting business" for purposes of Section 5330 is not

limited to businesses that engage in cash transactions because (1) the plain meaning of Section 5330

precludes such a conclusion and (2) the legislative history of Section 5330 belies the narrow

interpretation that Defendants would suggest.

   Once again, our question is most easily resolved by the plain language of the statute

which clearly provides that a "money transmitting business" as defined in Section 5330 includes all

financial institutions that fall outside of the conventional financial institutions system (excluding

depository institutions). The "words of the statute do indeed enjoy pride of place: our 'inquiry into

the Congress's intent proceeds, as it must, from the fundamental canon that statutory interpretation

begins with the language of the statute itself.'" *Goldring v. District of Columbia*, 416 F.3d 70, 77

(D.C. Cir. 2005) (quoting *Am. Fed'n of Labor & Congress of Indus. Orgs. v. Fed. Elec. Comm'n*, 333 F.3d 168, 180 (D.C. Cir. 2003) (further internal citations omitted)).  The definition of "money transmitting business" in Section 5330 states in relevant part that a "money transmitting business" is any business that provides, *inter alia*, "money transmitting or remittance services."  31 U.S.C. § 5330(d)(1).  The term "'money transmitting service' includes accepting currency or *funds* denominated in the currency of any country and transmitting the currency or funds, *or the value of the currency or funds*, by any means through a financial agency or institution."  31 U.S.C. § 5330(d)(2) (emphasis added).  A "transmission" of "funds," in its ordinary sense, is not limited to cash or currency transfers, but may include transfers by check, wire or some other means.  The statute itself even states that a transmission of "funds" may be made "*by any means*."  *Id.* (emphasis added).  In addition, a "money transmitting service" includes a transmission of "the value of the currency or funds."  *Id*.  Clearly, a "money transmitting service" includes not only a transmission of actual currency, but also a transmission of the *value* of that currency through some other medium of exchange.  Nowhere does this definition purport to suggest that a "money transmitting service" includes only transmissions of actual cash or currency.  According to the plain language of the statute, therefore, Defendants e-Gold and GS&R, who according to the Indictment allegedly engage in the transmission of funds, must be registered, individually or jointly, with the Department of Treasury ("Treasury") under Section 5330.

        Defendants, however, contend that in order to be a money transmitting business under Section 5330, the business must also be required to file reports under Section 5313, and only domestic financial institutions that are involved in cash or currency transactions must file such reports.  See Defs.' Mot. to Dismiss at 7.  Because Defendants do not handle currency, they argue,

the registration requirements of Section 5330 cannot apply to their businesses. This argument misses the mark: Sections 5330 and 5313 apply to them right now, if, as alleged, e-Gold and GS&R are engaged in money transmission. Section 5313 imposes no present, affirmative duty on either business, according to their descriptions, but it applies to them at all times, and in the eventuality that they ever are involved in a transaction in excess of a prescribed amount of currency, they will be required to file a currency transaction report ("CTR") under Section 5313.[12] A money transmitting business is no less a transmitter of money just because it does not deal in currency. Rather, Section 5313 comes into force and will require a report if, when, and as the transmitter does engage in currency transactions. In other words, under Section 5313, all money transmitting businesses must file a CTR with Treasury whenever they engage in certain kinds of cash transactions. This is clear from the language of Section 5313 itself. That statutory section encompasses "financial institutions" and provides that the obligation to file a CTR is triggered "*when* a financial institution is involved in a transaction" involving coins or currency. 31 U.S.C. § 5313(a) (emphasis added). Notably, the statute says "when" and not "only if," as Defendants would read it. *Compare* 18 U.S.C. § 5313(a) *with* Defs.' Mot. to Dismiss at 7.

