## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

**v.**

**E-GOLD, LTD., ET AL.,**

        **Defendants.**

**Crim. No. 07-109 (RMC)**

## MOTION TO DISMISS COUNT FOUR OF THE SUPERSEDING INDICTMENT

Pursuant to Fed. R. Crim. P. 12(b)(3)(B), and for the reasons set forth in their accompanying memorandum of law, defendants e-gold, Ltd., Gold & Silver Reserve, Inc., Douglas L. Jackson, Barry K. Downey, and Reid A. Jackson, through their attorneys, respectfully move to dismiss Count Four of the Superseding Indictment for failure to state an offense under D.C. Code § 26-1002.

The defendants respectfully request oral argument on this motion.

Dated: May 29, 2008        Respectfully submitted,

        By: _____/s/_____
        Barry J. Pollack (D.C. Bar No. 434513)
        Dawn E. Murphy-Johnson (D.C. Bar No. 490232)
        KELLEY DRYE COLLIER SHANNON
        3050 K Street, N.W., Suite 400
        Washington, D.C. 20007
        bpollack@kelleydrye.com
        202.342.8400
        202.342.8451 fax

        *Attorneys for Defendant Barry K. Downey*

Bernard Grimm (D.C. Bar No. 378171)
Cozen O'Connor, P.C.
1627 I St, N.W., Suite 1100
Washington, D.C.  20006
202.912.4800
202.912.4830 fax

*Attorneys for Defendant e-gold, Ltd.*


Aron U. Raskas
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD 21202-3201
aur@kg-law.com
(410) 752-6030
(410) 361-8211 fax

*Attorneys for Defendant Gold & Silver Reserve, Inc.*


Joshua G. Berman
Machalagh Carr
Sonnenschein Nath & Rosenthal LLP
1301 K Street, N.W., Suite 600, East Tower
Washington, DC  20005-3364
jberman@sonnenschein.com
202/408-5208
202/408-6399 fax

*Attorneys for Defendant Douglas L. Jackson*


A.J. Kramer
Michelle Peterson
Office of the Federal Public Defender
625 Indiana Avenue  N.W.
Suite 550
Washington, D.C. 20004
Shelli_Peterson@fd.org
(202) 208-7528

*Attorneys for Reid A. Jackson*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| | **Crim. No. 07-109 (RMC)** |
| **v.** | |
| **E-GOLD, LTD., ET AL.,** | |
| **Defendants.** | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
COUNT FOUR OF THE SUPERSEDING INDICTMENT**

Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, defendants e-gold, Ltd., Gold & Silver Reserve, Inc., Douglas L. Jackson, Barry K. Downey, and Reid A. Jackson, through their attorneys, respectfully submit this memorandum of law in support of their motion to dismiss Count Four (Money Transmission Without a License in violation of D.C. Code § 26-1002) of the Superseding Indictment ("the Indictment"). The District of Columbia's money transmission laws regulate only persons or businesses that have a physical presence in, or other substantial nexus to, the District of Columbia. The Indictment does not allege, nor could it, that any of the defendants conducted a business with a physical presence in the District of Columbia or that they otherwise had a substantial nexus to the District. Accordingly, Count Four of the Indictment must be dismissed for failure to state an offense.

**BACKGROUND**

The defendants are charged in a four-count indictment. Count Four alleges that from approximately May 2002 until March 2003, the defendants engaged in the business of money transmission in the District of Columbia without obtaining the proper license, in violation of

D.C. Code § 26-1002. Superseding Indictment at ¶¶ 13, 79-80. The Indictment recognizes that e-gold, Ltd. was incorporated outside the United States, in the British West Indies nation of St. Kitts and Nevis, and operated exclusively via the Internet out of Florida. *Id.* at ¶¶ 2, 14. Likewise, the Indictment alleges that Gold & Silver Reserve, Inc., which has its offices in Florida, operated over the Internet. *Id.* at ¶15.

The Indictment does not allege that e-gold, Ltd. or any of the other defendants at any time had a physical presence in the District of Columbia. Nor does it allege that the defendants specifically marketed to District of Columbia residents or in any other way targeted their efforts to the District. Rather, the only purported connection to the District in the Indictment is an allegation that, out of the hundreds of thousands of transactions in which the defendants were alleged to have engaged, there were seven transfers of funds to and from banks located in the District of Columbia. *See id.* at ¶ 76 (identifying seven fund transfers totaling $6,265); *compare with id.* at ¶ 48 (alleging that e-gold, Ltd. conducted about $146 million worth of transfers relating to unlawful activities). This Indictment fails to allege a sufficient nexus by the defendants' business activities to bring them within the ambit of D.C. Code § 26-1002. Accordingly, Count Four must be dismissed.

