# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 07-3074                                September Term, 2007
                                           FILED ON: APRIL 11, 2008

UNITED STATES OF AMERICA,
                    APPELLEE

v.

E-GOLD, LTD., ET AL.,
                    APPELLANTS

*Remand*

**FILED**

**JUN 11 2008**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Appeal from the United States District Court
for the District of Columbia
(No. 07cr00109)

Before: SENTELLE, *Chief Judge*, and KAVANAUGH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

## J U D G M E N T

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia and was argued by counsel. On consideration thereof, it is

**ORDERED** and **ADJUDGED** that the order of the District Court appealed from in this cause is hereby vacated and the case is remanded for further proceedings, in accordance with the opinion of the court filed herein this date.

### Per Curiam

**MANDATE**
Pursuant to the provisions of Fed. R. App. Pro. 41(a)

ISSUED:

BY:                                        Deputy Clerk

ATTACHED: ___ Amending Order
          ___ Opinion
          ___ Order on Costs

Date: April 11, 2008

Opinion for the court filed by Chief Judge Sentelle.

FOR THE COURT:
Mark J. Langer, Clerk

BY:     /s/

Michael C. McGrail
Deputy Clerk

A True copy:
United States Court of Appeals
for the District of Columbia Circuit

By:_____ Deputy Clerk

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 26, 2007         Decided April 11, 2008

No. 07-3074

UNITED STATES OF AMERICA,
APPELLEE

v.

E-GOLD, LTD., ET AL.,
APPELLANTS



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED    APR 1 1 2008

CLERK

———

Appeal from the United States District Court
for the District of Columbia
(No. 07cr00109)

———

**FILED**

**JUN 1 1 2008**

**NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT**

*Lawrence S. Robbins* argued the cause for appellants. With
him on the briefs was *Donald J. Russell. Andrew S. Ittleman*
and *Aron U. Raskas* entered appearances.

*Suzanne C. Nyland*, Assistant U.S. Attorney, argued the
cause for appellee. With her on the brief were *Jeffrey A. Taylor*,
U.S. Attorney, *Roy W. McLeese, III, Lisa H. Schertler, William
R. Cowden*, Assistant U.S. Attorneys, and *Kimberly Kiefer
Peretti*, Senior Counsel, U.S. Department of Justice.

Before: SENTELLE, *Chief Judge*; KAVANAUGH, *Circuit
Judge*; and WILLIAMS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Appellants are two corporate defendants and three individual defendants who are officers and/or shareholders in the corporate defendants. The originally sealed indictment against them charges, *inter alia*, the operation of an "unlicensed money transmitting business" in violation of 18 U.S.C. § 1960. Based on the indictment, the government obtained an *ex parte* seizure warrant. As a result of the execution of the warrant, the government obtained $1,481,976.38. In addition to the seizure warrant, the district court issued a post-indictment restraining order applicable to the assets and records of transactions of the corporate entity. Defendants moved to vacate the seizure warrant and to modify the restraining order, and sought an evidentiary hearing. In support of their motions, the individual appellants alleged an inability to pay for counsel of their choice in the absence of the seized assets. The district court denied the motions. Appellants brought the present appeal, arguing that the seizure warrant and restraining order without at least a post-seizure evidentiary hearing violated their due process rights and right to counsel under the Fifth and Sixth Amendments to the Constitution. For the reasons stated below, we agree with appellants and vacate the order of the district court and remand the case for further proceedings.

## I. BACKGROUND

On April 24, 2007, a grand jury of the United States District Court for the District of Columbia indicted E-Gold, Ltd., operator of an alternative payment system involving online transactions; Gold and Silver Reserve, Inc. ("GSR"), the operator of E-Gold's website and a digital currency exchange service known as "Omni Pay," through which funds could be inter-exchanged with E-Gold; Douglas L. Jackson, Chairman

