

U.S. Department of Justice

United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20530*

07-109-5 (RMC)

July 18, 2008

Michelle Peterson, Esq.
Federal Public Defender
625 Indiana Ave., NW – Suite 550
Washington, DC 2004-2923

**FILED**
JUL 2 1 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Re:    Mr. Reid A. Jackson

Dear Ms. Peterson:

This letter sets forth the full and complete plea offer to your client, Mr. Jackson. This offer is by the Criminal Division (including the Fraud and Public Corruption Section and the Asset Forfeiture Unit) of the United States Attorney's Office for the District of Columbia (the "Office") and the Criminal Division (including the Computer Crime and Intellectual Property Section and the Asset Forfeiture and Money Laundering Section) of the U.S. Department of Justice ("Department") and is binding upon both. This plea offer will expire on July 18, 2008. Upon receipt, the executed letter will itself become the plea agreement. The terms of the offer are as follows:

1.    **Charges and Statutory Penalties**

Mr. Jackson agrees to plead guilty to Count Four of the Superseding Indictment, charging him with Engaging in the Business of Money Transmission Without a License, in violation of 26 D.C. Code § 1002. Mr. Jackson understands that this offense carries a maximum sentence of five years of imprisonment, a fine of $25,000, an assessment of $100-$5,000 to the Crime Victims Compensation Fund, a three-year term of supervised release, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

In consideration of your client's plea to the above offense, your client will not be further prosecuted criminally by this Office or the Department for the conduct set forth in the attached Statement of Offense or for conduct of which the Government is aware as of the entry of this Plea Agreement. At the conclusion of the sentencing hearing, the Government will move to dismiss the remaining counts in the Superseding Indictment. Your client agrees that with respect to any and all dismissed charges your client is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

2.  **Factual Stipulations**

Mr. Jackson agrees that the attached "Statement of the Offense" fairly and accurately describes Mr. Jackson's actions and involvement in the operation of an unlicensed money transmitting business. It is anticipated that prior to or during the Rule 11 plea hearing, Mr. Jackson will adopt and sign the Statement of the Offense as a written proffer of evidence.

3.  **Sentencing Guidelines Stipulations**

Mr. Jackson understands that the sentence in this case will be determined by the Court, which will consider the District of Columbia Voluntary Sentencing Guidelines (the "Guidelines").

The parties agree that Engaging in the Business of Money Transmission Without a License is a Group Eight offense and that the Guidelines range for a Group Eight offense is 6 to 24 months of probation, imprisonment, or a combination of both. The Government agrees not to seek more than six months of imposed incarceration, nor will the Government file any applicable enhancement papers. In all other respects, except as otherwise provided in this Agreement, the government reserves its full right of allocution. Except as otherwise provided in this Agreement, Mr. Jackson reserves his full right of allocution.

If Mr. Jackson is sentenced to any period of probation, the parties agree that terms of this plea agreement contained in paragraphs 11 to 16 below may be included by the Court as conditions of probation.

4.  **Court Not Bound by the Plea Agreement**

It is understood that the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues. In the event that the Court considers any Guidelines calculations different from any stipulations contained in this Agreement, or contemplates a sentence outside the Guidelines range, the parties reserve the right to answer any related inquiries from the Court.

5.  **Court Not Bound by the Non-Mandatory Sentencing Guidelines**

It is understood that the sentence to be imposed upon your client is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court. Your client acknowledges that your client's entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines range. The Government cannot, and does not, make any promise or representation as to what sentence your client will receive. Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence outside the Guidelines range.

6.  **Restitution**

In addition to the other penalties provided by law, the Court may also order that your client make restitution under 16 D.C. Code § 711. The Government believes that no restitution is applicable under the relevant restitution statutes, and is not seeking restitution in this case. However, the Government's position is not binding on the Court and the Court may order restitution. Restitution is payable immediately unless ordered otherwise by the Court.