Furthermore, Section 5313 states that a domestic financial institution which partakes in a transaction involving a certain amount of currency must "file a report on the transaction at the time and in the way the Secretary prescribes." 31 U.S.C. § 5313(a). The Secretary of Treasury ("Secretary") issued a regulation setting forth "the rules for the reporting by financial institutions of transactions in currency." 31 C.F.R. §103.22(a). That regulation states that "[e]ach financial

---

[12]  Among other circumstances, a CTR must be filed for each deposit, withdrawal, exchange of currency, or transfer in excess of $10,000 in a single day. 31 C.F.R. § 103.22.

institution other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment of transfer, by, through, or to such financial institution which involves a transaction of more than $10,000. . . ." *Id.* §103.22(b).  Once again, the regulation, like the statute, applies to "each financial institution," not just financial institutions that engage in currency transactions. *See id.* The regulation is triggered, however, only when a financial institution engages in a currency transaction of more than $10,000. *See id.* A "financial institution" is defined in 31 U.S.C. § 5312(a)(2) and includes at least two definitions that may apply here: "(N) a dealer in precious metals, stones, or jewels,"[13] and "(R) a licensed sender of money *or any other person who engages as a business in the transmission of funds.*" *Id.* (emphasis added).  Obviously, such financial institutions do not transact business only in cash; but when they do, they must file a CTR.  So, too, with e-Gold and GS&R.

        The Government also explains that Section 5330, part of the Currency and Foreign Transactions Reporting Act, 31 U.S.C. §§ 5311-5330 and 12 U.S.C. §§ 1818(s), 1829(b) and 1951-1959 (also known as the Bank Secrecy Act), did not have any effect until implementing regulations were issued by Treasury.  *See Cal. Bankers Ass'n v. Shultz*, 417 U.S. 21, 26 (1974) (the "statute's civil and criminal penalties attach[ed] only upon violation of regulations promulgated by the Secretary [of the Treasury]").[14]  It is noteworthy that Section 1960(b)(1)(B) refers to businesses that

---

        [13]  The value of accounts in e-gold is allegedly backed by gold bullion and other precious metals.

        [14]  Section 1960 was not widely used for prosecution until significant amendments as a result of the Patriot Act at the end of 2001.  Title III of the USA PATRIOT Act amended Section 1960 to modify the scienter requirement under the statute's licensing prong.  Whereas before, the Government had to prove that a defendant operated a business intentionally without a license, under the Patriot Act provision, the intent element was omitted, negating any "mistake of law" defense.  H.R. Rep. No. 107-250, at 54 (2001).  Additionally, Section 1960 was amended to add

fail to comply with the registration requirements of the statute, 31 U.S.C. § 5330, *or* the regulations implementing the statute. 18 U.S.C. § 1960(b)(1)(B). Section 5330 governs the registration of money transmitting businesses with the Financial Crimes Enforcement Network ("FinCEN") within the Department of the Treasury and does so through the regulations issued by the Secretary. 31 U.S.C. § 5330(a)(2) (authorizing the Secretary to "prescribe, by regulation, the form and manner for registering a money transmitting business").

The regulations clarify the scope of Section 5330 and overwhelm Defendants' argument that only those who deal in cash currency are money transmitters. The regulations provide that "each money services business . . . must register with the Department of Treasury," 31 C.F.R. § 103.42(a), and further define "money services business" to include:

> (A) Any person, whether or not licensed or required to be licensed, who engages as a business in accepting currency, or *funds denominated in currency*, and transmits the currency or funds, *or the value of the currency or funds*, by any means through a financial agency or institution, a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System, or both, or an electronic funds transfer network; or
>
> (B) *Any other person engaged as a business in the transfer of funds*.

31 C.F.R. § 103.11(uu)(5) (emphasis added).

Were there any doubt at this point as to the inclusiveness of the term "money transmitting business" under Section 5330, the legislative history of Sections 5330 and 5313 provide firm support for the meaning of "money transmitting business" that is apparent on the face of the statute. The Conference Report on H.R. 3474, 103d Cong. § 408 (1993), the bill that introduced,

_____

subsection (C), which makes it illegal to transmit funds derived or in aid of unlawful activity. *Id.*

*inter alia*, Section 5330, and that was eventually enacted, explained:

> It is the purpose of this section to establish a registration requirement for *businesses* engaged in providing check cashing, currency exchange, or money transmitting or remittance services, or issuing or redeeming money orders, travelers' checks, and other similar instruments to assist the Secretary of the Treasury, the Attorney General, and other supervisory and law enforcement agencies to effectively enforce the criminal, tax, and regulatory laws and prevent such money transmitting businesses from engaging in illegal activities.