## ARGUMENT

Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). The crux of Count Four is that the defendants operated a money transmitting business without obtaining a license to do so from the Office of Banking and Financial Institutions of the District of Columbia pursuant to D.C. Code § 26-1002. Superseding Indictment at ¶ 80. However, Section 26-1002 is

inapplicable to the defendants' business activities as it is intended to be a licensure provision only for individuals and businesses that have a significant physical presence in the District of Columbia or other substantial nexus to the District.

### A.   District of Columbia Law Does Not Require Internet and Nonresident Money Transmitters to Obtain a License.

Section 26-1002(a) states: "no person shall engage in the business of money transmission without obtaining a license issued by the [Commissioner of the Department of Insurance, Securities, and Banking]."  D.C. Code § 26-1002(a).  On its face, the statutory language does not indicate an intent that Section 26-1002 extends to businesses outside of the District of Columbia.  Had the District of Columbia City Council wished to regulate out of state Internet entities, it could easily have done so.  Indeed, certain states' money transmitter licensing statutes expressly state that the statute applies to nonresident Internet-based money transmitting businesses.  *See*, *e.g.*, N.C. Gen. Stat. § 53-208.3(c) ("a person is considered to be engaged in the business of money transmission in this State if that person makes available, from . . . an Internet website North Carolina citizens may access in order to enter into those transactions by electronic means."); Wyo. Stat. § 40-22-103(b) (same).  Section 26-1002 does not follow suit, suggesting that an Internet-based money transmitting business without a physical presence in the District, such as e-gold, Ltd., does not need to be licensed in the District of Columbia.

Nor have the defendants been able to locate any legislative history that would indicate the intended application of Section 26-1002 to businesses located outside of the District of Columbia.  As set forth below, a review of the case law interpreting similar licensing requirements demonstrates that Section 26-1002 should not be read to apply to out-of-state Internet businesses with no physical presence in, and almost no contacts with, the District of Columbia.

-3-

When determining the scope of a District of Columbia licensing law, the D.C. Court of Appeals has held that the statute does not apply to businesses or persons who are located outside of the District of Columbia and who lack a significant nexus to the District. *See Galison v. District of Columbia*, 402 A.2d 1263 (D.C. 1979). In *Galison*, the Court of Appeals was presented with the issue of whether the District's Baby Broker Act, which required individuals who placed children in family homes or up for adoption to be licensed by the District, applied to nonresidents whose contacts with the District were minimal.[1] The court recognized that, on its face, the Act could be read to require that all individuals hold child-placing licenses, regardless of where they were located or their relationship to the District. *Galison*, 402 A.2d at 1266. However, the court rejected that interpretation of the statute and held that "***a minimal or coincidental geographic contact alone is insufficient and that a substantial additional nexus is required***" in order for the Act's licensing requirement to be triggered. *Id.* at 1267 (emphasis added). In other words, despite the seemingly boundless language employed by the Act's licensure provision, the D.C. Court of Appeals made clear that the statute applied only to individuals who had a "substantial nexus" to the District.

*Galison* is instructive in this case. Like the Baby Broker Act's licensure provision in *Galison*, Section 26-1002 here does not include any express language limiting its application only to individuals with a substantial nexus, contact, or presence in the District. Applying *Galison*, however, it is clear that the defendants, who had no physical presence in the District of Columbia and had not targeted their business efforts to the District, are not required to be licensed under Section 26-1002. *See Galison*, 402 A.2d at 1271-72 (holding that Baby Broker

---

[1]     The Baby Broker Act stated: "No person other than the parent, guardian, or relative within the third degree, and no firm, corporation, association, or agency, other than a licensed child-placing agency, may place or arrange or assist in placing or arranging for the placement of a child under sixteen years of age in a family home or for adoption . . .." *Galison*, 402 A.2d at 1266 (quoting D.C. Code § 32-785).

DC01/BLYND/336970.3

Act was inapplicable to defendant where his three contacts with mothers giving birth in the District were fortuitous).