3

and Chief Executive Officer of E-Gold and GSR and majority owner of GSR; Barry K. Downey, Secretary and Director of E-Gold and GSR and owner of twenty-five percent of GSR; and Reid A. Jackson, Managing Director of E-Gold and GSR and owner of three percent of GSR. The indictment alleged one count of conspiracy to operate an unlicensed money transmitting business in violation of 18 U.S.C. § 371, two counts of operation of an unlicensed money transmitting business, and one count of money transmitting without a license. On April 25, 2007, while the indictment remained sealed, the United States filed an *ex parte* application and a supporting affidavit with the United States District Court seeking to seize for forfeiture to the United States property held in two E-Gold digital currency accounts, one in the name of E-Gold and the other of GSR. The application alleged that the accounts constituted "property involved in an unlicensed money transmitting business" in violation of 18 U.S.C. § 1960. The district court properly issued the seizure warrant upon a finding that "there is probable cause to believe that the property at issue . . . may become worthless property for purposes of its forfeitures . . . and that, at this time, conversion of property valued as E-Gold into gold or funds denominated as United States currency . . . is reasonable and necessary." The court further ordered GSR to "exchange/convert the E-Gold held in the E-Gold account[s] at issue into gold or into the funds denominated as United States currency . . . within twenty-four (24) hours of the execution of this warrant and to provide that gold or currency through the federal law enforcement officers serving the warrant." The post-indictment restraining order also imposed restrictions on further transactions by the defendants. The government obtained $1,481,976.38 from appellants under the seizure warrant.

Appellants move to vacate the civil seizure warrant and modify the restraining order to permit, *inter alia*, the use of the seized assets for the purpose of retaining counsel in defense of

4

the action. In their motion, appellants sought an evidentiary hearing as to the propriety of the seizure of assets, and specifically as to the existence of probable cause to believe that the defendants had committed an offense warranting the issuance of the seizure warrant and restraining order. In a bench ruling, reflected in a minute order, the district court denied appellants' motion, and in so doing, ruled the defendants were not entitled to a post-seizure evidentiary hearing.

Appellants filed the instant appeal, arguing that the seizure without a post-seizure evidentiary hearing violated their due process rights in violation of the Fifth Amendment. Appellants further argue the seizure violates the Sixth Amendment's right to counsel because they were unable to afford counsel of their choice without the seized assets. During the pendency of this appeal, a magistrate judge ruled that the individual defendants had made a showing of financial inability to retain counsel and were eligible for appointed counsel.

For the reasons more fully set forth below, we conclude that appellants have established that their constitutional rights are being violated by the continued seizure of their assets without a post-seizure evidentiary hearing. We therefore vacate the order of the district court and remand the case to the district court for such a hearing.

II. ANALYSIS

A. *Jurisdiction*

The government first asserts that this appeal should be dismissed for lack of jurisdiction. As in any appeal, this court, as a court of limited jurisdiction, must first ascertain if we have jurisdiction to entertain the controversy before us. The government argues that we do not have jurisdiction over this

5

case.

While the government's argument is not simplistic, it rests on the simple proposition that our appellate jurisdiction in criminal cases is limited to "final decisions of the district courts." 28 U.S.C. § 1291. In the government's view, review of the court's ruling on the seizure warrant and the restraining order does not fall within our jurisdiction, as the court's ruling did not constitute a final decision. That is, we will not have jurisdiction to review the court's rulings until a trial and final judgment. The government candidly admits that there are exceptions to the rule of finality, but it argues that this case falls within none of those exceptions. Appellants assert that the restraint of their assets pending trial and judgment is reviewable on interlocutory appeal under 28 U.S.C. § 1292(a)(1). We agree.