7.  **Wiring of Plea Agreement**

Mr. Jackson understands and acknowledges that this Agreement and any plea of guilty which he may enter pursuant to this Plea Agreement are contingent upon the entry of guilty pleas by co-defendants, Barry K. Downey, Douglas K. Jackson, e-gold, Ltd., and Gold & Silver Reserve, Inc., in this case. If these co-defendants fail to enter a guilty plea, this Plea Agreement and any proceedings pursuant to this Plea Agreement may be withdrawn or voided at the discretion of the Government.

8.  **Forfeiture**

Mr. Jackson agrees not to contest or file any claim of interest with respect to any forfeiture carried out in accordance with the guilty pleas by co-defendants e-gold, Ltd. and Gold & Silver Reserve, Inc. Further, Mr. Jackson agrees not to contest or file any claim of interest in "e-gold" accounts belonging to e-gold, Ltd. third-party customers that may be subject to a civil forfeiture action pursuant to 18 U.S.C. § 981 or a criminal forfeiture pursuant to 18 U.S.C. § 982.

9.  **Release/Detention**

Mr. Jackson acknowledges that while the Government will not seek detention of Mr. Jackson pending sentencing or designation should the court impose a period of incarceration, the final decision regarding Mr. Jackson's bond status or detention will be made by the Court at the time of Mr. Jackson's plea of guilty and again at the time of sentencing. Should Mr. Jackson engage in further criminal conduct prior to sentencing, however, the Government may move to change Mr. Jackson's conditions of release.

10. **Registration as a Money Services Business**

Mr. Jackson agrees that e-gold, Ltd. and Gold & Silver Reserve, Inc. are "financial institutions" as defined in 31 U.S.C. § 5312(a)(2) and are money services businesses under 31 C.F.R. § 103.11(uu)(5). Further, Mr. Jackson agrees that the e-gold operation (including both e-gold, Ltd. and Gold & Silver Reserve, Inc. doing business as OmniPay) is a money transmitting business within the meaning of 18 U.S.C. § 1960, and, as such, may not operate without a money transmitting license in States that require licensing of businesses engaged in money transmitting and without registration with the Department of Treasury (FinCEN) pursuant to 31 U.S.C. § 5330 and 31 C.F.R.§ 103.41.

Accordingly, Mr. Jackson will not engage in operation of the e-gold digital currency system, or any other digital currency system, until he and the e-gold operation (or any other digital currency system operated by him or it) have registered with FinCEN. In addition, within thirty (30) days of entering this Plea Agreement, Mr. Jackson will submit applications to obtain State licenses in States that require licensing of businesses engaged in money transmitting or submit a request for an advisory opinion from such a State that the e-gold operation (or any other digital currency system operated by him or it) is not required to be licensed. Mr. Jackson shall obtain any State license to engage in money transmitting (or advisory opinion stating that a license is not required) within six (6) months of entry of this Plea Agreement or stop conducting business in any State where such money transmitting license (or advisory opinion) has not been obtained.

11.     **Service of Process**

Mr. Jackson agrees that e-gold, Ltd., Gold & Silver Reserve, Inc. and any other entity through which he now, or in the future, offers a digital currency will accept service of process at the business location in Melbourne, Florida or any other U.S. location from which they operate, including the location of any owner, or principal, regardless of whether that is the location of the principal place of business, incorporation, or registration.