140 Cong. Rec. 6642, 6666 (1994) (emphasis added). The conference report clearly states that the purpose of Section 5330 is to establish a registration requirement for *businesses* that engage in, *inter alia*, money transmitting services. *Id.* Notably, the conference report referred to businesses that engage in money transmitting services, not businesses that engage in coin or currency transmissions. The former term is clearly broader than the latter. *Id.* at 6667. Furthermore, the Committee on Banking and Currency report on H.R. 15073, 91st Cong. (1969), which contained 31 U.S.C. §§ 1081-1083, the predecessors to Section 5313, stated that "petty criminals, members of the underworld, those engaging in 'white collar' crime and income tax evaders . . . use . . . financial institutions in carrying on their affairs," and "H.R. 15073 deals with the problem by requiring the maintenance of records by financial institutions in a manner designed to facilitate criminal, tax and regulatory investigations and proceedings." H.R. Rep. No. 91-975, at 10 (1970). Section 5313 requires "financial institutions," not just currency transmitters, to maintain records that are designed to facilitate criminal investigations. These records take the form of CTRs because the Secretary evidently believed that a cash transaction through a financial institution of $10,000 or more in a single day is likely to raise a red flag to law enforcement officials.

        The legislative histories of Sections 5330 and 5313 expose an intent to regulate

"financial institutions," not just "currency transmitters" or "financial institutions that engage in currency transactions." Consequently, as was the case with Section 1960, a review of the legislative histories of Sections 5330 and 5313, respectively, serves only to sustain the interpretations that are derived from the plain text of the statutes themselves.[15]

Defendants' argument that one must engage in cash transactions to be a "money transmitting business" ignores the words of the statute. Section 1960(b) makes it illegal to operate an unlicensed money transmitting business. There are three criteria which, in the alternative, would result in an unlicensed money transmitting business: failure to obtain a state license, where required; failure to register with the federal government as required by Section 5330 or its regulations; or otherwise being involved in the transmission of funds known to have been derived from a criminal offense or in aid of it. The contention that Defendants are not "required to file reports under Section 5313," 31 U.S.C. § 5330(d)(1)(B), and therefore not a "money transmitting business" under Section 1960, is plain wrong. Assuming the facts alleged in the Indictment to be true, Defendants transfer funds on behalf of the public, and are therefore money transmitters. Because Defendants are money transmitters, when they engage in cash transactions, they are required to file reports under Section 5313; when they do not engage in cash transactions, they are not. To the extent that Defendants avoid cash transactions, they avoid the necessity to submit CTRs, but not the legal obligation to do

---

[15] The Court recognizes that except in rare circumstances, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete." *Rubin v. United States*, 449 U.S. 424, 430 (1981). And while "this is [not] one of those rare cases where the application of the statute as written will produce a result 'demonstrably at odds with the intentions of its drafters,' *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) (quoting *Griffin* v. *Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)), the Court nevertheless deemed it prudent to consult the legislative history of the statutes in order to resolve the slightest uncertainty as to their meaning and purpose.

-24-

so whenever they engage in cash transactions in the future.

Defendants' motion to dismiss Counts Two and Three because they fail to state a claim will be denied.

B. *Section 1960 does not violate Defendants' Due Process rights*

Defendants contend that even if Section 1960 is so construed as to include their operations, Due Process concerns require the Court to dismiss Counts Two and Three because Section 1960 does not give fair warning of the scope of conduct that is proscribed. A criminal statute that fails to provide fair warning of the conduct it proscribes violates the Due Process Clause of the United States Constitution. *See United States v. Lanier*, 520 U.S. 259, 266 (1997). The principle underlying the fair warning requirement is that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954). As the Supreme Court stated in *Lanier*, the "fair warning requirement" manifests itself in three ways:

> First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." . . . Second, as a sort of "junior version of the vagueness doctrine," . . . the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. . . . Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, . . . due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

520 U.S. at 266 (internal citations omitted).

1. *Void for Vagueness*

Defendants first argue that Section 1960, under which the Government seeks to prosecute them, is void for vagueness and dismissal is required by the Due Process Clause of the Constitution. A criminal law is invalid under the vagueness doctrine when it fails to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). "The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

Section 1960 sets forth a general intent crime. *See United States v. Keleta*, 441 F. Supp. 2d 1, 1-3 (D.D.C. 2006); *see also United States v. Talebnejad*, 460 F.3d 563, 568 (4th Cir. 2006) (holding that a defendant need not have knowledge of licensing requirements, but need only have knowledge that he or she is operating a money transmitting business), *cert. denied*, 127 S. Ct. 1313 (2007); *United States v. Barre*, 324 F. Supp. 2d 1173, 1177 (D. Colo. 2004). A scienter, or specific intent, element may "mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed," *Village of Hoffman Estates*, 455 U.S. at 499.[16]