This conclusion is further bolstered by authority from New York involving a statute analogous to Section 26-1002. New York's money transmission licensing statute is similar to the District's, stating broadly that "[n]o person shall engage in the business of . . . receiving money for transmission or transmitting the same, without a license therefore obtained from the superintendent." N.Y. Banking Law § 641(1). In a 2000 letter opinion, however, counsel for the New York Banking Department – the state agency charged with regulating money transmitters – clarified that PayPal, a California-based corporation with no physical presence in New York, which offered money transmitting services exclusively through the Internet to residents of the United States, was *not* required to obtain a license under that statute. 2000 N.Y. Bank. LEXIS 1, at *3 (July 18, 2000) ("the Banking Department will interpose no objection at this time to your client offering PayPal services to New York customers without being licensed under [the money transmitting statutes].").[2]

E-gold, Ltd. was incorporated in the British West Indies and has no physical presence in the District. Gold & Silver Reserve, Inc., the operator of e-gold, Ltd., which has its offices in Florida, likewise is not alleged to have a physical presence in the District of Columbia. In

---

[2]     In reaching its conclusion, the Banking Department noted:

The definition of "money transmission" in Article XIII-B of the New York Banking Law is very broad. The intent of the New York legislature was to, among other things, minimize the risk of loss to New York customers who utilize third parties to transmit funds and ensure that persons and entities which engage in money transmission activities do not utilize their services to facilitate the conduct of illegal activities.

*Id.* at *2-3. However, despite the broad goals of consumer protection, the New York Banking Department concluded that the statute was not intended to require registration by a company that, by virtue of its use of the Internet, had customers in New York, but did not have a physical presence in the State or specifically target New York residents.

addition, like PayPal at the time that it sought guidance from New York with respect to the need for New York licensure, e-gold, Ltd. conducts its business wholly through the Internet and offers its services to residents of the United States at a national level.  The New York Banking Department's opinion that under these circumstances no state license is required, is instructive with respect to Section 26-1002.

Based on the statute's failure to include language stating that it applies to non-residents, the District of Columbia Court of Appeals' reading of a similar District of Columbia licensure requirement, and New York's interpretation of its money transmission statute analogous to Section 26-1002,  the Court should find that Section 26-1002 does not apply to non-resident companies and individuals with no substantial nexus to the District of Columbia and dismiss Count Four of the Indictment since it does not allege that the defendants had such a presence in or nexus to the District of Columbia.

**B.      The Court Should Not Read a Statute to have Extraterritorial Application Absent Unambiguous Legislative Intent.**

Not only is the statute devoid of any language asserting an intent that it apply extraterritorially outside the District of Columbia, the defendants are unaware of any prosecution under D.C. Code § 26-1002 of out-of-state money transmission business or of any guidance, formal or informal, of any agency of the District of Columbia claiming that D.C. Code § 26-1002 is intended to have extraterritorial application.  Nor are the defendants aware of any legislative history indicating an intent that the statute apply outside the District of Columbia.  Under these circumstances, it would be improper to give Section 261-1002 extraterritorial effect to defendants located outside the District of Columbia.

Statutes should not be given extraterritorial effect in the absence of an unambiguous legislative intent that there be such application.  *See United States v. Bowman*, 260 U.S. 94, 98

(1922) (it is presumed that if a substantive criminal statute is to be applied extraterritorially, "it is natural for Congress to say so in the statute."); *United States v. Lopez-Vanegas*, 493 F.3d 1305, 1311 (11th Cir. 2007) ("A silent [criminal] statute is presumed to apply only domestically."). *See also EEOC* v. *Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) ("Congress legislates against the backdrop of the presumption against extraterritoriality"); *Gerling Global Reinsurance Corp. v. Gallagher*, 267 F.3d 1228, 1234-238 (11th Cir. 2001) (due process precluded application of Florida's Holocaust Victims Insurance Act to insurance policies issued outside the state, to persons outside the state, and covering individuals outside the state).

There is no unambiguous legislative intent that Section 26-1002 apply outside the District of Columbia.  Accordingly, the Court should not read the statute as doing so and should dismiss Count Four.

### C.    The Rule of Lenity Governs the Interpretation of Section 26-1002 and Precludes Imposing Criminal Liability on the Defendants.