While we have not previously passed on the jurisdiction of circuit courts to hear interlocutory appeals in cases like the one before us, other circuits have. In *United States v. Kirschenbaum*, 156 F.3d 784 (7th Cir. 1998), the Seventh Circuit considered the same argument the government makes before us. That circuit analyzed 28 U.S.C. § 1292(a)(1), which establishes the jurisdiction of the circuit courts to hear appeals from:

> Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

The *Kirschenbaum* court concluded that the order before it, paralleling the order under review in this case, constituted such a refusal "to dissolve or modify [an] injunction[]" and was

6

therefore within the jurisdiction of the court to hear interlocutory appeals. *Id.* at 788. We agree. As the Seventh Circuit noted, there is considerable weight of authority from numerous circuits in support of this proposition. The Seventh Circuit noted the following cases to that effect:

> *United States v. Floyd*, 992 F.2d 498, 500 (5th Cir. 1993) (post-indictment pretrial ex parte protective order under 18 U.S.C. § 982(b)(1) (seizure of property) is "injunction" covered by 28 U.S.C. § 1292(a)(1)); *United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir. 1994) (same) (citing *United States v. Roth*, 912 F.2d 1131, 1132 (9th Cir. 1990)) (restraining order under 21 U.S.C. § 853(e)(1)); *see also United States v. Field*, 62 F.3d 246, 248 (8th Cir. 1995) (reviewing postindictment ex parte restraining order under 18 U.S.C. § 982(b)(1) without discussing basis for appellate jurisdiction). And courts have reached the same conclusion regarding restraining orders under 21 U.S.C. § 853(e)(1), which 18 U.S.C. § 982(b)(1) incorporates. *Roth*, 912 F.2d at 1132 (postindictment ex parte restraining order under 21 U.S.C. § 853(e)(1) appealable under § 1292(a)(1)); *United States v. Monsanto*, 836 F.2d 74, 77 (2nd Cir. 1987) (same), *vacated on rehearing en banc on other grounds*, 852 F.2d 1400 (2nd Cir. 1988) (*per curiam*), *and rev'd on other grounds*, 491 U.S. 600 (1989) (reviewing merits without addressing jurisdictional basis); *cf. United States v. Estevez*, 852 F.2d 239, 240 n.3 (7th Cir. 1988).

*Id.* Additionally, the Tenth and Third Circuits reached the same conclusion with respect to parallel forfeiture orders under other statutes. *See United States v. Musson*, 802 F.2d 384, 385 (10th Cir. 1986) (reviewing order under RICO, 18 U.S.C. § 1963(e)(1)); *In re Assets of Martin*, 1 F.3d 1351, 1355 (3d Cir. 1993) (same).

7

The government argues that § 1292(a)(1) is inapplicable to forfeitures under 18 U.S.C. § 981, as the forfeiture involved is, in the government's view, not the subject of an "injunction." That statute, as the government reminds us, provides that "seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure . . . ." *Id.* § 981(b)(2). The word "injunction" is not used either in 18 U.S.C. § 981 or in the order of the district court.

However, the formal denomination of the court's order, either in the rules or in the order itself, is not dispositive.

> The definition of an injunction under § 1292(a)(1) is broad: it is any order directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than preliminary fashion.

*I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Industries, Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986) (quoting *United States v. Western Elec. Co., Inc.*, 777 F.2d 23, 28 n.12 (D.C. Cir. 1985)) (quotation marks omitted). In this case, the seizure warrant and restraining order, among other things, ordered the defendants to (1) convert the E-Gold in the relevant accounts into gold or United States currency, (2) provide the gold or currency to the government within 24 hours, and (3) to do so by cash, wire transfer, or certified check. We do not understand the government to be contending that these words were unenforceable or that the defendants would not, at the very least, have been penalized by contempt had they failed to comply. Shakespeare had Juliet famously opine that "that which we call a rose by any other name would smell as sweet." SHAKESPEARE, ROMEO AND JULIET, act 2, sc. 2. Indeed, as Gertrude Stein pointed out, a "[r]ose is a rose is a rose." STEIN, *Sacred Emily*,

8

*in* GEOGRAPHY AND PLAYS 178 (1922). In this case we would advise the government that an injunction is an injunction is an injunction. That which we call an injunction by any other name is reviewable on interlocutory appeal.

We therefore join our fellow circuits and hold that the seizure warrant and restraining order are properly within our jurisdiction to hear interlocutory appeals under § 1292(a)(1).