12.     **Anti-Money Laundering Program**

Mr. Jackson agrees that e-gold, Ltd. and Gold & Silver Reserve, Inc. are "financial institutions" as defined in 31 U.S.C. § 5312(a)(2) and are subject to the requirements to establish an anti-money laundering program in 31 U.S.C. § 5318(h) (applicable to financial institutions) and 31 C.F.R. § 103.125 (applicable to money services businesses). Mr. Jackson agrees that e-gold, Ltd., Gold & Silver Reserve, Inc., and any other entity through which he now, or in the future, offers a digital currency, will establish and maintain a Bank Secrecy Act compliance program, including an anti-money laundering program with internal controls, independent testing and other measures to detect and report potential money laundering, terrorist financing and other suspicious activity. Pursuant to 31 U.S.C. § 5318(h), this shall include, at a minimum, (A) the development of internal policies, procedures, and controls; (B) the designation of a compliance officer; (C) an ongoing employee training program; and (D) an independent audit function to test programs. Further, Mr. Jackson acknowledges that e-gold, Ltd. and Gold & Silver Reserve, Inc., as currently operating, are a "high risk" operation with respect to money laundering and agrees that the anti-money laundering program to be established will be commensurate with those risks pursuant to 31 C.F.R. § 103.125. Additionally, Mr. Jackson agrees to the following:

(a)     **Consultant**: Mr. Jackson, or the e-gold operation, will retain an independent service to assist in establishing an appropriate anti-money laundering program and ensure compliance with money laundering laws. The consultant selected to provide this service shall be compensated for its services by e-gold, Ltd., or Gold & Silver Reserve, Inc. at prevailing market rates and will issue a report within ninety (90) days of the entry of this Plea Agreement to

e-gold, Ltd., Gold & Silver Reserve, Inc., and any other entity through which Mr. Jackson now, or in the future, offers a digital currency, and this Office and the Department (through the supervising unit described in paragraph 13) which describes e-gold, Ltd.'s and Gold & Silver Reserve, Inc.'s current anti-money laundering programs and provides a plan to bring the companies into compliance with anti-money laundering laws.

(b)   **User Agreement and Website Disclaimer:** Mr. Jackson agrees to establish policies and procedures for prohibiting use of the e-gold digital currency system, any and all businesses and entities associated with the e-gold digital currency system, for criminal activity and to publicize those procedures in its User Agreement within ten (10) days of the entry of this Plea Agreement. Within ten (10) days of the entry of this Plea Agreement, Mr. Jackson agrees to prominently display a disclaimer on the e-gold website, or any other website with which Mr. Jackson is associated, to the effect that use of the e-gold system for criminal activity is not tolerated and e-gold is an entity subject to U.S. financial regulations.

(c)   **Customer Identification**: Mr. Jackson agrees that e-gold, Ltd., Gold & Silver Reserve, Inc., and any other entity through which he now, or in the future, offers a digital currency will, pursuant to 31 U.S.C. § 5318(l) and 31 C.F.R. § 103.125, establish procedures for verifying customer identification. From the entry of this Plea Agreement, no new Omnipay account shall be opened without being in compliance with 31 U.S.C. § 5318(l) and 31 C.F.R. § 103.125. Following ninety (90) days of the entry of this Plea Agreement, no new e-gold or other digital currency account shall be opened, or if that is not reasonable and practicable, permitted to engage in any transactions (other than those incident to the Customer Identification process), without being in compliance with 31 U.S.C. § 5318(l) and 31 C.F.R. § 103.125. All existing e-gold, OmniPay or other digital currency accounts must be brought into compliance with 31 U.S.C. § 5318(l) and 31 C.F.R. § 103.125 or closed within ninety (90) days. As part its anti-money laundering program, the e-gold operation will engage an outside vendor within thirty (30) days of the entry of this Plea Agreement to provide services in proactively searching the Internet for instances where "e-gold" is being used for criminal purposes.

(d)   **OFAC Compliance**. Mr. Jackson will ensure compliance of the e-gold digital currency system, or any other digital currency system, with all applicable regulations of the Department of Treasury, Office of Foreign Assets Control (OFAC). From the entry of this Plea Agreement, no new e-gold, Omnipay or other digital currency account shall be opened, nor shall any transactions be conducted, without being in compliance with OFAC regulations prohibiting transactions from sanctioned countries. Compliance

with remaining OFAC regulations, including the blocking of transactions involving Specially Designated Nationals, shall be in accordance with the timeframe required above for customer identification measures. All existing and newly created e-gold, OmniPay or other digital currency accounts must be brought into compliance with OFAC regulations or closed within ninety (90) days of the entry of this Plea Agreement.