_____

[16] While the Court recognizes Defendants' argument that the lack of a specific intent requirement with respect to the registration requirements under 5330 renders Section 1960 unconstitutionally vague, the Court cannot go so far. Rather, it agrees with the *Talebnejad* decision that Section 1960 is not unconstitutionally vague merely because it is a general intent crime and lacks a scienter requirement with respect to whether a defendant must know that it is required to be licensed under state law. The Court applies the reasoning from *Talebnejad* to the registration requirements of Section 5330. *See* 460 F.3d at 568. Given the clarity of the words of Section 1960, the lack of a scienter requirement does not, in this instance, render the statute impermissibly vague.

Defendants insist that Section 5330(d)(1) defines a "money transmitting business" as one that is required to file reports under Section 5313, *i.e.*, one that engages in cash transactions. They then note that Section 1960 includes a definition for "money transmitting" which "includes transferring *funds*," not limited to cash.  From this, they argue that the statute contains an impermissibly vague definition of what is criminal: "[i]f the definition of 'money transmitting' in Section 1960(b)(2) is intended to trump the definition of 'money transmitting business' in 31 U.S.C. § 5330(d)(1) and prohibit operating a business that does not deal in cash and is not required to file reports under Section 5313, the statute does not by its terms manifest this intent."  Defs.' Mot. to Dismiss at 10-11.

Defendants' argument fails because, at the outset, the definition of "money transmitting business" set forth in Section 5330(d)(1) does not apply to any appearance of the phrase "money transmitting business" in Section 1960, notwithstanding Section 1960(b)(1)(B)'s reference to Section 5330.  Therefore, the definition of "money transmitting" in Section 1960 does not "trump" any other definition; it simply applies everywhere that the term "money transmitting" is used in Section 1960.

Furthermore, Defendant's assertion that the meaning of the phrase "money transmitting business" is impermissibly vague is not really an alternative argument since it relies, as did its predecessor, on accepting the argument that Section 5330(d)(1) limits its definition of a "money transmitting business" to those that engage in cash transactions.  Section 5330(d)(1) is not so limited.  It defines a "money transmitting business" as one that engages in "money transmitting" and is "required to file reports under Section 5313."  This definition applies to all businesses that engage in "money transmitting."  All are required to file reports under Section 5313, *when they*

*engage in certain cash transactions*.  To the extent that e-Gold and GS&R are proved at trial to be "money transmitting businesses," they, too, have the legal obligation to file reports under Section 5313 when they engage in certain cash transactions.

Assuming *arguendo*, as do the briefs, that Defendants engage in "money transmitting," Defendants argue that the entire panoply of registration requirements under Section 5330 does not apply to them because they choose not to engage in cash transactions.  Their choice is insufficient to erase requirements of the law.  All those who engage in money transmitting as a business are required by Section 5313 to file CTRs when they engage in cash transactions of $10,000 or more.  Defendants are similarly required.[17]  There is no ambiguity. *See Talebnejad*, 460 F.2d 563; *Barre*, 324 F. Supp. 2d at 1176; *United States v. Velastegui*, 199 F.3d 590, 594-96 (1999).  Similarly, money transmitting businesses that do not have a state license, where required; or do not comply with the registration requirements of Section 5330; and/or transmit monies that are known to originate from, or aid in the commission of, illegal activities, violate Section 1960.  There is no ambiguity.[18]

---

[17]  While the Government does not concede that Defendants do not engage in cash transactions, Gov't Mem. at 13, the Indictment does not charge that activity.  The Government may, however, seek to prove at trial that Defendants also engaged in cash transactions.

[18]  The Court rejects the Government's argument that, at best, the business registration requirements of Section 5330 apply only to those engaged in money transmitting without federal registration under Section 1960(b)(1)(B).  *See* Gov't Mem. at 19-20.  The Government misperceives the Defendants' argument: it is not that "unlicensed money transmitting business" is undefined but that "money transmitting business," licensed or not, is defined in Section 5330. Section 1960(b)(1) starts with "the term 'unlicensed money transmitting business' means a *money transmitting business* which . . . ." *Id.* (emphasis added).  Defendants argue that they are not a "money transmitting business" because they do not perform any transactions in cash; *ergo*, they cannot be an "unlicensed money transmitting business" under Section 1960.