Finally, assuming *arguendo* that it is at least ambiguous whether the defendants were required to obtain a money transmission license under D.C. Code § 26-1002 – despite the arguments above that the statute must be read to apply only to those with strong ties to the District of Columbia – the rule of lenity mandates that the ambiguity must be resolved in the defendants' favor.  When "the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage."  *Crandon v. United States*, 494 U.S. 152, 158 (1990).  The rule of lenity is "'fundamental to our fairness-centered criminal justice system.'"  *United States v. Quinn*, 401 F. Supp. 2d 80, 96 (D.D.C. 2005) (quoting *United States v. Barnes*, 295 F.3d 1354, 1369 (D.C. Cir. 2002) (Sentelle, J., dissenting)).

As the Supreme Court has stated:

> We have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.

*Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995) (internal citations and quotation marks omitted)).

The rule of lenity, therefore, "works to protect a citizen from punishment under a statute that gives at best dubious notice that it has criminalized his conduct." *Valdes v. United States*, 475 F.3d 1319, 1323 (D.C. Cir. 2007). Under this principle, "where text, structure, and history fail to establish that the Government's position is unambiguously correct," courts must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994). This policy embodies "the instinctive distastes against men languishing in prison unless the lawmaker has clearly said he should." *United States v. Bass*, 404 U.S. 336, 348 (1971).

In this case, it cannot be said that the Government's position – that Section 26-1002 requires Internet-based businesses that have no physical presence in the District of Columbia and virtually no contact with the District to obtain a District of Columbia money transmission license – is "unambiguously correct." As explained above, the statute is silent on the matter, as is the legislative history. There is clear precedent under similar statutes that a licensure requirement does not extend to out-of-state/Internet businesses. And there is no known instance of Section 26-1002 previously having been applied to non-resident businesses or individuals.

Since the statute is, at best, ambiguous as to its intent to apply to those like the defendants who had no physical presence or other strong nexus to the District of Columbia, the Court must

DC01/BLYND/336970.3

resolve that ambiguity in the defendants' favor in order to avoid criminalizing acts for which

there was no fair notice.  Thus, the Court should dismiss Count Four.

## **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that this Court dismiss

Count Four of the Indictment.

Dated: May 29, 2008                      Respectfully submitted,

By: _____/s/_____
Barry J. Pollack (D.C. Bar No. 434513)
Dawn E. Murphy-Johnson (D.C. Bar No. 490232)
KELLEY DRYE COLLIER SHANNON
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
bpollack@kelleydrye.com
202.342.8400
202.342.8451 fax

*Attorneys for Defendant Barry K. Downey*


Bernard Grimm (D.C. Bar No. 378171)
Cozen O'Connor, P.C.
1627 I St, N.W., Suite 1100
Washington, D.C.  20006
202.912.4800
202.912.4830 fax

*Attorneys for Defendant e-gold, Ltd.*


Aron U. Raskas
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD 21202-3201
aur@kg-law.com
(410) 752-6030
(410) 361-8211 fax

*Attorneys for Defendant Gold & Silver Reserve, Inc.*

Joshua G. Berman
Machalagh Carr
Sonnenschein Nath & Rosenthal LLP
1301 K Street, N.W., Suite 600, East Tower
Washington, DC  20005-3364
jberman@sonnenschein.com
202/408-5208
202/408-6399 fax

*Attorneys for Defendant Douglas L. Jackson*


A.J. Kramer
Michelle Peterson
Office of the Federal Public Defender
625 Indiana Avenue  N.W.
Suite 550
Washington, D.C. 20004
Shelli_Peterson@fd.org
(202) 208-7528

*Attorneys for Reid A. Jackson*

DC01/BLYND/336970.3

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2008, a true and correct copy of the foregoing Defendants' Motion and Memorandum of Law to Dismiss Count Four of the Superseding Indictment was served via ECF on all counsel of record.


_____/s/_____
Barry J. Pollack

DC01/BLYND/336970.3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Crim. No. 07-109 (RMC)** |
| **E-GOLD, LTD., ET AL.,** | |
| **Defendants.** | |

### [PROPOSED] ORDER

Upon consideration of the defendants' Motion to Dismiss Count Four of the Superseding Indictment, any opposition thereto, and the entire record herein, on this _____ day of _____, 2008, it is by the Court hereby

**ORDERED** that the defendants' motion is **GRANTED**; and it is further

**ORDERED** that Count Four of the Superseding Indictment is hereby **DISMISSED** with prejudice.

_____
The Honorable Rosemary M. Collyer
United States District Judge