B. *Due Process*

Having determined that the seizure warrant and restraining order are properly before us for review, we must then determine the merits of appellants' claim that seizure of their assets upon the issuance of the indictment without an opportunity for adversary hearing constitutes a violation of their due process rights under the Fifth Amendment, at least in a case in which they have demonstrated the inability to retain counsel of their choice without access to the seized assets. We hold that the due process clause does require such an opportunity to be heard.

As in the case of the jurisdictional question, this circuit has not yet considered the question before us. Other circuits have, as we will discuss more fully below. To begin with, we repair to first principles. In ascertaining the requirements of the due process clause in affording a hearing to those whose assets are the subject of seizure, we look first to the Supreme Court's declarations in *Mathews v. Eldridge*, 424 U.S. 319 (1976). That case commands that "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

So far as the meaning of "meaningful time" is concerned, "[a] fundamental norm of the due process clause jurisprudence

9

requires that before the government can constitutionally deprive a person of the protected liberty or property interest, it must afford him notice and hearing." *National Council of Resistance v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. at 334-35). We recognize that in many circumstances – indeed, the circumstances of this case – it may be impossible to afford a full adversarial hearing before the initial seizure of the property in question. It may well be that in the case of a criminal proceeding in which the government may ultimately have rights in the property at issue, immediate protective measures must be taken in order to prevent dissipation or deterioration of the assets before the time for trial is reached. This does not, however, compel a conclusion that an adversarial hearing after the initial seizure may be finessed without violating the due process rights of the persons whose assets have been seized. To make that determination requires further inquiry.

In *Mathews v. Eldridge*, the Supreme Court set forth three elements of inquiry which the courts must apply in determining the due process rights of citizens who were subjected to the seizure of their property or other constitutionally protected interests:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

10

We have previously employed the *Mathews v. Eldridge* three-part analysis in determining the constitutional necessity of a post-deprivation hearing to invasions of constitutionally protected interests occurring pretrial where circumstances may compel protective seizure before merits adjudication. *See National Council of Resistance v. Dep't of State*, 251 F.3d at 205-08. We have not, however, applied that analysis to civil seizure under 18 U.S.C. § 1960 or similar statutes. But as we noted above, other circuits have.

In *Monsanto v. United States*, 924 F.2d 1186 (2nd Cir. 1991), the Second Circuit considered just the question before us on circumstances paralleling those we review. In *Monsanto*, the Second Circuit, en banc, reviewed the case on remand from the Supreme Court's decision in *United States v. Monsanto*, 491 U.S. 600 (1989). The Supreme Court had held that although a pretrial asset restraining order based upon a grand jury "finding of probable cause to believe that the assets are forfeitable" may make unavailable any funds that a criminal defendant wishes to use "for his private purposes," including funds needed to pay for his counsel of choice, it did not inherently run afoul of the Fifth Amendment due process rights of the property owner or his rights to counsel under the Sixth Amendment. *Id.* at 614-15. However, the Supreme Court left open for the circuit's decision on remand the question "whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed." *Id.* at 615 n.10. The Second Circuit then determined the question before us in the present case, and we find its reasoning most instructive.

On remand, the en banc court first considered whether notice and a hearing were required before the initial seizure. The Second Circuit held, and we agree, that because the seizure "'operates to remove the assets from the control of the defendant on the claim of the government that it has a higher right to those

11

assets,' *Moya-Gomez*, 860 F.2d at 725," even though the seizure is potentially temporary, the "deprivation of property" is "subject to the constraints of due process." *Id.* at 1192 (quoting *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606 (1975)). Thus, faced with the underlying principle that "[t]he due process clause of the fifth amendment generally requires 'notice and an opportunity to be heard,'" a pre-deprivation hearing would normally be in order. *Id.* at 1192 (quoting *United States v. Property at 4492 S. Livonia Rd., Livonia*, 889 F.2d 1258, 1263 (2nd Cir. 1989)). However, the Second Circuit noted, and again we agree, that in "'extraordinary situations' . . . notice and a hearing [may] be postponed until after the deprivation." *Id.* (quoting *Fuentes v. Shevin*, 407 U.S. 67, 90 (1975)).