(e) **Suspicious Activity Reports**: Mr. Jackson agrees that e-gold, Ltd., Gold & Silver Reserve, Inc., and any other entity through which he now, or in the future, offers a digital currency will, pursuant to 31 U.S.C. § 5318(g) and 31 C.F.R. § 103.20, report suspicious transactions detected on or after the entry of this Plea Agreement relevant to a possible violation of law or regulation by his customers.

(f) **Audit**: Mr. Jackson agrees that e-gold, Ltd. and Gold & Silver Reserve, Inc. will engage an independent third party auditor to identify all gold bars held by the e-gold operation and to conduct an accounting of the e-gold book transfer system to confirm that the amount of e-gold in circulation is fully backed by gold bullion held in allocated storage. The auditor selected to perform this audit shall be compensated for its services by e-gold, Ltd. and/or Gold & Silver Reserve, Inc. at prevailing market rates and will issue a report within ninety (90) days of the entry of this Plea Agreement to both e-gold, Ltd. and Gold & Silver Reserve, Inc., and this Office and the Department (through the supervising unit described in paragraph 13).

13. **Supervision**

In accordance with the above listed statutory and regulatory provisions, Mr. Jackson agrees that e-gold, Ltd., Gold & Silver Reserve, Inc., and any other entity through which he now, or in the future, offers a digital currency will submit to supervision by the Internal Revenue's Bank Secrecy Act Division ("supervising unit"). This supervising unit will supervise e-gold, Ltd., Gold & Silver Reserve, Inc., and any other entity through which Mr. Jackson now, or in the future, offers a digital currency, for compliance with the above listed provisions for a period of three years. During this period of time, the supervising unit will perform regular and/or continuous supervision of operations, transactions, and related compliance programs of e-gold, Ltd., Gold & Silver Reserve, Inc., and any other entity through which Mr. Jackson now, or in the future, offers a digital currency. Thereafter, the supervising unit may supervise compliance of the operation in accordance with its regulatory authority. Based upon the determinations of the supervising unit, compliance recommendations will be made regarding the adherence of the Bank Secrecy Act Provisions contained in Title 31, Code of Federal Regulations, Part 103.

14. **Public Statements**

   Mr. Jackson expressly agrees that he shall not make any public statement, directly or through another person, contradicting any statement of fact contained in the Statement of Offense or any provision of this Plea Agreement for a period of three years from the entry of this Plea Agreement. Any such contradictory public statement by Mr. Jackson, shall constitute a breach of this Plea Agreement as governed by paragraph 16 of this Plea Agreement, and Mr. Jackson would thereafter be subject to prosecution pursuant to the terms of this Plea Agreement. Upon the United States' notifying Mr. Jackson of a public statement that in whole or in part contradicts a statement of fact contained in the Statement of Offense, Mr. Jackson may avoid breach of this Plea Agreement by publicly repudiating such statement within 48 hours after notification by the United States.

15. **Transfer of Business**

   Mr. Jackson agrees that, if he sells, merges or otherwise transfers all or substantially all of the business operations as they exist as of the entry of this Plea Agreement to a single purchaser or group of affiliated purchasers for a period of three years from the entry of this Plea Agreement, it shall include in any contract or agreement for sale, merger, or transfer a provision binding the purchaser/successor to the obligations described in paragraphs 11 through 14 of this Plea Agreement for a period of three years from the entry of this Plea Agreement.