2.    *Rule of Lenity*

Alternatively, Defendants argue that even if Section 1960 is not unconstitutionally vague, "since it is ambiguous at best whether Section 1960 reaches the conduct alleged in Counts Two and Three of the Indictment, the rule of lenity dictates that the ambiguity must be resolved in the defendants' favor." Defs.' Mot. to Dismiss at 11. When "the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." *Crandon v. United States*, 494 U.S. 152, 158 (1990). As Defendants recall, the Supreme Court has stated:

> We have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, or what the law intends to do if a certain line is passed.

*Arthur Anderson LLP v. United States*, 544 U.S. 696, 703 (2005) (quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995) (internal citations and quotations omitted)).

The rule of lenity, therefore, "works to protect a citizen from punishment under a statute that gives at best dubious notice that it has criminalized his conduct." *Valdes v. United States*, 475 F.3d 1319, 1323 (D.C. Cir. 2007). Under this principle, "where text, structure, and history fail to establish that the Government's position is unambiguously correct," courts must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." *Granderson*, 511 U.S. at 54. Thus, while the rule of lenity does require that ambiguity in criminal statutes be resolved in the defendant's favor, the Supreme Court has repeatedly admonished that "we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute."

-29-

*Moskal v. United States*, 498 U.S. 103, 108 (1990) (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (emphasis in original)).  Stated more boldly, "the rule of lenity applies only if, 'after seizing everything from which aid can be derived,' *Smith v. United States*, 508 U.S. 223, 239 . . . (1993) (internal quotation marks and alterations omitted), . . . we can make 'no more than a guess as to what Congress intended,'" *Ladner v. United States*, 358 U.S. 169, 178 (1958).  *Reno v. Koray*, 515 U.S. 50, 65 (1995).  This is not that case.

        The words of the statute are clear; the applicable rules of statutory interpretation are clear; and the legislative history is clear.  A business is a money transmitting business if it transfers funds on behalf of the public by any and all means.  18 U.S.C. § 1960.  A business that engages in money transmitting is an "unlicensed money transmitting business" in violation of 18 U.S.C. § 1960 if it (A) is operated without an appropriate state money transmitting license, *or* (B) fails to register its business pursuant to Section 5330 *or* (C) "otherwise" transmits funds originating from or in aid of illegal activities.  *See id*.  That it may be "*possible* to read the statute" differently is not reason enough to bestow upon the Court *carte blanche* to disregard the plain meaning of the statute and the obvious intent of Congress in favor of an interpretation that Congress never intended and that the words could scarcely suggest.  *See Moskal*, 498 U.S. at 107.

        3.  *Novel Construction*

        Finally, Defendants argue that because no court has ever construed Section 1960 to deem a business that does not transact in cash to be a money transmitting business, such a construction would be novel, and therefore the statute did not give Defendants fair warning of what it proscribed.  The Supreme Court has likened the novel construction principle to an *ex post facto* law which has been defined as one "'that makes an action done before the passing of the law, and

-30-

which was innocent when done, criminal; and punishes such action[.] . . .'" *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798)).   An "unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I., § 10, of the Constitution forbids." *Bouie*, 378 U.S. at 353. This principle, however, applies only where the judicial "construction unexpectedly broadens a statute which on its face had been definite and precise." *See id*.   Again, this is not that case.

The Court has looked first to the text of the statute, as it must, and only after determining the plain meaning of those words, has it sought reference to the canons of statutory interpretation and to legislative history in order to ensure that they all exist in harmony.   And in harmony, they are.   The Court imposes no novel construction upon Defendants.   Rather, it is Defendants' own novel construction of Section 1960, crafted by the keen minds and skilled pens of their seasoned advocates, that created the purported ambiguity giving rise to their motion to dismiss.

Defendants' motion to dismiss Counts Two and Three because the underlying criminal statute is void for vagueness, ambiguous, or because the Government's interpretation of the statute poses a novel construction of a criminal offense, each in violation of the Due Process Clause of the Constitution, will be denied.

# IV

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss will be denied.  A memorializing Order accompanies this Memorandum Opinion.


Date: May 8, 2008                          _____/s/_____
                                           ROSEMARY M. COLLYER
                                           United States District Judge