The extraordinary circumstances for the postponement of the due process hearing are satisfied where

> [f]irst, . . . the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Id.* (quoting *Fuentes*, 407 U.S. at 91).

Like the Second Circuit, we hold that the circumstances giving rise to the seizure of assets upon probable cause that the assets were used in violation of specified criminal statutes meets the "extraordinary circumstances" three-part test for seizure without a predeprivation hearing. There is no doubt that the first

12

requirement is met. As the Second Circuit noted, the "several governmental and public ends[] includ[e]: (1) separating a criminal from his ill-gotten gains, *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629 (1989); (2) obtaining substantial funds for the furtherance of law enforcement, *see id.*; (3) permitting recovery of assets by their rightful owners, *id.*; and (4) lessening the economic power of organized crime and drug enterprises, *id.*" *Monsanto*, 924 F.2d at 1192.

Thus, "[i]n order to effectuate these purposes, the government needs some means of promptly heading off any attempted disposal of assets that might be made in anticipation of a criminal forfeiture." *Id.* Likewise, the ease of disposition of valuable assets, particularly by owners already subject to indictment, would seem to satisfy the second requirement; the third requirement is not even at issue. Therefore, we agree with the *Monsanto* court's conclusion that "because of the exigent circumstances presented, notice and a hearing need not occur before an ex parte restraining order is entered" pursuant to the civil forfeiture requirements of the relevant criminal statutes. However, this leaves open the question then before the *Monsanto* court and presently before us: "whether a hearing is required *after* the entry of such an order, but before trial." *Id.* at 1193 (emphasis in original).

The *Monsanto* court went on to consider, as we must, the three *Mathews v. Eldridge* factors. That court concluded, and we agree, that the first factor – that is, the private interests to be affected by the official action – weighs particularly heavily. *Id.* There, as here, "[t]he private interest at stake is not merely a defendant's wish to use his property in whatever manner he sees fit." *Id.* While that interest by itself is of course weighty, it is, as the Second Circuit noted, "augmented by an important liberty interest: the qualified right, under the sixth amendment, to counsel of choice." *Id.* As we noted above, that need is clearly

13

established in the case before us where a magistrate judge has found that the defendants are not financially capable of retaining counsel of choice without the seized property. While the deprivation is nominally temporary, it is "in that respect effectively a permanent one." *Id.* "The defendant needs the attorney *now* if the attorney is to do him any good." *Moya-Gomez*, 860 F.2d at 726 (emphasis in the original).

Therefore, the first *Mathews v. Eldridge* factor weighs heavily in favor of a conclusion that the owners of the seized property are entitled to a post-deprivation pretrial opportunity to be heard. It would seem apparent that a successful showing by defendants at such a hearing provides potential protection against the quasi-temporary but effectively permanent deprivation of assets required by the defendants for an effective exercise of their Sixth Amendment right to counsel.

As did the *Monsanto* court, we must move then to the second *Mathews v. Eldridge* factor: the risk of an erroneous deprivation of a defendant's interest in retaining counsel of choice, and the probable value of procedural alternatives. Based as it is on a grand jury's finding of probable cause, a seizure warrant is the product of an *ex parte* proceeding. The defendants have had no opportunity to be heard.

> The inherent risk in allowing the deprivation of a property interest through ex parte proceedings accounts for the general rule that a prior adversary hearing is required, absent special circumstances.

*Monsanto*, 924 F.2d at 1195. Because a pre-seizure hearing is rendered unavailable by the secrecy of the grand jury proceeding, we, like the Second Circuit in *Monsanto*, "must therefore explore the value of an additional or substitute procedural safeguard." *Id.* While we cannot know what

14

evidence the property owners might adduce in an adversary hearing, it is precisely that lack of knowledge on the part of the court and the prosecution that makes it apparent that there is "considerable worth in a post-indictment, pre-trial adversarial hearing" on the issue of the restraint of the seized property. *Id.* It is the right to adduce such evidence that underlies the Supreme Court's longstanding determination that "[a] fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (internal citation and quotation marks omitted). In the absence of a pre-seizure adversary hearing, the most meaningful alternative available – one which can prevent the evisceration of a defendant's rights by a trial tainted by the violation of the defendant's Sixth Amendment rights – is a pretrial adversary hearing.