16. **Breach of Agreement**

   Mr. Jackson understands and agrees that if, after entering this Plea Agreement, he fails specifically to perform or to fulfill completely each and every one of his obligations under this Plea Agreement, or engages in any felony criminal activity prior to sentencing, he will have breached this Plea Agreement. With respect to the obligations under this Plea Agreement that are not entirely within Mr. Jackson's control, he will not be deemed to have breached this Plea Agreement if he used his best efforts to comply with those obligations. In the event of such a breach: (a) the Government will be free from its obligations under the Plea Agreement; (b) Mr. Jackson will not have the right to withdraw the guilty plea; (c) Mr. Jackson shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against Mr. Jackson, directly and indirectly, in any criminal or civil proceeding, all statements made by Mr. Jackson and any of the information or materials provided by Mr. Jackson, including such statements, information and materials provided pursuant to this Plea Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Plea Agreement, including Mr. Jackson's statements made during proceedings before the Court pursuant to Fed. R. Crim. P. 11.

   Mr. Jackson acknowledges discussing with you Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Mr. Jackson knowingly and voluntarily waives the rights which arise under these rules.

Mr. Jackson understands and agrees that the Government shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence. Mr. Jackson further understands and agrees that the Government need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

Nothing in this Plea Agreement shall be construed to permit Mr. Jackson to commit perjury, to make false statements or declarations, to obstruct justice, or to protect Mr. Jackson from prosecution for any crimes not included within this Plea Agreement or committed by Mr. Jackson after the execution of this Agreement. Mr. Jackson understands and agrees that the Government reserves the right to prosecute Mr. Jackson for any such offenses. Mr. Jackson further understands that any perjury, false statements or declarations, or obstruction of justice relating to Mr. Jackson's obligations under this Plea Agreement shall constitute a breach of this Plea Agreement. However, in the event of such a breach, Mr. Jackson will not be allowed to withdraw this guilty plea.

17. **Waiver of Statute of Limitations**

It is further agreed that should the convictions following Mr. Jackson's pleas of guilty pursuant to this Plea Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Plea Agreement) may be commenced or reinstated against Mr. Jackson, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement or reinstatement of such prosecution, which commencement or reinstatement shall occur within one year of the conviction being vacated. It is the intent of this Plea Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Plea Agreement is signed.

18. **Complete Agreement**

No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by Mr. Jackson, defense counsel, and an Assistant United States Attorney for the District of Columbia.

Mr. Jackson further understands that this Plea Agreement is binding only upon the Criminal Division (including the Fraud and Public Corruption Section and the Asset Forfeiture Unit) of the United States Attorney's Office for the District of Columbia and the Criminal Division (including the Computer Crime and Intellectual Property Section and the Asset Forfeiture and Money Laundering Section) of the U.S. Department of Justice. This Plea Agreement does not bind the Civil Divisions of these Offices or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against Mr. Jackson.

    If the foregoing terms and conditions are satisfactory, Mr. Jackson may so indicate by signing this Plea Agreement in the space indicated below and returning the original to us once it has been signed by him and by you or other defense counsel.

Sincerely yours,

*Jeffrey A Taylor /HS*
_____
JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____
JONATHAN HARAY
Assistant United States Attorney

_____
KIMBERLY KIEFER PERETTI
Senior Counsel
Criminal Division
Department of Justice

_____
LAUREL LOOMIS RIMON
Deputy Chief
Criminal Division
Department of Justice

    I have read this Plea Agreement and have discussed it with my attorney, Michelle Peterson, Esq. I fully understand this Plea Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Plea Agreement fully. I am pleading guilty because I am in fact guilty of the offense identified in this Plea Agreement.

    I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Plea Agreement. I am satisfied with the legal services provided by my attorney in connection with this Plea Agreement and matters related to it.

Date: 7/21/2008

Mr. Reid A. Jackson
Defendant

    I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Plea Agreement with my client, fully. These pages accurately and completely sets forth the entire Plea Agreement. I concur in my client's desire to plead guilty as set forth in this Plea Agreement.

Date: 7/21/08

Michelle Peterson, Esq.
Attorney for the Defendant