Again we follow the Second Circuit in "conclud[ing] that a pretrial adversary hearing addressing the existence of probable cause as to both the [predicate criminal offense] and the forfeitability of the specified property affords a procedural safeguard of substantial value." *Monsanto*, 924 F.2d at 1197. Even where the normal due process requirement of a hearing prior to the deprivation of a property interest in the first instance is precluded by exceptional circumstances, those circumstances authorize only "postponement of notice and hearing" until after the seizure but within such time as may allow the defendant a meaningful opportunity to be heard before the deprivation of his rights has become permanent, as would be the case if he were subjected to trial without the opportunity to exercise his Sixth Amendment rights. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679-80 (1974).

As to the third element of the *Mathews v. Eldridge* inquiry – the government's interest, including the burden to be imposed

15

by a pretrial probable cause hearing – we certainly find weight
in favor of the government's position, but not sufficient weight
to offset the due process rights of the defendant as established
under the totality of the *Mathews v. Eldridge* inquiry. It is true
that the grand jury proceeding is not only *ex parte* but subject to
orders of secrecy for compelling reasons. Certainly, it is
important to protect, *inter alia*, the identity and location of
witnesses who might be subject to threat or interference. But it
is not necessarily the case that affording indicted defendants a
right to be heard before the deprivation of their property rights
and liberty interests under the Fifth and Sixth Amendments
entails an invasion of grand jury secrecy or an evisceration of
the important goals of that secrecy. As the *Monsanto* court
noted, the district court, in such a post-indictment pretrial
hearing, would need only to require the government to "establish
probable cause as to the defendant's guilt and the forfeitability
of the specified assets." *Monsanto*, 924 F.2d at 1195; *see also
id.* at 1203 ("[T]he fifth and sixth amendments, considered in
combination, require an adversary, post-restraint, pretrial
hearing as to probable cause that (a) the defendant committed
crimes that provide a basis for forfeiture, and (b) the properties
specified as forfeitable in the indictment are properly
forfeitable."). In such an adversary hearing, the court could use
limitations on the disclosure of evidence, such as *in camera*
hearings and appropriate application of the normal rules of
evidence to protect the grand jury proceedings against
unwarranted invasion.[1]

Thus, while we recognize the weightiness of the
government's concern in grand jury secrecy, we find nothing
that outweighs the defendant's constitutional rights to due

---

[1]We note that when asked directly at oral argument, the
government could not identify any harm to its law enforcement efforts
in the Second Circuit that has resulted from the *Monsanto* standard.

16

process and to counsel under the Fifth and Sixth Amendments. We thus join the Second Circuit in holding that defendants have a right to an adversary post-restraint, pretrial hearing for the purpose of establishing whether there was probable cause "as to the defendant[s'] guilt and the forfeitability of the specified assets" needed for a meaningful exercise of their rights to counsel. *Monsanto*, 924 F.2d at 1195.

We note that in addition to the Second Circuit's decision in *Monsanto*, there are several other circuit decisions addressing similar constitutional issues. *See United States v. Moya-Gomez*, 860 F.2d 706, 731 (7th Cir. 1988); *United States v. Melrose East Subdivision*, 357 F.3d 493, 498-507 (5th Cir. 2004); *United States v. Crozier*, 777 F.2d 1376, 1383-84 (9th Cir. 1985); *United States v. Lewis*, 759 F.2d 1316, 1324-25 (8th Cir. 1985); *United States v. Spilotro*, 680 F.2d 612, 616-19 (9th Cir. 1982); *United States v. Long*, 654 F.2d 911, 915-16 (3rd Cir. 1981); *see also United States v. Noriega*, 746 F. Supp. 1541, 1545 & n.2 (S.D. Fla. 1990). *But see United States v. Bissell*, 866 F.2d 1343, 1354 (11th Cir. 1989); *United States v. Jones*, 160 F.3d 641, 645 (10th Cir. 1998); *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001). We join the majority of those circuits in holding that the adversarial hearing sought by the appellants is constitutionally required.

We note that in briefing the government alluded to the proposition which it asserted specifically at oral argument that if a grand jury finding of probable cause is adequate to deprive a person of liberty interests, as it historically has been, then surely it should be sufficient to survive due process examination of the invasion of the "lesser" interest in access to their property. This might perhaps be a more compelling argument if the interest invaded were not only lesser, but included. However, the interests of the defendants in their property stand independent of their interests in their freedom. Defendants

17

deprived of liberty pending trial either by imprisonment or by limitation under bail bond normally have full property rights in whatever they owned before indictment and in many, if not most, cases will retain those interests even if convicted. And they may use such property to retain counsel. Absent criminal statutes of the sort invoked in this case and in others such as *Monsanto*, the indicted but unconvicted defendant remains a citizen free to hold property, retain counsel, and indeed to exercise the mass of rights available to other citizens not so indicted. The historic power, indeed the necessary power, of the state to limit liberty interests of those persons as to whom probable cause exists warranting a criminal trial are normally irrelevant to other constitutional or even statutory or common law rights. A brief examination of the history and reasons for grand jury secrecy makes it apparent that this not only is but should be so.

Rule 6 of the Federal Rules of Criminal Procedure codifies the ancient rule of grand jury secrecy. In the Anglo-American tradition of respecting the rights of accused persons while maintaining the rule of law, grand juries have met *ex parte* and under that tradition, as well as Rule 6, the proceedings of the grand juries have been subject to near absolute secrecy. The Supreme Court has reminded us that "[g]rand jury secrecy . . . is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)). The Supreme Court has

catalogued additional reasons for preserving grand jury secrecy: (1) disclosure of pre-indictment proceedings would make many prospective witnesses "hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony"; (2) witnesses who did appear "would be less likely to testify fully and

18

> frankly, as they would be open to retribution as well as to
> inducements; and (3) there "would be the risk that those
> about to be indicted would flee or would try to influence
> individual grand jurors to vote against indictment."

*In re North*, 16 F.3d 1234, 1242 (D.C. Cir. Spec. Div. 1994)
(quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S.
211, 218-19 (1979)).

All the reasons offered by the Supreme Court demonstrate
the necessity of employing *ex parte* proceedings for the
indictment of persons suspected of criminal offenses. It is
necessary to invade their liberty interests in order to hold them
in place to be tried for those offenses for which there is probable
cause to believe they are guilty. Even in the face of that
necessity, their liberty interests receive some protection by a due
process hearing as to whether they may remain at large on bail
or recognizance pending a trial to determine their guilt beyond
a reasonable doubt. *See* U.S. CONST. amend. VIII. Neither the
need to assure the presence of the defendant at trial nor any of
the other historic reasons recognized by the Supreme Court for
the *ex parte* secret nature of the grand jury proceedings compels
the deprivation of property rights without due process pending
a trial to determine whether the defendant is in fact guilty of the
crimes charged and the property properly forfeitable.

It is true that in the due process hearing on the question of
the seizure of the defendants' assets, the government risks the
premature disclosure of otherwise undiscoverable evidence
before trial on the merits. It is also true, however, that at such
a hearing the trial court may invoke whatever protections are
necessary to protect such evidence. It is further true that the
defendant may have access to evidence not presented to the
grand jury which the defendant may choose to offer the court in
support of the proposition that there is no probable cause

19

supporting the seizure of the assets.

## Conclusion

In short, we hold that where the government has obtained a seizure warrant depriving defendants of assets pending a trial upon the merits, the constitutional right to due process of law entitles defendants to an opportunity to be heard at least where access to the assets is necessary for an effective exercise of the Sixth Amendment right to counsel. We need not determine, nor do we determine, whether the due process rights of the defendants compel such a hearing when the assets are not necessary to obtaining counsel of choice.

This case is remanded to the district court for further proceedings consistent with this opinion.

*It is so ordered.*